# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: | Chapter 11 |
| Tommy Dewayne Dobson<br>Anne Christine Dobson, | Case No. 23-60148 |
| Debtors. | |

## CHAPTER 11 PLAN OF REORGANIZATION
## OF TOMMY DEWAYNE DOBSON AND ANNE CHRISTINE DOBSON

### Introduction and Background

Tommy Dewayne Dobson ("Mr. Dobson") and Anne Christine Dobson ("Ms. Dobson") (collectively, the "Dobsons" or the "Debtors") propose the following Chapter 11 plan of reorganization (the "Plan") pursuant to § 1121(a) of title 11 of the United States Code (the "Bankruptcy Code").

**A.    Description and History of the Debtors' Business.**

Mr. Dobson is the sole shareholder of Dobson Homes, Inc., a Virginia corporation that is no longer operating, and one of three shareholders of Plumb Line Foundations and Excavating, Inc. ("Plumb Line"), a Virginia corporation. Dobson Homes, Inc., filed a chapter 7 bankruptcy the day after the Debtors' chapter 11 bankruptcy (the "Case") was filed on February 7, 2023 (the "Petition Date"). Following the filing of their Case, the Dobsons continued to operate and work for Plumb Line and to plan for the Debtors' new business operations initiated post-petition handling design-build consulting work. Recently, however, the Debtors have taken new positions with Corner Stone Foundations and Excavating, LLC, in lieu of continuing to operate Plumb Line at this time.

The change from self-employment to wage employees with the opportunity for bonuses and/or profit sharing reduces the downside risks to the Debtors' income and increases the overall feasibility of their Plan. In addition, the Debtors will continue to operate their design-build consulting business to generate additional income to fund their Plan.

The Debtors' financial problems leading to their Case stemmed from the failure and ultimate chapter 7 filing of Dobson Homes, Inc., and the claims made against the Debtors in their individual capacity resulting from that business's downfall.  Those financial problems resulted in the Debtors filing their petition in this Case and electing to proceed under subchapter V of chapter 11 so that they may reorganize their debts and make payments to their creditors over time. The Debtors expect a positive turnaround financially post-petition, particularly with the move away from total reliance on self-employment income and with the ability to reorganize the claims against them in a manner that they can reasonably manage.

        **B.**      **Liquidation Analysis.**  A liquidation analysis for The Debtors is attached hereto as **Exhibit A**.  In a liquidation of the Debtors in a chapter 7 case, priority and non-priority unsecured creditors would receive approximately **$271,331.00**.  Holders of allowed unsecured claims are projected to receive more from this Plan than they would receive in a chapter 7 liquidation of the Debtors' assets.  Under this plan, at least **$300,000.00** will be distributed to allowed priority and nonpriority unsecured claimants over the Plan Period (as defined in section 1.1 below).

        **C.**      **Ability to Make Plan Payments & Operate Without Further Reorganization**.  The Debtors believe that the restructuring of their obligations pursuant to this Plan will enable them to maintain a steady predictable stream of income to fund this Plan.  Projections of the future cash flow for the Debtors are attached hereto as **Exhibit B**.  Based on the Debtors' projections of future cash flows, the Debtors believe that they will be able to make all of the future payments required under this Plan and operate without the need for further reorganization.

### Summary of Plan

This Plan under chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtors from the projected disposable income of the Debtors.

This Plan provides for:      One (1) class of secured claims;
                                        One (1) class of priority claims; and
                                        One (1) class of non-priority unsecured claims.

Priority and non-priority unsecured creditors holding allowed claims will receive distributions in accordance with this Plan that exceed the amount such claims would receive in a Chapter 7 liquidation.  This Plan also provides for the payment of administrative claims and expenses and priority claims.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

# ARTICLE I
## Plan Payments, Overall Plan Funding, Distributions Agent, and Effective Date

1.1.     **Plan Payments**.  The Debtors shall submit such portion of their future income to the Plan as is necessary for the execution of the Plan in accordance with 11 U.S.C. § 1190(2). Under this Plan, the Debtors shall make the following regular monthly plan payments (the "Plan Payments").

| Plan Payment Amounts | | Start Date | Plan Period |
|---|---|---|---|
| $3500/month | for 5 months | The first payment shall be due on the first day of the month following the first full month after the Effective Date (as defined in section 1.5 below). | These Plan Payments shall continue for 5 years (60 monthly payments) (the "Plan Period"). |
| $5000/month | for 7 months | | |
| $8000/month | for 48 months | | |

1.2.     **Subchapter V Payments**.  On February 9, 2023, the Court entered an Order Setting (A) Status Conference; (B) Claims Bar Date; (C) Deadline For Election Under 11 U.S.C. § 1111(b)(2); And (D) Other Deadlines (the "Subchapter V Order").  Consistent with the Subchapter V Order, the Debtors shall make payments to Debtors' counsel's trust account to be held for the benefit of the Subchapter V Trustee in the amount of $1000.00 per month (the "Sub V Payments") beginning March 16, 2023, and monthly thereafter through the determination of the Subchapter V Trustee's allowed compensation and reimbursement of expenses or until Plan Payments begin, whichever shall first occur.  The Subchapter V Trustee's allowed claim for compensation and reimbursement of expenses shall be determined in accordance with Article II of this Plan.

1.3.     **Plan Funding**.  The sum of the Subchapter V Payments and the Plan Payments during the Plan Period will determine the total plan funding ("Plan Funding").  The Debtor may, in its sole discretion, prepay and complete the total payment required to satisfy Plan Funding prior to the end of the Plan Period.

1.4.     **Distributions To Allowed Claimants From Plan Funding**.  Unless otherwise indicated below, the Plan Funding shall be used to complete the distributions to the allowed claimants of unclassified claims under Article II of this Plan; to the allowed arrearages claims in Class 1; and to the allowed priority and unsecured claims in Class 2 and Class 3.

1.5.     **Regular Contractual Payments Required In Class 1**.  Unless otherwise indicated below, the Debtors shall complete all regular contractual payments required under the applicable loan documents directly to the creditors in Class 1. These direct, contractual payments are in addition to the Debtors' obligation under this Plan to make Plan Payments and will in no way be paid from or be a credit to Plan Funding.

1.6.     **Plan Distribution Agent.**  Regardless of whether this Plan is confirmed under 11 U.S.C. § 1191(a) or (b) and notwithstanding the language of 11 U.S.C. § 1194(b), the Debtors

shall be the distribution agent for all distributions to claimants under this Plan.  In the event this Plan is confirmed under 11 U.S.C. § 1191(b), the Debtors shall provide the Subchapter V Trustee with reports, as requested by the Subchapter V Trustee or as otherwise ordered by the Court, reflecting the Debtors' distributions under this Plan.

1.7.    **Effective Date**.  The effective date (the "Effective Date") of the Plan shall be 30 days after the date of the Order confirming this Plan (the "Confirmation Order").

## ARTICLE II
## Treatment of Unclassified Claims

2.1. **Classification of Administrative Expense Claims**.  Administrative expense claims have not been classified and are excluded from the classes set forth in Article III of the Plan, in accordance with § 1123(a)(1) of the Bankruptcy Code.

2.2. **Treatment of Administrative Expense Claims.**  Except to the extent that the holder of an allowed administrative expense claim agrees to less favorable treatment, each allowed administrative expense claim shall be paid in full from Plan Funding upon this Plan's Effective Date. If an administrative expense claim is allowed after the Effective Date of this Plan, such claim shall be paid in full from the Plan Funding within 30 days of its allowance or upon other terms as the parties may agree.

To the extent awarded or allowed by the Court under 11 U.S.C. § 330(a), the Subchapter V Trustee shall be paid for all fees and for the reimbursement of expenses as administrative expenses. The legal fees and expenses of Cox Law Group PLLC ("CLG") shall also be paid as administrative expenses to the extent allowed or approved by the Court but not satisfied from the retainer (the "Retainer") provided to CLG prepetition as disclosed in its Rule 2016(b) Statement filed on February 20, 2023. These fees shall be paid in full upon the Effective Date of the Plan and from Plan Funding to the extent the fees have been allowed by the Court or upon such alternate terms as the professional may agree. In satisfying the allowed administrative expense claims of the Subchapter V Trustee and CLG, the portion of the Plan Funding allocated to the Subchapter V Payments shall first be applied exclusively to the Subchapter V Trustee's allowed claim, with any balance remaining thereafter applied to the allowed claim of CLG not otherwise satisfied by the Retainer.

Professional fees incurred following confirmation of the Plan shall be paid directly by the Debtors and shall not require court approval or allowance.

2.3. **Administrative Expense Claim Bar Date**. Requests for payment of administrative expense claims existing as of the date of the Order confirming this Plan must be filed with the Bankruptcy Court and served on the Debtors no later than forty-five (45) days after the Effective Date.

**Any entity that is required to, but fails, to file a request for allowance of an administrative expense claim on or before the deadline referenced above shall be forever**

- 4 -

**barred from asserting such administrative expense claim against the Debtors, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover amounts asserted against the Debtors for such administrative expense claim.**

2.4. **Professional Fee Claims**. All professionals employed in this case pursuant to §§ 327, 328, or 1103 of the Bankruptcy Code, and/or the Subchapter V Trustee who may seek an award of a professional fee claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court, file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than forty-five (45) days after the Effective Date.

2.5. **Priority Tax Claims**. Each of the priority creditors under 11 U.S.C. § 507(a)(8) will receive on account of its allowed claim regular installment payments from Plan Funding in cash— (i) of a total value, as of the effective date of the Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under 11 U.S.C. §§ 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under 11 U.S.C. § 1122(b)). To comply with the requirements of 11 U.S.C. § 1129(a)(9)(C), interest will be paid on the allowed claims at the rates noted below.

| **Creditor** | **Estimated Priority Claim** | **Interest Rate** | **Start Date and Term of Repayment** |
|---|---|---|---|
| Internal Revenue Service (Proof of Claim No. 12) | $173,397.41 | 7% | To begin on the first day of the month following the first full month after the Effective Date and continue for 60 months or until paid in full |

## ARTICLE III
### Classification of Claims and Interests

The Debtors' creditors shall be classified into the following Classes:

3.1. **Class 1**. Class 1 consists of the secured claim of Shellpoint Mortgage Servicing (Proof of Claim No. 40) and Atlantic Union Bank (Proof of Claim No. 46) (the "Deed of Trust Secured Creditors") against the Debtors.

3.2. **Class 2.** Class 2 consists of allowed priority claimants under 11 U.S.C. § 507(a)(7) (collectively, the "Section 507(a)(7) Creditors").

3.3. **Class 3.** Class 3 consists of general unsecured creditors (collectively, the "Unsecured Creditors").

3.4. **Elimination of Classes for Voting Purposes.** Any class of claims or equity interests that is not populated as of the date of the commencement of the confirmation hearing by an allowed claim or an allowed equity interest, as applicable, or a claim or equity interest, as applicable, in such class temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed deleted from the Plan for purposes of voting to accept or reject the Plan by any such class under § 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV
## Treatment of Claims and Equity Interests

4.1. The classes of allowed claims and interests will receive the following treatments under the Plan.

4.1.1. **Class 1: Deed of Trust Secured Creditors.** The creditor listed below will be paid directly by the Debtors pursuant to the applicable loan documents without modification. For the avoidance of doubt, the Debtors shall pay the regular contractual payments required below directly to the creditor. These direct, contractual payments are in addition to the Debtors' obligation under this Plan to make Plan Payments and will in no way be paid from Plan Funding.

| Creditor | Collateral | Arrearages | Arrearage Interest Rate | Payment Terms for Arrears | Regular Contract Payment |
|---|---|---|---|---|---|
| Shellpoint Mortgage Servicing | 91 Beaver Dam Ct, Keswick, VA 22947 | $7669.67 | 0% | Shall be paid in full within 12 months of the Effective Date | $5665.85 per mo starting March 2023 |
| Atlantic Union Bank | 91 Beaver Dam Ct, Keswick, VA 22947 | $9485.00 pre-petition, plus $7588.00 post-petition | 0% | Shall be paid in full within 12 months of the Effective Date | $1897.00 per mo  Starting July 2023 |

**Class 1 is impaired by the Plan**.

- 6 -

4.1.2. **Class 2: Section 507(a)(7) Creditors**. Consistent with 11 U.S.C. § 1129(a)(9)(B), each of the following Class 2 priority creditors under 11 U.S.C. § 507(a)(7), to the extent its claim is allowed, will receive on account of its allowed claim either: (i) deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim if such class has accepted the plan; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim.  To comply with the requirements of 11 U.S.C. § 1129(a)(9)(B)(i), interest will be paid on the allowed claims at the rates noted below.  As with all claims filed in this Case, the Debtor reserves the right to object to the allowance of these Section 507(a)(7) Creditors.

| **Creditor** | **Type of Priority** | **Claim** | **Interest Rate** |
|---|---|---|---|
| David Roberts & David Spencer  (POC #25) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |
| Aric & Lara Holsinger (POC #26) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |
| Thomas & Sally Daly (POC #28) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |
| Juanita Haydel (POC #30) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |
| Roy & Mary Whitley (POC #31) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |
| Chris & Helen Karls (POC #32) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |
| Steve & Barbara Ryan (POC #44) | 11 U.S.C. § 507(a)(7) | $3,350.00 | 7.0% |

**Class 2 is impaired by the Plan**.

4.1.3. **Class 3: Unsecured Creditors**. Class 3 includes all unsecured creditors.

Distributions will be made from Plan Funding to the allowed unsecured claims, pro rata, in Class 3.

Class 3 includes the claims of creditors listed below that have filed secured claims that the Debtors assert are not, in fact, secured by the Debtors' assets.  The Debtors will object to the secured status of each of these claims on or before June 16, 2023, unless the creditor amends its proof of claim to be unsecured prior to that time.

| Creditor | Alleged Collateral | Defect in Security Interest | Claim Amount |
|---|---|---|---|
| Better Living, Inc. (POC #19) | 91 Beaver Dam Ct., Keswick, VA 22947 | Deed of trust not conveyed by the title holders to the real estate, the Debtors. | $180,093.77 |
| Atlantic Union Bank (POC #45) | Certificate of Deposit | The Certificate of Deposit is owned by a third party and not by the Debtors. | $287,195.97 |

Such distributions, to be shared among the entire class of holders of allowed unsecured claims, will be, in fact, an amount in excess of the amount that such holders would so receive or retain if the Debtors were liquidated under a chapter 7 bankruptcy.

**Class 3 is impaired by the Plan.**

## ARTICLE V
## Acceptance or Rejection of the Plan

5.1. **Impaired Classes of Claims Entitled to Vote**. Creditors in Classes 1, 2 and 3 are impaired by the Plan and are thus entitled to vote to accept or reject the Plan.

5.2. **Presumed Acceptance by Unimpaired Classes**. No classes are unimpaired by the Plan and conclusively presumed to accept the Plan under § 1126(f) of the Bankruptcy Code.

5.3. **Classes Deemed to Reject Plan**. No Classes of claims or interests are deemed to reject the Plan.

## ARTICLE VI
## Means of Execution and Implementation of the Plan

6.1. **Funding of Debtors' Plan & Rights and Powers of Debtors**. The Debtors will fund their Plan from their wages and business income. Upon and after the Effective Date, the reorganized Debtors shall have all powers provided for under this Plan and the Confirmation Order and shall have all of the powers provided by § 1184 of the Bankruptcy Code. The Debtors' disposable income shall be utilized to complete the Plan Payments.

6.2. **Revesting of Estate Assets in the Reorganized Debtors**. On the Effective Date, all assets of the Debtors' estate shall revest in the reorganized Debtors, subject to the liens of the holders of Class 1 claims that are not released or avoided, but otherwise free and clear of all other liens, claims, interests, and encumbrances. In furtherance of the implementation of the Plan, absent further order of this Court, all other estate property revesting in the reorganized Debtors shall be used in accordance with the terms of this Plan and shall not be subject to garnishment, attachment, and/or other similar process by any prepetition creditors without first complying with the terms of this Plan.

6.3. **Causes of Action**. All claims and causes of action held by the Debtors shall vest in the reorganized Debtors on the Effective Date, and the reorganized Debtors shall have full power and authority to pursue such claims and causes of action for the benefit of his creditors and the estate. The proceeds of all claims and causes of action, including Avoidance Actions as defined below, shall be distributed in accordance with this Plan to allowed claimants and included as part of the overall Plan Funding. Settlements of claims and causes of action following the Effective Date shall not be subject to approval by the Bankruptcy Court. For purposes of this Plan, the Debtors are evaluating potential avoidance actions to include any causes of action arising under Bankruptcy Code §§ 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (the "Avoidance Actions"). The Debtors are not currently pursuing any Avoidance Actions. Notwithstanding the foregoing, nothing herein shall serve as a waiver of the Debtors' right to pursue any Avoidance Action against any creditor or party in the event that Debtors reevaluate such potential claims or actions or otherwise determines that pursuing such Avoidance Action is appropriate in its business judgment.

6.4. **Sale of Personal Property**. The Debtors will sell any personal property that it determines in its business judgment to be unnecessary to the reorganization of the Debtors. After paying the costs of such sale, the proceeds of the sale will be applied to any liens of record against such property, and any remainder will be held by the Debtors and may be utilized to satisfy Plan Funding. The Debtors have not made any final determinations of which personal property, if any, will be sold by the Debtors pursuant to this section.

6.5. **Effectuating Documents and Further Transactions**. The Debtors and/or reorganized Debtors shall be authorized to execute, deliver, file or record such stipulations, contracts, leases, amendments, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

In addition, the Debtors, upon the Confirmation Order becoming a final order, is authorized but not required, without further notice or order, to refinance and/or sell to one or more entities any of its assets; provided, however, that any holder of a security interest in any asset sold that has not been avoided shall retain its lien on such assets, and the Debtors shall obtain the consent of such lienholder for such sale unless the holder of such lien shall receive payment in full of the remaining amount of its allowed secured claim. Furthermore, pursuant to § 1142(b) of the Bankruptcy Code, any necessary party and/or parties will be directed by the Court to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by this Plan, and to perform any other act, including the

satisfaction of any lien, that is necessary for the consummation of the Plan. For the avoidance of doubt, the reorganized Debtors are authorized to enter into, modify or amend loan documents and related agreements and record new financing statements or amend existing financing statements in furtherance of the terms of the Plan and the treatment of the claims hereunder.

      6.6.    **Releases of Record**.  Upon the request of the Debtors and/or reorganized Debtors, any entity (1) that is entitled to receive any distribution under this Plan and/or (2) whose lien (or purported lien) is extinguished or modified pursuant to this Plan or other order of the Court, shall execute and deliver promptly such documents and instruments as are necessary to release or modify of record any lien, to the extent such lien is extinguished or modified pursuant to this Plan. Notwithstanding any provision in this Plan, the Debtors and/or reorganized Debtors shall not be required to make any distribution, or deliver any document or instrument, to such entity, unless and until such entity has complied with this obligation. To the extent such entity fails to execute and deliver such documents within 30 days of the Effective Date, the reorganized Debtors are authorized to execute and deliver such documents or take such other appropriate action to ensure the release or modification of such lien is of record. The obligations set forth in this paragraph shall not be waived by any action or inaction of the Debtors and/or reorganized Debtors, including without limitation commencement of distributions to the affected entity.

## ARTICLE VII
## Distributions

      7.1.    **Debtors**.  The Debtors shall have all rights, duties and powers set forth in the Plan, including, without limitation, the duty to review and object to claims and make distributions pursuant to the terms of this Plan and the Confirmation Order.  The Debtors shall have all the powers of a trustee under the Bankruptcy Code.  On or after the Effective Date, the Debtors may employ counsel and other professionals as may be reasonably necessary for its operations and to execute the Plan without the necessity of application to the Bankruptcy Court. Such professionals may be retained and compensated for post-Effective Date services in the ordinary course without the necessity of application to the Bankruptcy Court.

      7.2.    **Delivery of Distributions**.  Following the Effective Date, distributions under this Plan shall be made from Plan Funding, unless otherwise indicated in the Plan.  Subject to Bankruptcy Rule 9010, unless otherwise provided herein, all distributions to any holder of an allowed claim shall be made at the address of such holder as set forth on the bankruptcy schedules filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, unless the Debtors have been notified in advance and in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder.  In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors have been notified by such holder of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder; *provided*, *however*, that such distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of one (1) year from the date such distribution is returned. After such date, all unclaimed property shall revert to the

Debtors. The Debtors shall not have any obligation to attempt to locate any holder of an allowed Claim other than by reviewing its books and records (including any proofs of claim or interest filed in the Chapter 11 case).

7.3. **Stop Payments; Minimum Distribution**. The Debtors may stop payment on any distribution check that has not cleared the payer bank within ninety (90) days of the date of distribution of such check. No distribution under the sum of $10.00 is required to be made by the Debtors.

7.4. **Prepayment**. Except as otherwise expressly provided in this Plan or the Confirmation Order, the Debtors and/or reorganized Debtors shall have the right to prepay, without penalty, all, or any portion of the distributions owed to an allowed claim, at any time.

7.5. **Interest on Claims**. Unless: (a) otherwise specifically provided for in this Plan, (b) other order of the Court, (c) pursuant to an agreement to pay adequate protection to the holder of a secured claim, or (d) the Confirmation Order, post-petition interest shall not accrue or be paid on any claim, and no holder of an allowed claim shall be entitled to interest accruing on or after the Petition Date on any claim.

## ARTICLE VIII
### Confirmation, Default Remedies and Discharge

8.1. **Binding Effect of Confirmation**. On and after the Effective Date, the provisions of the Plan shall bind any holder of a claim against the Debtors and such holder's respective successors and assigns, whether or not the claim or interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.2. **Post-Petition Default by Debtors**. The occurrence of any of the following shall constitute an event of default ("Event of Default") under the Plan:

    a. The failure of the Debtors to make any payment or distribution when due under the Plan, which failure shall continue for a period of thirty (30) days or more after written notice from a creditor to the Debtors, Debtors' counsel and the Subchapter V Trustee regarding the default; and,

    b. The failure of the Debtors to comply with any of the covenants contained in the Plan, which failure remains uncured for a period of thirty (30) days or more after written notice from a creditor regarding the default to the Debtors, Debtors' counsel and the Subchapter V Trustee.

Upon the occurrence of an Event of Default under the Plan which is not excused, postponed, modified or waived by Order of the Court or by written agreement of the applicable creditor and which has not been cured within any applicable time period, interest shall accrue at the rate of three percent (3%) per annum on each unpaid obligation under the Plan, which has been declared in default, commencing from the date said payment or distribution was due under

the Plan. The creditor shall be entitled to utilize its federal or state law remedies to collect such debt otherwise due under the Plan. Nothing set forth herein shall limit the ability of parties in interest from seeking conversion or dismissal of this case under 11 U.S.C. §1112, or other remedies that may be available under the Bankruptcy Code, in the event of a default under the Plan.

8.3. **Force Majeure**. An Event of Default shall not be deemed to have arisen for any failure or delay by the Debtors in fulfilling or performing any term of this Plan, when and to the extent such failure or delay is caused by or results from one or more of the following force majeure events ("Force Majeure Event(s)") that leads to the closing of any of the Debtors' Business's operations for a period in excess of five business days:

(a) acts of God;
(b) war, invasion, terrorist threats or acts (including domestic terrorism), riot or other civil unrest;
(c) government order, law, or actions;
(d) national or regional emergency; and
(e) failure of electric grid.

In the event of the occurrence of one or more Force Majeure Events, the Debtors shall give notice within a reasonable time of the Force Majeure Event to the creditors and other parties in interest, stating the period of time the occurrence is expected to continue. The Debtors shall use diligent efforts to end the failure or delay and ensure the effects of such Force Majeure Event are minimized. The Debtors shall resume the performance of their obligations as soon as reasonably practicable after the removal of the cause. Any creditor or party in interest may request a hearing of the Court in the event that such creditor or party in interest disputes the existence of a Force Majeure Event or objects to the Debtors' proposed delay in performance, and in the event that this bankruptcy case is closed at the time of such request, the Debtors shall, if requested in writing by the objecting creditor, pay the fee to reopen the case.

8.4. **Discharge**. If the Debtors' Plan is confirmed under 11 U.S.C. § 1191(a), on the Effective Date, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtors will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. §1141(d)(6).

If the Debtors' Plan is confirmed under 11 U.S.C. §1191(b), confirmation of this Plan shall not discharge any debt provided for in this Plan until the Court grants a discharge upon completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtors will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE IX
### Leases and Executory Contracts

9.1. **Rejection of Unexpired Leases and Executory Contracts**.  Upon confirmation of the Plan, all of the Debtors' unexpired leases and executory contracts shall be deemed to be rejected.

9.2. **Claims Arising from Rejection**.  Unless the time for filing claims is otherwise fixed by the Bankruptcy Court, all claims arising from the rejection of executory contracts or unexpired leases shall be filed and served upon the Debtors and the United States Trustee within thirty (30) days after the later of (i) entry of a final order authorizing such rejection or (ii) the date on which the Confirmation Order becomes a final order.  Any such claim not filed within the required time period shall be time-barred and shall not be an allowed claim.

## ARTICLE X
### Miscellaneous Provisions

10.1. **Headings**.  The headings used herein are inserted for convenience only and neither constitute a substantive portion hereof nor in any manner affect the provisions hereof.

10.2. **Successors and Assigns**.  The rights, benefits and obligations of any person or entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such person or entity.

10.3. **Correction of Errors; Inconsistencies**.  Before or after the confirmation hearing(s), or in the Confirmation Order, the Debtors may, after providing adequate notice and with the approval of the Bankruptcy Court, so long as it does not materially and adversely affect the interests of creditors who have accepted this Plan, remedy any defect or omission, or reconcile any inconsistencies in this Plan or amend this Plan, in such a manner as may be necessary to carry out the purposes and the effect of this Plan without the necessity of re-soliciting acceptances.

10.4. **Objections to Claims.**  The Debtors may file with the Bankruptcy Court an objection to the allowance of any claim, or any other appropriate motion or adversary proceeding with respect thereto.  All such objections will be filed on or within 90 days following the entry of an Order confirming this Plan (the "Claims Objection Deadline") unless the Debtors seeks and obtains an extension of the Claims Objection Deadline.

10.5. **Termination of Subchapter V Trustee**.  If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the service of the Subchapter V Trustee in the case shall terminate when the Plan has been substantially consummated, except that the United States Trustee may reappoint a Subchapter V trustee as needed for performance of duties under §§ 1183(b)(3)(C) and 1185(a) of the Bankruptcy Code. Otherwise, the service of the Subchapter V Trustee in the

case will be terminated as requested by the Subchapter V Trustee and ordered by the Bankruptcy Court.

  10.6. **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction after confirmation of the Plan for the following purposes:

   (i) to determine the allowance and classification of any claim or equity interest, the reexamination of claims or equity interests which have been allowed for purposes of voting, and the determination of any objections to claims or equity interests that may be or may have been filed;

   (ii) to determine motions to estimate claims at any time, regardless of whether the claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

   (iii) to determine motions to subordinate claims or equity interests at any time and on any basis permitted by applicable law;

   (iv) to construe or take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

   (v) to determine any and all applications for allowance of compensation or reimbursement of expenses of professionals;

   (vi) to determine any other requests for payment of administrative expense claims;

   (vii) to resolve any disputes arising under or relating to this Plan;

   (viii) to modify the Plan, to the extent permitted;

   (ix) to take any action to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

   (x) to enter any order, including injunctions, necessary to enforce the rights, title and powers of the Debtors and to impose such limitations, restrictions, terms and conditions of such rights, title and powers as the Bankruptcy Court may deem necessary;

   (xi) to enforce any order previously entered by the Bankruptcy Court in this case and to enter the closing order;

   (xii) to determine pending applications for the assumption or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine, and if need be, to adjudicate any and all claims arising therefrom;

(xiii) to determine applications, adversary proceedings and contested or litigated matters and all causes of action, whether pending on the Effective Date or commenced thereafter;

(xiv) to issue orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(xv) to determine such other matters as may be set forth in the Confirmation Order;

(xvi) to consider and act on the compromise and settlement of any claim against, or cause of action on behalf of, the Debtors or its estate;

(xvii) to enter such orders as may be necessary or appropriate in connection with the Debtors or its assets, wherever located;

(xviii) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtors arising prior to the Effective Date or relating to the administration of the Chapter 11 case, including, without limitation, matters involving Federal, state and local taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(xix) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with this Chapter 11 case or the Plan;

(xx) to enter such orders as may be necessary or appropriate to aid confirmation of and to facilitate implementation of the Plan; and

(xxi) to determine any matter not inconsistent with the Bankruptcy Code or the Plan.

10.7. **Entry of Final Decree and Closing of Case.** Once the Debtors have substantially consummated the Plan, they shall file a certification of the same and apply for the entry of final decree, as appropriate.

June 2, 2023                                      Respectfully submitted,
                                                  /s/ Anne Christine Dobson
                                                  /s/ Tommy Dwayne Dobson

/s/ David Cox
David Cox (Virginia Bar No. 38670)
COX LAW GROUP, PLLC
900 Lakeside Drive
Lynchburg, VA 24501
david@coxlawgroup.com
(434) 845-2600
*Counsel for the Debtors and Debtors in Possession*

**EXHIBIT A**
**Liquidation Analysis**

| Assets | Gross Property Value | Total Encumbrances | Costs of Sale | Amount Exempt | Subtotals | |
|---|---|---|---|---|---|---|
| Real property | $1,511,000.00 | $1,009,837.00 | $151,100.00 | $50,000.00 | | $300,063.00 |
| Motor vehicles (cars, etc.) | $32,900.00 | $- | $3,290.00 | $12,003.00 | $ | 17,607.00 |
| Non-pub. traded stock and int in businesses | $26,700.00 | $- | $2,670.00 | $1.00 | $ | 24,029.00 |
| | | | | | | |
| | | | | Subtotal to Distribute | $ | 341,699.00 |
| | | | | Less Chap 7 Fees | $ | (70,368.00) |
| | | | | **Net Liquidation Amount** | **$** | **271,331.00** |