UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TOMMY DEWAYNE DOBSON, and | ) | Chapter 11 |
| ANNE CHRISTINE DOBSON, | ) | Case No. 23-60148 |
| | ) | |
| Debtors. | ) | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO CONFIRMATION OF THE DEBTORS' FIRST AMENDED PLAN**

Now comes Gerard R. Vetter, Acting United States Trustee for Region Four (the "**United States Trustee**"), by counsel and objects to confirmation of the first amended chapter 11 plan [Docket No. 101] (the "**Amended Plan**") filed on behalf of Tommy D. Dobson ("**Mr. Dobson**") and Anne C. Dobson ("**Mrs. Dobson**") (collectively Mr. Dobson and Mrs. Dobson are the "**Debtors**"). The United States Trustee objects because: (i) the Amended Plan is unconfirmable under 11 U.S.C. §§ 1129(a) and 1191(a); and, even assuming *arguendo* that the Debtors could meet their burden to show that all the requirements of 11 U.S.C. § 1129(a) are met other than the provisions in subparagraphs (8), (10), and (15), (ii) the Amended Plan is not fair and equitable under 11 U.S.C. § 1191(b) because, among other things, the Debtors intend to continue paying unreasonable expenses to the detriment of their creditors. In support of this objection, the United States Trustee respectfully states as follows:

JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334, and the statutory predicates for this objection are 11 U.S.C. §§ 105(a), 1129, 1181, and 1191.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

BACKGROUND

4. The Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on February 7, 2023. On their petition, the Debtors indicated their desire to proceed under subchapter V of chapter 11 ("**Subchapter V**") of the Bankruptcy Code. The following day, Mr. Dobson caused Dobson Homes, Inc. ("**DHI**") to commence case number 23-60158 by filing a petition for relief under chapter 7 of the Bankruptcy Code.

5. After obtaining an extension of time to file their balance of schedules and statements, on February 28, 2023, the Debtors filed schedules, statements, and other documents in support of their petition [Docket No. 27] ("**Balance of Schedules**"). The Balance of Schedules filed by the Debtors are incorporated by reference. The Balance of Schedules identified Plumb Line Foundations and Excavating, Inc. ("**Plumb Line**") as the Debtors' principal source of income.

6. In the Balance of Schedules, the Debtors disclosed no interests in "professional licenses" in response to question 27 of Schedule A/B.

7. The Balance of Schedules contained certain inaccuracies. By way of example and not in limitation, the Balance of Schedules: did not disclose on Schedule E/F the claim of Atlantic Union Bank evidenced by proof of claim #45;[1] did not disclose on the Statement of Financial Affairs Mr. Dobson's or[2] Mrs. Dobson's interests in Dobson & Associates, LLC and Dobson

---

[1] By email dated May 19, 2023, at 3:37 p.m. Debtors' counsel stated an intention to file amended schedules the week of May 22, 2023.

[2] As used in this objection, "or" is not exclusive.

Services, Inc.;[3] and did not disclose on the Statement of Financial Affairs the criminal prosecution of Mr. Dobson for construction fraud pending in the Charlottesville, Virginia General District Court.

8. After obtaining an extension of time to file its balance of schedules and statements, on March 1, 2023, DHI filed schedules, statements, and other documents in support of its petition [23-60158, Docket No. 16]. The balance of schedules filed by DHI are incorporated by reference.

9. The Debtors' filed their original plan on June 2, 2023 [Docket No. 84] (the "**Original Plan**"). After the United States Trustee objected [Docket No. 91] (the "**Objection**") to the confirmation of the Original Plan, which Objection is incorporated by reference, the Debtors filed certain amended documents [Docket No. 97] (the "**Amended Schedules**"). The Amended Schedules do not disclose any interests of the Debtors in professional licenses.

10. The Debtors listed two priority unsecured creditors and 15 general unsecured creditors on their Balance of Schedules as having "Unknown" claim amounts. In total, the Debtors listed 33 of the 119 general unsecured creditors on their Balance of Schedules as having contingent or unliquidated claims.

11. On March 3, 2023, Mr. Dobson appeared and testified on behalf of DHI at its first meeting of creditors and indicated he could determine how much money DHI received from people and the value of the work performed. Attached as Exhibit 1 is a partial transcript of the March 3, 2023, meeting of creditors.

12. On March 6, 2023, the Debtors appeared and testified at their meeting of creditors held in this case. During the meeting of creditors, Mr. Dobson indicated certain professional

---

[3] By email dated April 13, 2023, at 5:10 p.m. Debtors' counsel stated an intention to file certain amended documents by the week of April 17, 2023, to "show these on the SOFA and Schedule A/ B[.]"

persons were assisting in the creation of reconciliations. At that time, Mr. Dobson testified he expected to have reconciliations completed in a "month or two[.]" See Exhibit 2, and attached as Exhibit 3 is an example of a reconciliation.

13.     On March 23, 2023, the Debtors filed a status report [Docket No. 39] in which they stated in paragraph 10 an intention to fund a plan with:

> income from the following businesses that they own or have an interest in: (a) Plumb Line Foundations and Excavating, Inc., and (b) the Debtors' new business operations initiated post-petition, presently as a sole-proprietorship, for design-build consulting work. The Debtors have also considered the sale of certain assets and the short-term rental of part of their home in order to raise additional funds if necessary to complete their plan.

14.     When the Debtors' filed the Original Plan, they indicated they had become employees of Corner Stone Foundations and Excavations, LLC ("**Corner Stone**") "in lieu of continuing to operate Plumb Line. . ." (Original Plan at pg. 1).

15.     On July 5, 2023, the Debtors filed a ballot report relating to the Original Plan. The ballot report showed that no classes of creditors voted to accept the Original Plan.

16.     On July 9, 2023, the Debtors filed the Amended Plan. The Amended Plan is incorporated by reference.

17.     In the Amended Plan, the Debtors described the reason for becoming employees of Corner Stone on page 3 as follows:

> Subsequent to the filing of the Debtors' Case, though, Plumb Line faced problems with its licensing with Virginia DPOR. Just prior to the deadline for the filing of the Original Plan, Mr. Dobson and the other principals of Plumb Line determined that Plumb Line's operations needed to cease, at least temporarily, for the period while DPOR completes its review of Plumb Line's new licensing application. As such, the Debtors needed to secure other employment opportunities in order to provide stable income during the term of their Plan.

18.     In the Amended Plan, in addition to any income derived from Corner Stone, the Debtors indicate that a significant portion of the income available to fund the Amended Plan will

come from Mr. Dobson's "design-build business" (Amended Plan at pgs. 3, 22, and 24). The financial projections attached to the Amended Plan call such business both "Signature Design Build" (*id.* at 22) and "Signature Design & Consulting" (*id.* at 24). Page 3 of the Amended Plan describes the "design-build business" and Mr. Dobson's role in it as follows:

> With respect to the first customer, Mr. Dobson was retained in June, 2023, through his design-build consulting business by Craig Builders to serve as a project manager and consultant for a 1.5 million dollar home renovation in Charlottesville. He received his first income from that engagement on July 7, 2023. Mr. Dobson expects to be hired in the same capacity by a second customer, unrelated to Craig Builders, in July, 2023, to provide his design and consulting services for that customer's construction of a $500,000 to $700,000 project to build a barn. For all of Mr. Dobson's design-build consulting work, he will be compensated on a "cost-plus" model. In other words, he will be paid a percentage, likely between 15-18% of the build cost, for his services.

19. A search of the online records maintained by the Virginia Department of Professional and Occupational Regulation does not indicate that Mr. Dobson, Mrs. Dobson, "Signature Design Build," or "Signature Design & Consulting" hold a contractor's license. Available at https://www.dpor.virginia.gov/LicenseLookup (last accessed August 9, 2023).

20. On July 21, 2023, the United States Trustee filed a motion to convert this case to chapter 7 [Docket No. 110] (the "**Motion**"). The Motion is incorporated by reference including, but not limited to, the allegations in paragraphs 5-20, 28-31.

21. Corner Stone appears to have assumed the operations of Plumb Line and appears to be using Plumb Line's equipment. The Amended Plan provides little information to determine whether Plumb Line is able to satisfy its obligations (including payments for equipment) or whether Corner Stone's assumption of Plumb Line's business is reasonable. Further, Mr. Dobson holds just a 1/3 interest in Plumb Line. The Amended Plan states that "Mr. Dobson and the other principals of Plumb Line determined that Plumb Line's operations needed to cease, *at least temporarily*, for the period while DPOR completes its review of Plumb Line's new licensing

application[]" (Amended Plan at pg. 3) (emphasis added).  It appears unclear what will happen if Plumb Line's contracting license is eventually approved or how that might impact the income projected to be received by the Debtors.

## **OBJECTION TO CONFIRMATION**

22.  The Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title[]" and the Court may take "any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

23.  The standards for confirming a Subchapter V plan are set out in 11 U.S.C. §§ 1129(a) and 1191.

24.  On August 8, 2023, the Debtors filed a ballot report in connection with the Amended Plan [Docket No. 118] (the "**Ballot Report**").  The Ballot Report is incorporated by reference.

25.  As set forth in more detail below, the Amended Plan is unconfirmable.

### *11 U.S.C. § 1129(a)(1)*

26.  A plan must comply with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  Among other things, a plan must provide for adequate means for implementation of such plan.  11 U.S.C. § 1123(a)(5).

27.  The Amended Plan does not address whether the Debtors or some firm in which they have an interest need to secure a contractor's license in order to lawfully operate the "design build" business as it is described in the Amended Plan.  The Debtors project relying on substantial funds from the "design build" business to satisfy the obligations imposed by the Amended Plan, however.  The income from the "design build" business is highly speculative due to myriad

6

potential problems. Therefore, the Amended Plan does not appear to provide for adequate means of implementation of the Amended Plan.

29. Confirmation should be denied unless, among other things, the Debtors can demonstrate by a preponderance of the evidence that the Amended Plan complies with the applicable provisions of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(3)

30. The Debtors have the burden of showing by a preponderance of the evidence that the Amended Plan "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3); *see In re Colston*, 539 B.R. 738, 746 (analyzing an identical confirmation requirement set forth in 11 U.S.C. § 1325 and finding that such requirement imposes on the debtor a "burden of proving by a preponderance of the evidence that a plan is proposed in good faith. . . .").

31. Although the term "good faith" is not defined by the Code, courts have generally interpreted it to mean there is a "'reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Osborne*, 2013 Bankr. LEXIS 2203 **11-12 (Bankr. E.D.N.C. May 30, 2013) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984). In the context of chapter 13, the Court of Appeals for the Fourth Circuit has stated that the good faith requirement requires an analysis of "the totality of circumstances . . . on a case by case basis." *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982). Circumstances that the Court of Appeals for the Fourth Circuit has articulated as non-exclusive factors relevant to a good faith inquiry under 11 U.S.C. § 1325(a)(3) "include, depending on the particular case, the percentage of proposed repayment, the debtor's financial situation, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in

representing facts, the debtor's employment history, and any unusual or exceptional problems facing the particular debtor" as well as the debtor's prepetition conduct and past bankruptcy filings. *In re Freeman*, 66 B.R. 610, 612 (Bankr. W.D. V.a. 1986). Attempts to game the system have also been considered in analyzing the good faith requirement. *Connecticut Gen. Life Ins. Co. v. Hotel Assocs. (In re Hotel Assocs.*), 165 B.R. 470, 474-75 (B.A.P 9th Cir. 1994) ("On remand the court should recognize that the act of impairment in an attempt to gerrymander a voting class is indicative of bad faith.")

32. With respect to the percentage of proposed repayment, "a debtor's failure to make anything close to the best offer of payment to the creditors violates . . . 11 U.S.C. § 1129(a)(3). . . ." *In re Harman*, 141 B.R. 878, 889 (Bankr. E.D. Pa. 1992) ("It is not an act of 'good faith' to propose a plan in which the Debtors retain one hundred (100%) of the expenditure necessary to support a lavish lifestyle, and, consequently, require the creditors to either wait 30 years for payment or accept a guaranteed payment of fifteen (15%) percent - - or twenty-five (25%) if they are lucky); *see also In re Osborne*, 2013 Bankr. LEXIS 2203 at **21 (citing to multiple cases in which courts have denied confirmation where debtors have proposed to maintain "extravagant lifestyle choices").

33. With respect to the second part of 11 U.S.C. § 1129(a)(3), a leading treatise on bankruptcy law states:

> Although the statute requires denial of confirmation if the plan is "proposed" by "forbidden" means, most courts have focused not on the means of proposal, but on the means of implementation. In this regard, courts have addressed two possible sources of "forbidden" animus: nonbankruptcy organic law, such as state corporation or partnership law, which governs the creation and existence of entities outside of bankruptcy; and law that prohibits certain activities of the estate.

COLLIER ON BANKRUPTCY ¶ 1129.02[3][b] (16th Ed. 2023).

34. In this case, it does not appear the Amended Plan has been proposed in good faith. Indications of bad faith include, but are not limited to,:

    a. the Debtors' attempt to maintain a lavish lifestyle and extravagant living expenses rather than tighten their financial belt, act in their creditors' best interests, and make something close to an offer of repayment of what they could afford but for the continued maintenance of unreasonable or excessive expenses. Below is a chart comparing just two of the Debtors' proposed monthly expenditures to the amounts set forth as the National and Local Standards as of the Debtors' petition date which are available at https://www.justice.gov/ust/means-testing/20221101:

| Category | Debtors' Proposed Expense | National or Local Standard |
|---|---|---|
| Housing | $7,562.85[4] | $1,206.00 |
| Food, housekeeping supplies, Entertainment, Pet Food/Care | $2,195.00[5] | $1,410.00 (which covers food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous expenses) |

If the Debtors wanted to make a meaningful distribution to their creditors, they could propose one. The Amended Plan demonstrates that they just do not want to do so;

    b. the Debtors' failure to be forthright in representing relevant facts regarding their financial condition as set forth in the Objection and Motion as well as below in the discussion of the feasibility of the Amended Plan; and

---

[4] This is the aggregate of the "Mortgage or rent (Shell Point)" and "2nd. Mortgage – Atlantic Union" shown on the budget attached to the Amended Plan (Amended Plan at pg. 24).

[5] This is the aggregate of the following expenses shown on budget attached to the Amended Plan (Amended Plan at pg. 24): "Food and housekeeping supplies"; "Food/Care/Veterinarian"; "Clothing"; "Other misc food or beverage"; and "Recreation/Entertainment/Holiday."

9

      c.      the Debtors' prepetition conduct in connection with DHI which calls into question whether the Debtors would receive a discharge under chapter 7 of the Bankruptcy Code.

35. Additionally, the Amended Plan raises questions as to whether it would be implemented through a means prohibited by Virginia law. Virginia law prohibits persons from engaging in or offering to engage in "contracting work" unless such person has been licensed. <u>Va. Code Ann</u>. § 54.1-1103(A). Virginia law defines a contractor as:

> any person, that for a fixed price, commission, fee, or percentage undertakes to bid upon, or accepts, or offers to accept, orders or contracts *for performing, managing, or superintending in whole or in part,* the construction, removal, repair or improvement of any building or structure permanently annexed to real property owned, controlled, or leased by him or another person or any other improvements to such real property. . . .

*Id.* at § 54.1-1110 (emphasis added). It illegal under Virginia law for a person to attempt "to practice contracting in the Commonwealth, except as provide for in [chapter 11 of title 54.1]." *Id.* at § 54.1-1115(A)(2).

36. In this case, it does not appear that Mr. Dobson, Mrs. Dobson, or entity in which they hold an interest have a contracting license (whether Class A, Class B, or Class C).

37. Confirmation should be denied unless, among other things, the Debtors can demonstrate by a preponderance of the evidence that the Amended Plan has been proposed in good faith and not by means forbidden by law.

### *11 U.S.C. § 1129(a)(4)*

38. Payments made for services or costs "in or in connection with the case, or in connection with the plan and incident to the case" must be approved by the Court or subject to approval of the Court.

39. During the Debtors' meeting of creditors, they indicated they had certain persons helping them create reconciliations regarding claims, many of which the Debtors listed in their schedules. Further, Mr. Dobson testified he thought the reconciliations would be done within a month or two from the meeting of creditors. That indicates that services have been and were expected to be rendered post-petition. DHI is not operating and is a debtor under chapter 7 of the Bankruptcy Code. The Amended Plan makes no mention of payment for such services or of the Court's approval over the payment for such services.

40. Confirmation should be denied unless, among other things, the Debtors can demonstrate by a preponderance of the evidence that 11 U.S.C. § 1129(a)(4) is satisfied.

### 11 U.S.C. § 1129(a)(8)

41. Section 1129(a)(8) requires each impaired class of claims or interest to accept the Amended Plan.

42. According to the Amended Plan, Classes 1-4 are impaired (Amended Plan at pgs. 9-11).

43. According to the Ballot Report, no ballots were received from creditors in Classes 1 and 2, and Classes 3 and 4 rejected the Amended Plan.

44. A creditor's declination to vote on a plan does not equate to acceptance of such plan. *In re Jim Beck, Inc.*, 207 B.R. 1010, 1015 (Bankr. W.D. Va. 1997).

45. No class of claims accepted the Amended Plan and, accordingly, the Amended Plan may not be confirmed as a consensual plan. 11 U.S.C. § 1191(a).

### 11 U.S.C. § 1129(a)(10)

46. Section 1129(a)(10) requires acceptance of the Amended Plan by at least one impaired class of claims.

11

47. No class of claims accepted the Amended Plan and, accordingly, the Amended Plan may not be confirmed as a consensual plan. 11 U.S.C. § 1191(a).

### 11 U.S.C. § 1129(a)(11)

48. A court may not confirm a plan that is likely to be followed by liquidation or the need for further financial reorganization. 11 U.S.C. § 1129(a)(11).

49. The speculative nature of the funding of the Amended Plan, the Debtors inability or failure during the pendency of this case to meet their obligations,[6] and possible licensure issues indicate that the need for further financial reorganization will be needed.

50. During the pendency of this case, the Debtors have filed operating reports. The operating reports show the Debtors' income and expenses have varied significantly from the projections supporting the Amended Plan. Attached as <u>Exhibit 4</u> is a comparison of the Debtors' actual average income and expenses for April-June with the projections for July as set forth on page 24 of the Amended Plan. For example, it appears the Debtors have been spending over $600.00 more a month on food, housekeeping, and medical expenses than set forth in the lavish budget for July depicted in the Amended Plan.[7]

52. Confirmation should be denied unless, among other things, the Debtors can demonstrate by a preponderance of the evidence that the Amended Plan is feasible.

### 11 U.S.C. § 1191(b)

---

[6] By way of example and not in limitation, in March 2023 the Debtors failed to timely make the court-ordered $1,000.00 escrow payment, but they paid vet bills totaling $1,493.32.

[7] Note further that while the Debtors averaged medical expenses of $855.58 per moth May-June and projected as $500.00 per month for the rest of this year, they only project $100.00 per month beginning January 2024.

Case 23-60148 Doc 119 Filed 08/10/23 Entered 08/10/23 15:52:12 Desc Main
Document Page 13 of 15

53. Even assuming *arguendo* that the Amended Plan complied with the provisions of 11 U.S.C. § 1129(a) other than paragraphs (8), (10), and (15), confirmation of the Amended Plan should be denied.

54. Section 1191 sets forth the requirements to obtain the nonconsensual confirmation of a subchapter V plan. 11 U.S.C. §§ 1191(b)-(e).

55. The Amended Plan proposes for the Debtors to continue to maintain expenses not reasonably necessary to be expended for the support and maintenance of the Debtors or any dependent. Accordingly, the Amended Plan is not "fair and equitable" because it fails to require all of the projected disposable income of the Debtors received during the applicable period to be applied to make payments under the Amended Plan.

56. Assuming the Debtors receive income as set forth in the projections attached to the Amended Plan, then if they were not paying unreasonable or excessive living expenses including, but not limited, proposed housing and general living expenses, the amount of their projected disposable income would exceed the value of the property proposed to be distributed under the Amended Plan.

57. Finally, there is not a reasonable likelihood that the Debtors will be able to make all payments under the Amended Plan. As alleged in the Motion, during the pendency of the case, the Debtors' have been unable to even timely make the $1,000.00 payments they have been ordered to escrow for the benefit of their subchapter V trustee. The inability to make that payment (or the second mortgage payment) demonstrates the Debtors will not be able to make the much larger payments required by the Amended Plan. Additionally, the Debtors have had to cease the operations of Plumb Line due to licensure problems. Regardless of that, the Debtors base a significant source of funding for the Amended Plan on income received through a business that

the Debtors may be prohibited by law from operating without a contractor's license. The Debtors cannot show a reasonable likelihood they can make all payments under the Amended Plan.

WHEREFORE, the United States Trustee, by counsel, objects to confirmation of the Amended Plan.

| | |
|---|---|
| Date:  August 10, 2023 | Respectfully submitted, |
| | United States Trustee |
| | By: /s/ W. Joel Charboneau |
| | Trial Attorney for the United States Trustee |

W. Joel Charboneau (VSB #68025)
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov

## NOTICE OF HEARING

PLEASE TAKE NOTICE that **unless an order is entered prior to the hearing**, the hearing on the confirmation of the Plan is set for **August 17, 2023, beginning at 11:00 a.m.** in the United States Bankruptcy Court for the Western District of Virginia via Zoom **(**https://vawb-uscourtsgov.zoomgov.com/j/1603692643. The Zoom Meeting ID is: 160 369 2643).

## CERTIFICATE OF SERVICE

I certify that on August 10, 2023, I electronically filed the foregoing motion and notice of hearing with the United States Bankruptcy Court for the Western District of Virginia, which should have caused electronic notifications of filing to be served on all registered users of the CM/ECF system that have appeared in this case.

/s/ W. Joel Charboneau

W. Joel Charboneau (VSB #68025)
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov