

SIGNED THIS 29th day of September, 2023

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON
THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

*Rebecca B. Connelly*
Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

In re:
**TOMMY DEWAYNE DOBSON,**                    **Chapter 11**
**ANNE CHRISTINE DOBSON,**                    **Case No. 23-60148**
    **Debtors.**

### MEMORANDUM OPINION

This is an individual chapter 11 case.  Tommy Dewayne Dobson and Anne Christine

Dobson are married individuals who filed a joint case and elected to proceed under subchapter V

of chapter 11.  The United States Trustee for Region Four, through counsel, wants this Court to

convert their case to chapter 7.  The U.S. Trustee asserts cause under section 1112(b) of the

Bankruptcy Code to convert this case to chapter 7 purporting that conversion would be in the best

interests of creditors and the estate.  As shown below, the Court concludes the U.S. Trustee did

not prove cause under section 1112(b).

At the trial on September 18, 2023, after counsel for the U.S. Trustee completed his

presentation of evidence,[1] counsel for the debtors requested the Court grant judgment on partial

---

[1]    At the trial on September 18, 2023, the Court admitted into evidence all of the U.S. Trustee's exhibits,
numbered 1 through 28.  *See* ECF Doc. Nos. 135, 138, 139.  The Court also heard testimony from the following
witnesses called by the U.S. Trustee: Tommy Dewayne Dobson, Anne Christine Dobson, William E. Callahan, Jr.,
Ben Ziccardy, Nancy Littlefield, and Karen Littlefield.

findings pursuant to Federal Rule of Civil Procedure 52(c).[2]  The Court deferred ruling until the close of evidence.  *See* Fed. R. Civ. P. 52(c) ("The court may, however, decline to render any judgment until the close of the evidence.").  Having now considered whether to grant judgment on partial findings, and finding that the U.S. Trustee has not shown cause under section 1112(b), this Court grants the debtors' motion made orally at the trial under Federal Rule of Civil Procedure 52(c).  Accordingly, the Court issues these findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 52(c) ("A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).").

## JURISDICTION

This Court has jurisdiction over Tommy and Anne Dobson's bankruptcy case by the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994.

The question before the Court is whether cause has been shown to convert this chapter 11 case to a chapter 7 case.  The answer requires an application of Bankruptcy Code section 1112 and is a core bankruptcy matter over which this Court has authority to hear and issue a final order.

## FACTS

The facts are not contested.  Although they disagree as to the characterization of some facts, neither party has pointed to any contested facts that would make a difference to the decision.

The debtors are individuals.  They are married and filed a joint petition under chapter 11, electing to proceed under subchapter V of chapter 11.  Mr. Dobson formerly ran a home

---

[2]    Federal Rule of Bankruptcy Procedure 7052 incorporates Federal Rule of Civil Procedure 52, which provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

construction business through a corporation, Dobson Homes, Inc. ("DHI").  He is the only

shareholder of DHI.  He has been an officer and a director of DHI.

In the month after the debtors filed their chapter 11 petition, the U.S. Trustee filed an

objection to the debtors' subchapter V election.  *See* ECF Doc. No. 40.  The objection led to various

responses, memoranda of law, and a contested hearing on eligibility in May of this year, three

months into the case.  The Court found the debtors eligible to proceed in subchapter V and

overruled the objection.  *See* ECF Doc. Nos. 77, 78.

The next month, the debtors filed a chapter 11 plan.  *See* Ex. 20.  The U.S. Trustee objected

to the plan and moved the Court to require a disclosure statement.  *See* ECF Doc. No. 91.  The

debtors then filed an amended plan and a supplement to the amended plan.  *See* Ex. 21; ECF Doc.

No. 104.  After that, the U.S. Trustee withdrew his motion for entry of an order requiring a

disclosure statement.  *See* ECF Doc. No. 105.  Two days later, the U.S. Trustee filed this motion

under section 1112 to convert this case to chapter 7.  *See* ECF Doc. No. 110.  The debtors filed a

response to the motion to convert and a second amended chapter 11 plan.  *See* ECF Doc. Nos. 128,

129.  The Court conducted the trial on September 18, 2023.  *See* ECF Doc. No. 142.[3]

Mr. and Mrs. Dobson do not have employees.  They have few assets other than a residence

and personal vehicles.  They have equity in their residence owned as tenants by the entirety.  They

are each employed and receive employment income.

They have filed schedules and statements, monthly operating reports, and their chapter 11

plan.  *See* Exs. 8–13, 16–17, 20–22; ECF Doc. No. 144.

## ANALYSIS

---

[3]      Due to courtroom availability for the in-person trial and availability of the parties, the Court conducted the
trial on the motion on September 18, 2023.  *See* 11 U.S.C. § 1112(b)(3).

The U.S. Trustee moves under section 1112(b) to convert this case from subchapter V of chapter 11 to chapter 7. The moving party bears the burden of establishing that cause exists to convert. *In re Park*, 436 B.R. 811, 815 (Bankr. W.D. Va. 2010) (citing *In re Sydnor*, 431 B.R. 584, 591 (Bankr. D. Md. 2010)). "The standard of proof is a preponderance of the evidence standard." *Id.* As the moving party, the U.S. Trustee bears the burden of demonstrating cause under section 1112(b).

The U.S. Trustee points to Bankruptcy Code section 1112(b)(4)(A), (B), (E), and (H) as statutory cause to convert this case. *See* Mot. ¶ 37, ECF Doc. No. 110. Without specificity, the U.S. Trustee also cites section 1112 generally. Additionally, the U.S. Trustee notes that "chapter 11 debtors are fiduciaries for their creditors, and cause also includes failures to satisfy such fiduciary duties." *Id.* (citing *In re Johnson*, Case No. 315-03929, 2016 Bankr. LEXIS 1937, at *19 (Bankr. M.D. Tenn. May 5, 2016)).

Bankruptcy Code section 1112(b) authorizes a court to convert to chapter 7 or dismiss a chapter 11 case. That section provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1112(b)(1). Subsection (b)(4) provides a list of sixteen examples of cause. *Id.* § 1112(b)(4)(A)–(P). The U.S. Trustee relies upon subsections (A), (B), (E), and (H) as cause in this case. These subsections provide as follows:

> (4) For purposes of this subsection, the term "cause" includes—
>     (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>     (B) gross mismanagement of the estate;
>     . . .
>     (E) failure to comply with an order of the court; [and]
>     . . .

> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); . . . .

*Id.* § 1112(b)(4)(A), (B), (E), (H).  Section 1112(b) also contains limitations on the Court's power to convert or dismiss a chapter 11 case.  Subsection (b)(2) instructs:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
> > (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> > (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > > (ii) that will be cured within a reasonable period of time fixed by the court.

*Id.* § 1112(b)(2).  The statute therefore strikes a balance:  on the one hand cause will permit the court to dismiss or convert a chapter 11 case but on the other hand exceptional circumstances and reason may dictate otherwise.[4]  *See also In re Ozcelebi*, 639 B.R. 365 (Bankr. S.D. Tex. 2022) ("Regardless of the basis for cause, 'inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor.'" (quoting *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371–72 (5th Cir. 1987))).  But the first step is for the moving party to show cause to convert or dismiss the case.

*The U.S. Trustee failed to show "substantial or continuing loss to or diminution of the estate."*

Cause to dismiss or convert a chapter 11 case includes "substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation."  11 U.S.C.

---

[4]     Section 1112(b)(2) notes "reasonable likelihood," "reasonable period of time," and "reasonable justification" for each criterion.  Congress's repeated use of the term "reasonable" in this section (four times) must be a directive to a court to exercise discretion before converting or dismissing a chapter 11 case, when the criteria of this subsection are present.

§ 1112(b)(4)(A) (emphasis added). "The Court must deny the motion to convert or dismiss if the movant fails to satisfy either prong." *In re Paterno*, 511 B.R. 62, 66 (Bankr. M.D.N.C. 2014). The Court will address each prong separately.

The first part of the inquiry under section 1112(b)(4)(A) is whether there is "substantial or continuing loss to or diminution of the estate." "This test is often met by showing that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief." *Paterno*, 511 B.R. at 66 (citing *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 713, 713–14, 719 (Bankr. D. Md. 2011)). It is not sufficient simply to show a loss or some diminution of the estate; the moving party must show that such loss or diminution is either substantial or continuing. Merely showing negative operating income in a few months postpetition may not amount to substantial or continuing loss if the debtor has also experienced positive cash flow in more months postpetition. *See, e.g.*, *In re Surtronics*, Case No. 13-05672-2-SWH, 2014 WL 2581159, at *3 (Bankr. E.D.N.C. June 9, 2014) (concluding that cause to dismiss under section 1112(b)(4) did not exist in part because debtor "experienced positive post-petition cash flow in four of seven months"); *In re Gregory & Parker, Inc.*, Case No. 12-01382-8-SWH, 2013 WL 2285671, at *5 (Bankr. E.D.N.C. May 23, 2013) (concluding that, upon examination of the debtor's monthly reports and noting that the debtor had positive net operating income in seven of thirteen months postpetition, "the court cannot find that [the debtor] has in fact suffered a substantial or continuing negative cash flow since filing bankruptcy").

The U.S. Trustee asserts that the debtors are potentially operating at a loss, which he argues shows substantial or continuing loss to or diminution of the estate. The U.S. Trustee notes that the debtors did not pay their personal health insurance premium timely, did not pay it at all during one calendar month, and did not pay a second deed of trust payment in some months at the outset of

this case.  According to the U.S. Trustee, if the debtors had paid these amounts during the months they skipped, then in those months, the debtors would have shown a loss.  The U.S. Trustee extrapolates from this example that the debtors will experience a substantial and continuing loss to or diminution of the estate (and will have no ability to perform in a plan).  As shown below, the U.S. Trustee's prediction is mistaken.  The U.S. Trustee's evidence shows the debtors did resume the missed payments and did not experience a loss.

The bank statements filed by the U.S. Trustee show that in one month (June) the account had a low ending balance and during that month two items were returned causing overdraft fees applied in that month.  Ex. 14, at 13–25.  The bank statements filed by the U.S. Trustee also show that in every month during this case the bank statements have a positive ending balance and in the months after June, the ending balance is twice or three times the ending balance in June.  *See* Ex. 14, at 2 (July ending balance $6,067.74); Ex. 15, at 2 (August ending balance $4,151.17).

The debtors' personal health insurance invoices show they usually paid the premium one month in arrears.  *See generally* Ex. 25.  Ben Ziccardy, Auditor for the U.S. Trustee, testified that in one month during this case, the debtors did not pay the health insurance premium.  At one point, on July 7, 2023, the insurance company issued a notice of termination.  The notice of termination provided a demand for payment within seven days to reinstate the insurance.  Ex. 25, at 48. According to the debtors, the notice of termination was a mistake and after a phone call, the insurance company reinstated the policy.  According to the bank statements submitted by the U.S. Trustee, the debtors paid the July premium on August 1, 2023.  *See* Ex. 15, at 3.  In either event, the U.S. Trustee failed to show that the notice of termination made any difference in this case:  the debtors testified their insurance is now in place and that the insurance company covered their prescriptions.  The U.S. Trustee failed to show otherwise.  The exhibits submitted by the U.S.

Trustee show the health insurance is in place. The U.S. Trustee did not show that the notice of termination by this insurance company caused any substantial or continuing loss to the estate, nor diminution of the estate.

The U.S. Trustee points to the failure of the debtors to pay the monthly payment on a second deed of trust. Mr. Dobson testified he did not pay the second mortgage initially in this case because it was a debt obtained for his prior construction business, DHI, and DHI had maintained the mortgage payment. When DHI filed its chapter 7 petition, it stopped paying the mortgage payments on the second deed of trust. Mr. Dobson testified that he believed the debt to be a debt of the corporation and did not understand it to be a personal debt. Nonetheless, he testified they have now resumed their second deed of trust payment and have proposed in their chapter 11 plan to cure the arrearages. His testimony was not refuted. The exhibits filed by the U.S. Trustee show the debtors paid the second deed of trust payment in July and August, which payments were negotiated. *See* Ex. 14, at 11 (July bank statement); Ex. 15, at 10 (August bank statement). The U.S. Trustee exhibits also show the proposed plan provides for cure of the arrears. *See* Ex. 22.

The U.S. Trustee contends that the failure of the debtors to pay a health insurance premium in one month and a second deed of trust payment in several months shows the debtors have "suffered losses" and have "negative monthly income." Yet given the cure of the missed insurance premium and current payment of mortgage obligations coupled with their healthy bank balances, the U.S. Trustee's contention comes up short. The bank statements for the months after June show the debtors paid their health insurance premiums and their second deed of trust payments, and reflect positive ending balances. *See In re Creech*, 538 B.R. 245, 249–50 (Bankr. E.D.N.C. 2015) (finding that the monthly expenses exceeding monthly income in half of the months in chapter 11 did not indicate substantial or continuing loss or diminution and noting that "[t]his is clearly not a

case where the operating account has been depleted and there is no income to fund ongoing expenses").

In addition to the above, the U.S. Trustee noted that during the first few months of the case, the debtors did not make payments into escrow earmarked for the subchapter V trustee fees. The U.S. Trustee is referring to a standard order issued by this Court at the outset of subchapter V cases in which the Court directs the debtor to pay $1,000.00 each month into an escrow account for the purpose of paying subchapter V trustee fees and expenses once allowed by the Court. In this case, the Court entered the order on February 9 of this year. *See* Ex. 3. The U.S. Trustee identified two months after the entry of that order in which Mr. and Mrs. Dobson did not make the escrow payment. These months were the first month of the case (March) and the month of May (the month when their status under subchapter V was challenged and the issue was in litigation). The bank statements filed by the U.S. Trustee show the debtors paid the March and April escrow payments in April by tendering a check for $2,000.00 and paid the May, June, and July escrow payments by tendering a check for $1,000.00 in June and another check for $2,000.00 in July. *See* Ex. 14, at 11, 21, 43. At this time, the escrow payments are current. The U.S. Trustee contends that this fact shows a substantial or continuing loss to or diminution of the estate. The Court disagrees.

Adding to the above, the U.S. Trustee contends a "tremendous" administrative claim is "being built up." The U.S. Trustee wants the Court to find a substantial or continuing loss to the estate by adding the figure included in the second amended plan for an estimate of an administrative expense claim ($40,000) to the debtors' current operating report as an obligation currently owed. *See* Ex. 22 (estimating that the administrative expense and professional fee claims will total "$40,000.00 or less"). But the Court has yet to approve, and no professional has yet applied for, any administrative fees or expenses. In the meantime, the U.S. Trustee has not asked

the Court to consider the existing retainers, escrow account balance, and terms of any fee agreements for professionals of the estate. The Court does not find a substantial or a continuing loss to the estate based on conjecture and unsubstantiated projection.

Mr. and Mrs. Dobson own a home as tenants by the entirety. The home is collateral for two deeds of trust. During his testimony, Mr. Dobson estimated approximately $500,000 equity in his home. His testimony was not refuted or challenged. Mr. Dobson testified his house was appraised for $1,500,000. The schedules reveal a value of the residence at $1,510,000, consistent with his testimony. The schedules list three debts secured by the house totaling $1,366,274. The claims register reflects proofs of claim for each of these debts and also reflects that one of the claims was disallowed as a secured claim.[5] As a result, the record shows two claims secured by the residence, and the combined total of these secured claims is $995,294.58.

Mr. and Mrs. Dobson own three vehicles, the most recent model year is ten years old (model years 2007, 2009, and 2013). Mr. Dobson testified the value of these vehicles range from $7,000 to $17,000, which is consistent with the schedules in this case. The testimony was not refuted.

Mr. and Mrs. Dobson have filed a chapter 11 plan in which they propose to sell their home and disburse the net proceeds to unsecured creditors. Mr. Dobson testified about the debtors' intent to sell their home and use the proceeds to pay creditors.

Mr. and Mrs. Dobson also propose to make monthly plan payments out of employment income. In addition, Mr. Dobson receives rental income for the use of part of the residence. The

---

[5]     The debtors scheduled the two claims secured by the deeds of trust on the residence (held by Shellpoint Mortgage Servicing and Atlantic Union Bank) as well as a disputed secured claim held by Better Living, Inc. Each creditor filed a proof of claim, as reflected on the claims register. The debtors subsequently took action on the disputed claim by filing an objection to the proof of claim filed by Better Living, Inc. *See* ECF Doc. No. 93. The Court sustained the objection and disallowed the claim as a secured claim and allowed it instead as an unsecured claim. *See* ECF Doc. No. 109.

debtors apply the rental income toward their mortgage payments. The rental income provides some abatement of the mortgage payment but does not offset it entirely.

The most valuable asset in this case is the debtors' residence. No evidence was offered to show any decline in value, reduction of the equity, or dissipation of the residence. Instead, the U.S. Trustee challenged the debtors' payment of their monthly mortgage payments on their first mortgage secured against the residence. Ironically, payment of the mortgage payments has preserved the equity rather than diminish it. Instead of loss to the estate, let alone a substantial or continuing loss, the evidence showed preservation of the most valuable asset in the estate. Indeed, given the ongoing payment of the mortgage, it appears the equity may have increased during the short time these individuals have been in chapter 11. Had the debtors not paid their mortgage payments, the result may have been diminution of the estate, not the other way around. *See In re Burgess*, Case No. 11-1257, 2013 Bankr. LEXIS 4540, at *9 (Bankr. N.D.W. Va. Oct. 30, 2013) (finding that "the Debtors' failure to pay their monthly secured debt obligations and real property taxes constitute a continued diminution of the estate as encumbrances on their real property continue to accrue and otherwise endanger their ownership interest therein"). Moreover, no evidence was presented to show any meaningful decline in the value of the remaining assets of the estate.

The U.S. Trustee presented no evidence that the debtors failed to maintain property insurance or failed to pay property tax that may have come due. The U.S. Trustee presented no evidence showing the debtors have damaged, destroyed, or dissipated the value of their real or personal property. Perhaps more significantly, the U.S. Trustee showed no evidence that the debtors have transferred property of the estate.

As was clear from the seven-hour trial and the record in the case, Mr. and Mrs. Dobson are maintaining their residence pending its future sale, providing for their dependents, retaining their tangible personal property, and making efforts to obtain regular income from which to fund a plan. They have been cooperating with the subchapter V trustee (who testified that the debtors have been responsive to his questions and complied with his recommendations regarding plan amendments). They do not have employees.  They do not operate equipment.  They do not sell inventory or goods.  They currently work as employees of an entity in which they do not have an ownership interest.

The Court is not persuaded that the U.S. Trustee has met his burden to prove the debtors have suffered or continue to experience negative cash flow, or have experienced a decline in value of assets, to constitute cause under section 1112 in this case.  Absent substantial or continuing loss to or diminution of the estate, cause is not present under section 1112(b)(4)(A) (requiring "substantial or continuing loss to or diminution of the estate" *and* the "absence of a reasonable likelihood of rehabilitation").

*The U.S. Trustee has not shown the "absence of a reasonable likelihood of rehabilitation."*

Even if the U.S. Trustee had shown substantial or continuing loss to or diminution of the estate, the U.S. Trustee must also show the absence of a reasonable likelihood of rehabilitation for the Court to find cause under section 1112(b)(4)(A).  He has not done so.

On a basic level, if a debtor is unable to propose a confirmable chapter 11 plan, there is an absence of a reasonable likelihood of rehabilitation.  *See In re Hao*, 644 B.R. 339, 347 (Bankr. E.D. Va. 2022) (finding cause to convert case because of an inability to confirm a chapter 11 plan based on feasibility and good faith grounds, as well as multiple other grounds of cause).  In addition to looking at whether a plan is confirmable, there are other considerations that go into determining

the likelihood of rehabilitation.    "Although the question of rehabilitation under section

1112(b)(4)(A) is not synonymous with reorganization (i.e., the debtor need not have a confirmed

reorganization plan in place to avoid conversion), the debtor still must have 'sufficient business

prospects' . . . to 'justify continuance of [a] reorganization effort.'"    *In re Hoover*, 828 F.3d 5, 10–

11 (1st Cir. 2016) (quoting *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 714–15 (Bankr.

D. Md. 2011); *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009)).

The burden remains on the moving party to demonstrate that there is no reasonable

likelihood of rehabilitation.    The U.S. Trustee has failed to meet his burden.

The U.S. Trustee insists the debtors cannot rehabilitate because they are currently working

as employees for a newly formed entity which intends to operate in the construction industry but

does not yet have a Class A contractor license.    Mr. Dobson explained that the new entity was

formed by, and owned by, an experienced building contractor who currently has a Class A

contractor license and is in the process of obtaining one for his new entity.    No one disputed that

the new entity does not currently have a contractor license, and no one disputed that the newly

formed entity is in the process of obtaining one.    This Court is not convinced that the delay in

obtaining the contractor license for a corporation owned by a separate third party is sufficient

evidence that Mr. Dobson and Mrs. Dobson will be unable to rehabilitate under chapter 11.    Hence,

the U.S. Trustee has not proven cause under section 1112(b)(4)(A).

*The U.S. Trustee failed to prove "gross mismanagement of the estate."*

"[G]ross mismanagement of the estate" constitutes cause to dismiss or convert a chapter

11 case.    11 U.S.C. § 1112(b)(4)(B).    "[W]hile 'gross mismanagement' is not defined by the

Bankruptcy Code, *Black's Law Dictionary* defines 'gross' as 'beyond all reasonable measure;

flagrant.'    Given the plain language, a debtor's mismanagement must be beyond all reasonable

measure." *In re Ozcelebi*, 639 B.R. 365, 388 (Bankr. S.D. Tex. 2022) (quoting *Black's Law Dictionary*, 11th ed. 2019)). "This subsection focuses on the conduct of the estate's affairs (not the debtor's) and requires that the mismanagement be 'gross' in character, meaning that the mismanagement is 'glaringly noticeable usu[ally] because of inexcusable badness or objectionableness.'" *In re 210 W. Liberty Holdings, LLC*, Case No. 08-677, 2009 WL 1522047, at *5 (Bankr. N.D.W. Va. May 29, 2009) (quoting *Webster's Ninth New Collegiate Dictionary* 538 (1991)).

Mr. Dobson admits that previously he was the sole shareholder of a corporation through which he operated a home construction business and in that capacity he failed to properly handle the accounting for that business. His corporation is now in a chapter 7 bankruptcy. He is now in an individual chapter 11 bankruptcy. The circumstances surrounding Mr. Dobson's prior business management, however, even if rising to the level of "gross mismanagement," have no bearing on the focus of the inquiry here which is "gross mismanagement *of the estate*." *See Ozcelebi*, 639 B.R. at 388 ("Analysis under § 1112(b)(4)(B) focuses solely on the management of the estate and does not include mismanagement of the pre-petition debtor."). The Court notes that evidence about Mr. Dobson's prepetition business activities is irrelevant to the section 1112(b)(4)(B) analysis.

The U.S. Trustee makes much of the fact that Mr. and Mrs. Dobson have been behind on their personal health insurance premiums, suggesting that this fact shows gross mismanagement. It is true the debtors paid their personal health insurance premium one month in arrears and at one point, in July, the insurance company issued a notice of termination with a demand for payment to reinstate the insurance. Either the payment default was cured or the termination was a mistake, because the debtors testified their insurance is now in place and the insurance company since then

covered their prescriptions.  Their testimony was not refuted.  The exhibits filed by the U.S. Trustee

show the insurance is still in effect.

The U.S. Trustee suggests that the failure to pay the insurance premium during the month

it was due is gross mismanagement of the estate.  Certainly, it is concerning that chapter 11 debtors

are paying their personal health insurance premiums in arrears, or not paying for personal health

insurance, yet the fact that on one occasion the individuals failed to pay the premium and cured

within the reinstatement period (or as the debtors described, paid within the grace period and the

notice of termination was a mistake) does not prove gross mismanagement of the estate.[6]  *See*

*Ozcelebi*, 639 B.R. at 388 (gross mismanagement must be "beyond all reasonable measure").

More than that, the U.S. Trustee argues the monthly operating reports that the debtors

prepared for the U.S. Trustee and filed with the Court were inaccurate.  This, according to the U.S.

Trustee, is proof of gross mismanagement.

The U.S. Trustee points to two reasons why the monthly operating reports were inaccurate.

First, in the section of the report containing a list of questions in which the debtors must check a

box as "yes," "no," or "n/a," they checked the box "yes" after the question "Have you paid all of

your bills on time?"  Because the debtors checked "yes" during months in which they did not pay

the second deed of trust on their house, or in the two months that they did not pay the escrow

payment in that month, or the one month they did not pay any health insurance premium payment,

he contends the monthly operating reports for those months were inaccurate.

---

[6]      To the extent the U.S. Trustee asserts cause under section 1112(b)(4)(C) for "failure to maintain appropriate
insurance that poses a risk to the estate or to the public" because the debtors did not timely make a health insurance
premium payment, the Court is unpersuaded.  First, the debtors do maintain health insurance and have in this case.
And, second, in light of the clear evidence that health insurance is in place, there is no risk to the estate or to the public
to serve as cause to dismiss or convert this case.

Second, the U.S. Trustee points to the fact that the monthly operating report includes a section labeled as "unpaid bills" and instructs the filer to "[a]ttach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid," which list is to be labeled as "Exhibit E."  Mr. and Mrs. Dobson timely filed their reports and submitted their bank statements, but they did not identify any unpaid bills or debts incurred since they filed bankruptcy.  Because the debtors failed to disclose any unpaid bills or debts incurred since the filing of the case yet during the case they did not pay the second deed of trust payment in the first months of the case, did not pay some of the health insurance premiums timely, and did not timely pay the escrow amounts set aside for the subchapter V trustee potential fees and expenses during two months of the case, the U.S. Trustee asserts the monthly operating reports for those months were false.

Based on these circumstances, the U.S. Trustee insists the monthly operating reports submitted to the U.S. Trustee were inaccurate.  Based on what the U.S. Trustee characterizes as inaccurate monthly operating reports, he insists the debtors have demonstrated gross mismanagement of the estate.

The Court is not convinced by the U.S. Trustee argument.  For one thing, the statute refers to "gross mismanagement."  This means the Court must find beyond "mismanagement" to rise to a level to become "gross" mismanagement.

During his testimony, Mr. Dobson described his belief that his monthly operating reports were accurate at the time he submitted the reports.  He further explained that once he was advised otherwise (regarding the payment of the escrow amounts and the second deed of trust), he promptly resumed those payments.  The Court finds the witness credible and his explanation regarding how he answered the questions on the U.S. Trustee forms asking about the payment of "your bills" and

"debts . . . you have incurred since the date you filed bankruptcy" plausible.  The U.S. Trustee

failed to show how answering "yes" to the question on the U.S. Trustee's form made a difference

to the affairs of the estate, was inexcusable, or had a measurable impact on the estate. The U.S.

Trustee has failed to show gross mismanagement of the estate under section 1114(b)(4)(B).

*The U.S. Trustee did not show "failure to comply with an order of the court" as cause.*

The U.S. Trustee next cites section 1112(b)(4)(E) as cause to convert this case to chapter

7.  Under section 1112(b)(4)(E), a court may find cause to convert or dismiss for "failure to comply

with an order of the court."  11 U.S.C. § 1112(b)(4)(E).  For a court to find that the weight of the

evidence establishes the debtor failed "to comply" with the orders of the court necessarily requires

a court to consider the circumstances of the alleged "noncompliance" (to conclude if the actions

did or did not "comply").  The absence of a time period or time limitation in the statute ("failure

to comply" rather than "failure to timely comply") suggests a court may consider if the ordered

actions have been accomplished or met at all.  When the purported noncompliance is simply

without material impact and has been explained and cured, it may be that compliance (albeit

untimely) has occurred.

Here, the U.S. Trustee charges that the debtors have failed to comply with two orders.  The

two orders are ones which were issued as a matter of course at the outset of this case: (i) a "Debtor-

In-Possession Order" ("DIP order"), and (ii) an "Order Setting (A) Status Conference; (B) Claims

Bar Date; (C) Deadline for Election under 11 U.S.C. § 1111(b)(2); and (D) Other Deadlines."  *See*

Exs. 3, 5.  These orders set forth instructions and deadlines for the debtor and for creditors.

According to the U.S. Trustee, the debtors have not complied with the DIP order because

they filed inaccurate monthly operating reports and because they paid their first mortgage payment

postpetition but not their second mortgage payment.  The U.S. Trustee did not identify which terms

of the DIP order address the accuracy of monthly operating reports, but all the same, the Court has already determined the alleged inaccuracies in the operating reports were excusable at the time they were filed. Further, the Court notes the debtors filed their reports timely and have filed operating reports consistent with the U.S. Trustee's interpretation once the U.S. Trustee identified the alleged inaccuracy.

The U.S. Trustee points to language in the DIP order directing the debtors "shall not pay any pre-petition debt" and the instructions his office provides to debtors informing them they "must pay all post-petition debts on a current basis." The U.S. Trustee suggests that the debtors did not abide by the terms of the order or the instructions when they paid their first mortgage obligation after entry of the DIP order but did not pay the second mortgage payment until a few months after entry of the order.

As this Court explained above, the Court finds the debtors offered a plausible explanation for why they did not immediately pay their second mortgage payment. The evidence presented simply did not show that the debtors failed to comply with an order of the Court to constitute cause under section 1112(b)(4)(E) to force the debtors out of chapter 11.

Next the U.S. Trustee points to the Court's order setting a status conference. This order includes an instruction to "within 30 days of the petition date and continuing monthly thereafter, . . . remit $1,000.00 to Debtor's counsel and Counsel shall hold the funds in trust for benefit of the Subchapter V Trustee pending the allowance of compensation and reimbursement of expenses under 11 U.S.C. § 330." The U.S. Trustee contends that the debtors have violated this provision directing an escrow payment and that such violation is cause to remove these debtors from chapter 11. As this Court already stated, the debtors promptly cured the missed escrow payments. The Court is satisfied the delay in making the monthly escrow payments was excused and that they are

now in compliance with the order.  The U.S. Trustee's evidence fails to prove cause to remove these debtors from chapter 11 under section 1112(b)(4)(E).

On top of all that, the U.S. Trustee argues that the debtors have not complied with the DIP order because, according to the U.S. Trustee, they have not amended their schedules.  The U.S. Trustee contends that the failure to amend schedules in a case is "tantamount to filing inaccurate monthly operating reports," and in that way is a failure to comply with the DIP order from this Court.

The schedules disclose generally "[p]otential funds due to debtor, unknown at this time, including . . . proceeds related to claims or causes of action that may be asserted by the debtor" valued at "$1.00."  *See* Ex. 16, at 7; Ex. 17, at 7.  The U.S. Trustee contends the debtors should amend the schedules to more particularly disclose what he asserts is a potential claim against the chapter 7 estate of DHI for repayment of loans the debtors may have made to the corporation.  In this way, the U.S. Trustee argues the debtors have not filed accurate schedules and as such have not complied with the DIP order in this case.

Having reviewed the evidence presented by the U.S. Trustee, having heard the testimony, and at the request of the U.S. Trustee having taken judicial notice of the Court's docket in the chapter 7 case of DHI,[7] the Court finds the U.S. Trustee has not proven that the debtors' schedules are inaccurate.  More to the point, the U.S. Trustee has not shown that the debtors have failed to comply with an order of this Court.  The DIP order did not direct the debtors to amend their bankruptcy schedules in this case.  The U.S. Trustee did not point to language in the order that the

---

[7]     The U.S. Trustee asked this Court to take judicial notice of case number 23-60158 for Dobson Homes, Inc. and in particular the fact that DHI scheduled among its creditors Mr. Dobson for loans he made to the corporation, and that the chapter 7 trustee has identified the chapter 7 case as an asset case.  DHI scheduled total liabilities of $10,113,135.33, and total assets of $2,797,256.66.  *See* Case No. 23-60158 (W.D. Va.), ECF Doc. No. 16.  The Court issued a notice of need to file proof of claim due to recovery of assets.  *See* Case No. 23-60158 (W.D. Va.), ECF Doc. No. 36.  To date the claims filed total $13,092,118.91.

debtors have not complied with; indeed, the evidence presented by the U.S. Trustee shows the debtors are in compliance with the DIP order.  Indeed, the U.S. Trustee did not show cause under section 1112(b)(4)(E).

*The U.S. Trustee did not prove "failure timely to provide information or attend meetings reasonably requested by the United States trustee."*

The U.S. Trustee includes in his list of cause section 1112(b)(4)(H) which identifies as cause "failure timely to provide information or attend meetings reasonably requested by the United States Trustee."  "This provision imposes sanctions for a debtor's failure to reasonably cooperate with the UST, who is charged under 28 U.S.C. § 586(a)(3) with the duty to 'supervise the administration of cases' under the Code.'"  *In re McKenna*, 580 B.R. 1, 13 (Bankr. D.R.I. 2017).

In this case, however, the U.S. Trustee has not identified any failure to timely file reports, answer discovery, respond to information inquiries, or other specific requests of the U.S. Trustee.  Likewise, the U.S. Trustee has not identified any meetings at which the debtors did not attend.  Instead, the U.S. Trustee reiterates his complaint that in certain months the debtors did not file accurate monthly operating reports and attach applicable supporting exhibits.  Once again, the U.S. Trustee claims that by not answering "no" to the inquiry "Have you paid all your bills on time?" and not attaching a schedule of unpaid bills, the debtors failed to timely provide information to the U.S. Trustee.  As already expressed, this Court finds the testimony of the debtors as credible, and their explanation justified why they completed the reports in the manner they did.  The Court finds the evidence insufficient to prove the monthly operating reports were false.  The Court concludes the U.S. Trustee did not prove cause under section 1112(b)(4)(H) to require this Court to remove these debtors from chapter 11.

*The U.S. Trustee did not prove cause generally under section 1112.*

During the trial, the U.S. Trustee from time to time declared that the debtors were making large house payments and expending large amounts on lawn maintenance suggesting the debtors failed to "tighten their belts."  He denounced their decisions "not to downsize the house" and "not pay escrow" during two of the months and their "choice" to provide for their dependent grandchild,[8] pets, and home maintenance.  The U.S. Trustee relied upon the debtors' expenses for their grandchild in one month, plus the lawn care expense in some months, and the house payment as support for his argument.  The U.S. Trustee implied that such failure to "tighten their belts" is a "breach of the debtors' fiduciary duty to their creditors" and so is cause to convert to chapter 7.

The debtors explained the reason for the expenses.  They explained their plan to sell their residence.  They explained their receipt of rental income from the residence to offset the mortgage payment.  The exhibits submitted by the U.S. Trustee (the debtors' bank statements and monthly operating reports) show the debtors have reduced living expenses during the case.  These individuals' most recent plan reflects a means to provide a recovery to their creditors consistent with the "fiduciary duty" the U.S. Trustee references.  In the end, even if a failure to "tighten their belts" is cause to convert or dismiss a chapter 11 case, the Court finds the U.S. Trustee did not prove such circumstance here.

For all the U.S. Trustee's complaining about the debtors' failure to "downsize" their residence, the Court notes that the most recent plan filed in this case provides for the sale of the residence.  *See* Ex. 22.  Initially the debtors filed a plan that did not include a sale of the residence.  *See* Ex. 20.  One creditor objected.  *See* ECF Doc. No. 100.  The U.S. Trustee also objected.  *See* ECF Doc. No. 91.  The creditor's objection complained that the debtors should sell their home.

---

[8]     Mr. Dobson testified that one of his children is deceased and he and his wife now care for their grandchild. In addition, they have another dependent child.  While it was not explicit, it was implicit that the dependent grandchild is the child of the debtors' deceased child.

*See* ECF Doc. No. 100.  After that, the debtors filed a plan in which they propose to sell their home.  It appears that the debtors are responding to the objections.[9]  Whether the objections to confirmation are resolved, or will be resolved, will be known in the upcoming weeks.  What is apparent is that the debtors have amended their plan in response to the objections.  Through the chapter 11 process, the debtors may achieve confirmation of a plan.  If they are unable to confirm a plan, they will at that time confront the consequences.

## CONCLUSION

For the Court to dismiss or convert a chapter 11 case under section 1112(b) of the Bankruptcy Code, it must find cause to do so.  In this case, the U.S. Trustee did not even come close to proving cause. The U.S. Trustee's evidence showed the debtors are paying their expenses and maintaining a positive bank balance.  His evidence showed the debtors are preserving value for the estate.  His evidence showed the debtors are current with payment obligations to date, have filed their reports timely, and have filed a plan that is responsive to the requests of the creditor who has participated in this case as well as the requests of the U.S. Trustee.  To overstate the impact of the minor error (if any) or reasonable misunderstanding in the manner the original monthly operating reports were completed as if it is gross mismanagement and failure to comply with an order of the Court is a stretch.  To argue that the debtors need to amend their schedules to name

---

[9]      More specifically, the proposed plan includes the following provisions.  The debtors will seek, within one year of the effective date, approval to retain a professional to assist with selling their residence.  *See* Ex. 22, at 8.  If the sale of the property is not closed within thirty-two months of the effective date, the debtors will seek approval within thirty days thereafter to retain an auctioneer to auction the property with the auction to be completed within ninety days of Court approval to retain the auctioneer.  *See id.*  Further, if the debtors default in their plan payments (and such default is not excused, agreed to by creditors, or modified by order of the Court), the debtors must file a motion with the Court to retain an auctioneer to sell the property with an auction to be completed within sixty days of such approval.  *See id.* at 19.  These provisions are offered as a means to assure liquidation of the debtors' primary asset should the debtors not successfully complete their plan.  In addition, if the plan is a nonconsensual plan, the debtors will not receive a discharge until after completion of all payments due within the first three years of the plan, at the earliest.  *See id.* at 19–20; 11 U.S.C. §§ 1191(b); 1192.  These provisions are intended to provide protection to the creditors in the event of default by the debtors.

with specificity a claim against a chapter 7 debtor and failure to do so is violation of the Court's DIP order is specious at best.  And for the Court to find the debtors are refusing to downsize when they are proposing a plan that provides for a sale of the asset allegedly in need of downsizing (along with protections for creditors in the event of a default under the plan) would be obvious error.  After hearing all of the evidence presented and the arguments, the Court does not find cause to convert this case.  Accordingly, the Court grants the debtors' motion for judgment on partial findings pursuant to Rule 52(c).

A separate order will be issued consistent with this decision.

The Clerk is directed to send copies of this Memorandum Opinion to the debtors, counsel for the debtors, and counsel for the U.S. Trustee.