FILED LYNCHBURG, VA
U.S. BANKRUPTCY COURT

JAN 0 4 2024

DEPUTY CLERK   9:40AM

## Response to Notice of Objection

Louis R. Morris, claimant (Claim No. 43-1)
Bankruptcy Case of Tommy Dewayne Dobson
And Anne Christine Dobson (Case No. 23060148)

Below are my responses to the specific objections from the Trustee to my claim against the Dobsons (the debtors) as well as other factors that support the validity of my claim. Exhibits supporting my responses are attached.

1. "The Claimant has attached no documentation to support that the Dobsons personally received the "Funds paid to debtor" or for any damages arising from the "Home was not completed".

- Exhibits #1-5 represent my bank records for five payments totaling $407,773 made to Dobson Homes for the construction of my home that was never completed (one check and four wire transfers). The Dobsons are the owners of Dobson Homes. As a result, my payments, therefore, went directly to the Dobsons and were used in their business ventures or for their personal use. No one other than the Dobsons had access to the bank account of Dobson Homes. Please note that Exhibits #1-5 were attached to my original claim submission (Exhibit #6).
- With the exception of the initial deposit which was required by the Construction Contract, **all** of the invoices presented to me for payment to Dobson Homes were prepared by Mrs. Dobson and reviewed by Mr. Dobson, and were submitted to me directly from Mrs. Dobson.
- To argue that the Dobsons and Dobson Homes are separate and distinct entities is, in my opinion, a sham. There is no difference in fact or in actual operations between Dobson Homes and the Dobsons.

2. ."…the Claim was filed after the deadline to file a proof of claim in the Case, April 18, 2023."

- Please note on Exhibit #6 that my claim against Dobson Homes was filed on March 30, 2023. The on line system for filing a claim against the Dobsons malfunctioned while I was filing it, and I do not have a copy of the claim submitted.
- The fact that my claim may have been filed somewhat late is not a valid reason to invalidate my claim.

3. "…the Claimants have provided no evidentiary support for asserting a claim against the Debtors, including any contract between the Debtors and the Claimant…"

1

- Please see Exhibit #7 which is the Construction Contract dated July 7, 2021 between Dobson Homes Inc. and Louis R. Morris (claimant) for the construction of a home known as Lot 12, Section C Phase 1, Glenmore Subdivision Albemarle County Keswick, Virginia, also known as 1509 Kinross Lane Keswick, Virginia. Once again, the Dobsons are the owners of Dobson Homes. They are one and the same. In my opinion, this contract was legally binding on Dobson Homes and the Dobsons to perform the construction of my home in accordance with the terms of the contract. Dobson Homes and the Dobsons may be separate legal entities, but to say they are not one and the same in terms of actual operations is a complete sham, in my opinion.

4. On "Official Form 106E/F" ("Creditors Who Have Unsecured Claims") **submitted by the Dobsons** on February 28, 2023 in their initial bankruptcy filing, **the Dobsons** list me as an unsecured creditor (page 25)(see Exhibit #8). Furthermore, under "Who incurred the debt?", **the Dobsons** have check the box "Debtor 1 and Debtor 2 only". Anne Christine Dobson and Tommy Dewayne Dobson **ARE** "Debtor 1 and Debtor 2". No other boxes are checked to identify who incurred the Debt.

Below are additional factors as to why the Bankruptcy Court and the Trustee should allow my claim in this case.

1. In my opinion, Dobson Homes and the Dobsons failed to perform under the terms of the Construction Contract dated July 7, 2021. Despite committing to complete my home within "300 days", by August 2022 (nearly 13 months from the time the contract was signed), only the foundation and under-slab plumbing pipes had been completed (see Exbibit #9, letter from second builder, Peak Builders, who completed the construction).

2. While the Construction Contract was in force, I paid Dobson $407,773 as per the required draw schedule to pay for the estimated cost of the construction over the term of the contract (see Exhibit #10). This was far in excess of the value of services and materials provided by Dobson. In my opinion, this is once again a violation of the Construction Contract as the excess funds paid to Dobson were **NEVER** repaid to me and must have been used for some other purpose other than their intended and contractual purpose, the construction of my home. The Bankruptcy Court and the Trustee should note that the draw schedule required by the Construction Contract generally bears no relationship to the funds expended by Dobson during the construction period and is just an administrative tool to amortize the estimated cost of the construction over the construction period.

3. Of the $407,773 in payments to Dobson, $147,074 was for material orders and allowance overages (Exhibits #11 & 12).

2

These payments were basically for deposits and/or payments for current or future material orders. These payments for deposits and material orders were **NEVER** made by the Dobsons, and were **NEVER** repaid to me, and must have been used for some purpose other than the construction of my home. Once again, this is in direct violation of the Construction Contract. Furthermore, in my opinion, this $147,074 in payments to the Dobsons that were never used for their intended purposes and never repaid to me constitute a violation of law, potentially including fraud and/or embezzlement. It is my understanding of bankruptcy law that claims based on fraud or embezzlement can not be dismissed by a bankruptcy filing.

4. The Bankruptcy Court and the Trustee should be aware that I have filed a criminal complaint against the Dobsons in this matter with the Police Department of Albemarle County. This complaint is currently under investigation and formal charges may be made against both Anne Christine Dobson and Tommy Dewayne Dobson.

5. Due to the non-performance of Dobson Homes, I was forced to terminate the Construction Contract on August 29, 2022 in order to complete my home within a reasonable timeframe (see Exhibit #13 for my letter of termination to Dobson Homes). Being forced to terminate the contract and hire another builder cost me substantial additional monies over and above the estimated budget to complete the home (see Exhibit #15 for the specific reasons for the termination which had been previously communicated to Dobson). Thus, not only did the Dobsons violate the terms of the Construction Contract, but they also caused me considerable damages in terms of substantial extra costs to complete my home.

6. On September 6, 2022, Tommy Dewayne Dobson acknowledged and accepted in writing the receipt and the terms of the Termination Letter (Exhibit #14). One of the terms of the termination letter was that Dobson would provide to me a "full accounting" of the amounts paid by me for the project so I could be repaid by Dobson for any amounts in excess of the actual expenditures by Dobson on the project. As a further example of his bad faith and lack of transparency, Dobson has **NEVER** provided such "full accounting." Below is the written response from Dobson to my Termination Letter:

"I have received your termination letter and agree to the terms listed and the terms we have discussed again today over the phone." (September 6, 2022 email from Tommy Dobson to me.) (Exhibit #14)

The Bankruptcy Court should insist that Dobson provide a full and complete accounting of the funds expended on my project versus the monies paid to him and repay to me the difference.

3

7. On August 22, 2022, in a face-to-face meeting in my home, Dobson verbally promised me and my wife that he would repay any funds that I had paid to him in excess of the monies expended on my project and issue me a promissory note if necessary. This has never been done (Exhibit #15).



FILED LYNCHBURG, VA
U.S. BANKRUPTCY COURT

JAN 04 2024

By LM          9:40AM
DEPUTY CLERK

**LOUIS R. MORRIS**
**1509 Kinross Lane**
**Keswick, Virginia 22947**
January 3, 2024

Clerk
United States Bankruptcy Court, Western District of VA
1101 Court Street
Room 166
Lynchburg, Virginia 24504

Dear Sir or Madam:

I am writing in response to the Notice of Objection to
Claim No. 43-1 (Louis R. Morris, Claimant) in the
bankruptcy case of Tommy Dewayne Dobson and Ann Christine
Dobson (Case No. 23-60148).

With all due respect to the Bankruptcy Court and the
Trustee, I **strongly** and **strenuously** object to the Trustee's
objection to my claim, including **all** of the Trustee's
reasons for his objection.

My detailed explanation for my objection as well as my
supporting documentation are attached.

If there is anything else I need to provide the Bankruptcy
Court prior to the January 18, 2024 video conference,
please contact me at the above address or at 434-806-8845.
Please note that I shall be in attendance at the video
conference on January 18.

Respectfully,

Louis R. Morris
(Claim No. 43-1)



| Date | Description | Amount | Cash Balance |
|------|-------------|--------|--------------|
| 02/01/2022 | WIRE TRANSFER TO BANK (Cash) | -$96,962.00 | -- |

### WIRE TRANSFER TO BANK - DOBSON HOMES INC ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓(Cash)

| Amount | | -$96,962.00 | |
|--------|--|-------------|--|
| 01/31/2022 | Check Paid # 9685 (Cash) | -$508.26 | -- |
| 01/27/2022 | WIRE TRANSFER TO BANK (Cash) | -$4,677.00 | -- |
| 01/25/2022 | Check Paid # 9684 (Cash) | -$1,134.64 | -- |
| 01/24/2022 | Check Paid # 9679 (Cash) | -$150.00 | -- |
| 01/24/2022 | Check Paid # 9688 (Cash) | -$150.00 | -- |
| 01/24/2022 | Check Paid # 9683 (Cash) | -$150.00 | -- |
| 01/24/2022 | Check Paid # 9680 (Cash) | -$300.00 | -- |

EXHIBIT 2

| Date | Description | Amount | Cash Balance |
|---|---|---|---|
| 05/03/2022 | DIRECT DEBIT VZ WIRELESS VEVZW WEBPAY (Cash) | -$223.21 | -- |
| 05/03/2022 | DIRECT DEBIT UCS ONLINE PAYMENT (Cash) | -$535.77 | -- |
| 04/29/2022 | Check Paid # 9715 (Cash) | -$150.00 | -- |
| 04/29/2022 | Check Paid # 9721 (Cash) | -$150.00 | -- |
| 04/29/2022 | Check Paid # 9720 (Cash) | -$150.00 | -- |
| 04/29/2022 | DIRECT DEBIT AMERICAN FUNDINVESTMENT (Cash) | -$2,500.00 | -- |
| 04/27/2022 | WIRE TRANSFER TO BANK (Cash) | -$64,641.00 | -- |

**WIRE TRANSFER TO BANK - DOBSON HOMES INC** ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓  ▓▓▓▓▓▓▓▓ **(Cash)**

**Amount**       -$64,641.00

EXHIBIT 3

| Date | Description | Amount | Cash Balance |
|------|-------------|--------|--------------|
| **WIRE TRANSFER TO BANK - DOBSON HOMES INC** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Cash) | | | |
| **Amount** | -$70,028.00 | | |
| 05/26/2022 | Check Paid # 9731 (Cash) | -$346.00 | -- |
| 05/24/2022 | CASH ADVANCE ATM4674 1658 STATE FAR CHARLOTTESVI VA0523227425131GZ06GST (Cash) | -$143.50 | -- |
| 05/20/2022 | DIRECT DEBIT AMERICAN FUND INVESTMENT (Cash) | -$2,500.00 | -- |
| 05/19/2022 | DIRECT DEBIT GELEN... FIRSTECH (Cash) | -$21.33 | -- |
| 05/18/2022 | DIRECT DEBIT TRAVELERS PER INSUR (Cash) | -$467.00 | -- |

EXHIBIT 4

| Date | Description | Amount | Cash Balance |
|---|---|---|---|
| 06/08/2022 | DIRECT DEBIT LumenCenturyLiSPEEDPAY (Cash) | -$104.17 | -- |
| 06/07/2022 | Check Paid # 9734 (Cash) | -$150.00 | -- |
| 06/07/2022 | Check Paid # 9737 (Cash) | -$150.00 | -- |
| 06/07/2022 | Check Paid # 9730 (Cash) | -$150.00 | -- |
| 06/07/2022 | WIRE TRANSFER TO BANK (Cash) | -$77,026.42 | -- |

**WIRE TRANSFER TO BANK - DOBSON HOMES INC** ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ **(Cash)**

**Amount**       -$77,026.42

| 06/06/2022 | DIRECT DEBIT UnitedHCMedicaMedInsPymt (Cash) | -$30.90 | -- |



**Fill in this information to identify the case:**

Debtor 1   Dobson Homes, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Western District of Virginia**

Case number:   **23-60158**

**FILED**

**U.S. Bankruptcy Court**
**Western District of Virginia**

3/30/2023

**James Reynolds, Clerk**

## Official Form 410
## Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:  Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Louis R. Morris |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor     Louis R Morris Trustee, Louis R Morris Revocable Trust |

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Louis R. Morris

Name

3190 Prestwick Place
Keswick, VA 22947

Contact phone     434-806-8845

Contact email     morris1946@aol.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

Where should payments to the creditor be sent? (if different)
1509 Kinross Lane

Name

Keswick, VA 22947

Contact phone     434-806-8845

Contact email     morris1946@aol.com

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

EXH. B.1  6

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No <br> ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

**7. How much is the claim?**    $ ___307773.00___   **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Funds paid to debtor to build a home at 1509 Kinross Lane Keswick, VA 22947. Home was not completed.

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ _____

**Amount of the claim that is secured:**   $ _____

**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ _____

**Annual Interest Rate** (when case was filed)   _____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     3/30/2023
                     MM / DD / YYYY

/s/  Louis R Morris

Signature

Print the name of the person who is completing and signing this claim:

Name              Louis R Morris
                  First name    Middle name    Last name

Title

Company
                  Identify the corporate servicer as the company if the authorized agent is a servicer

Address           3190 Prestwick Place
                  Number  Street
                  Keswick, VA 22947
                  City  State  ZIP Code

Contact phone     434—806—8845          Email    morris1946@aol.com

**United States Bankruptcy Court**
**Western District of Virginia**

Calculation and Basis of Claim

Case Numbers 23-60148 & 23-60158

Debtors: Tommy Dewayne Dobson (23-60148) & Anne Christine Dobson (23-601-48)
        Dobson Homes, Inc. (23160158)

Creditor:  Louis R. Morris
          3190 Prestwick Place
          Keswick, VA 22947

          Louis R. Morris Trustee, Louis R. Morris Revocable Trust
          3190 Prestwick Place
          Keswick, VA 22947

            Estimated Amount and Basis of Claim
              Funds Paid on Contract to Build Home
              At 1509 Kinross Lane Keswick, VA 22947

| | | | |
|---|---|---|---|
| Deposit | $99,116 | 7/12/21 | |
| Draw #1 | $96,962 | 1/31/22 | clearing, excavation, permits |
| Draw #2 | $64,641 | 4/27/22 | footings, partial foundation |
| Draw #3 | $70,028 | 5/31/22 | material orders |
| Reconciliation #1 | $77,026 | 6/7/22 | allowance overages for windows, doors, cabinets, etc. |
| Total | $407,773 | | |
| Minus | $100,000 | | estimated value of materials, services, labor provided |
| Claim | $307,773 | | |

Homes Was Never Completed By Dobson Homes

DocuSign Envelope ID: 1B159F6A-C

EXHIBIT 7

FINAL COPY

## CONSTRUCTION CONTRACT
(Legally Binding Contract)

THIS CONSTRUCTION CONTRACT ("AGREEMENT") is made this _7th_ day of _July, 2021_, between DOBSON HOMES INC. ("CONTRACTOR"), a Virginia registered contractor with Class A registration number 2705 112606A, whose current mailing address, email address, and phone number are Dobson Homes Inc. / P.O. Box 7181 / Charlottesville, VA 22906 / (434) 591-1188 / info@dobsonhomesva.com and Louis R. Morris jointly and severally (together, herein called "OWNER"), whose current mailing address, email address, and phone number are _3567 Glasgow Lane, Keswick Va. 22947, Louis Morris - morris1946@aol.com, (434) 806-8845;_

## W I T N E S S E T H :

**1.      THE PROPERTY.** Owner has an insurable deed interest in and to that certain real property known as; Lot  _12_ , Section  _C_  Phase  _1_ , _.695 acres_  Subdivision, _Glenmore.   Albemarle_ County, Keswick Virginia, 22947 ("PROPERTY").

**2.      IMPROVEMENTS.** Owner and Contractor intend that Contractor shall construct improvements on the Property in accordance with the terms and provisions of this Agreement to include house built by CONTRACTOR in accordance with the attached Scope of Work, plans and specifications (the "Project Documents"), all of which are specifically incorporated herein by this reference. Contractor shall furnish all equipment, tools and materials and perform all of the labor shown on the Project Documents, all of which have been initialed by the parties and may be collectively referred to herein as the "Plans". In the event of a conflict between any drawings and the specifications, the specifications shall control. The term "Work" as used in this Agreement includes all labor necessary to complete the construction, including site preparation, installation of utilities (including in-house wiring for telephone and cable/internet), construction, paving, landscaping, grading, and walkways together with all materials, fixtures and equipment required for such construction to provide a "turn-key" completed residence built in a good and workmanlike manner according to industry standards, in conformity with the Plans, allowances and with all applicable state and local building codes and ordinances. The Contractor shall perform the Work to the extent it is consistent with the Plans and reasonably inferred from them as being necessary to produce the Work. All materials, supplies, appliances, and other personal property that will be incorporated into the improvements shall become property of the Owner upon closing on the Property. The performance of the Work shall commence _90 +/- days_ , and provided: 1) all applicable permits have been obtained, and 2) weather and ground conditions permit such commencement. In the event that a necessary permit has not been obtained or weather or ground conditions prohibit commencement at such time, the Contractor will commence the Work as soon as reasonably possible after the required permit is received or weather or ground conditions become reasonably suitable. The anticipated time of completion of the Work shall be _300_ days, provided that the Contractor shall not be held responsible for any actual delays caused by weather, labor shortages, delays in material shipments (unless such delay was occasioned by the Contractor), acts of God, Owner's defaults under this Agreement, or any other causes that are beyond the Contractor's control. Delays resulting from matters beyond Contractor's control do not constitute abandonment. At all times the Contractor shall endeavor to ensure that the Work progresses and is completed in a timely manner. Should the actual completion date extend more than 30 days beyond the projected contract completion date by fault of the Contractor or any subcontractor, the Contractor shall credit Owner with the Owner's rental and storage costs for the period beginning on the 30th day and ending upon actual completion. If penalties are incurred by the lender for the construction loan, any such penalties shall be credited to the final payment for the WORK.

**3.      PURCHASE PRICE.** As consideration for this Agreement and the completion of the Work. the purchase price of the WORK is One Million One Hundred Seventy Six Thousand Four Hundred Sixty Seven  **AND No/100 DOLLARS,**

| | |
|---|---|
| $ 1,176,467.00 | (PURCHASE PRICE), and such purchase price shall be paid to CONTRACTOR as follows: |
| $   99,116.00 | by DEPOSIT by personal check paid to the Contractor within ___ days of the full execution of this Agreement ("DEPOSIT"). |
| $ 1,077,351.00 | PER CONSTRUCTION DRAW SCHEDULE, as specified in this Agreement. |
| $ 1,176,467.00 | Total |

**4.      ALLOWANCES.** Any work to be performed by CONTRACTOR for which the exact cost has not been determined at the time of execution of this Contract shall be covered by Allowances contained in the Project Documents and specifically set forth on the Scope of Work. These Allowances are included in the total Purchase Price set forth in Section 3 above. If an Allowance is not fully spent, the Contractor shall credit the Owner for the difference between the actual cost and the Allowance amount at the time of Final Payment. If Owner spends more than the Allowance, the Contractor will issue a change order and an amendment to change the sales price. AN UPDATE OF ALLOWANCES USED TO BE REPORTED EVERY 60 DAYS DURING PERIOD OF CONSTRUCTION.

**5.      DEPOSIT; ACCOUNTING; DRAW REQUESTS; MECHANIC'S LIEN AGENT.** Owner shall make the DEPOSIT directly to the Contractor. The Contractor shall apply the Deposit toward the Work and construction of the improvements to the Property only to

DocuSign Envelope ID: 1B159F6A-C6D2-4CDF-9150-1D1562BF599E



no other project or undertaking by the Contractor. The Deposit and all other payments made by Owner shall be credited against the final payment of the Purchase Price. If for any reason the contingencies set forth in this Agreement are not satisfied, the Contractor shall credit the Owner the full amount of the deposit minus any costs actually incurred by the Contractor during the contract period to include any incurred permits, plans and surveying cost for this project. At the request of the Owner, the Contractor shall provide an updated accounting of any Allowances, provided, however, that the Contractor shall not be required to provide periodic accountings of the entire project until the accounting provided in connection with final payment. Contractor will provide a draw request to the Owner per O W N E R ' S approved draw schedule. The requested amount shall conform to the percentage of completion as set forth on the draw schedule as approved by the Owner. The parties agree that Owner's attorney, James P. Cox III, Michie Hamlett, 310 4th Street NE, Charlottesville, VA 22902, jcox@michiehamlett.com_____shall be the posted Mechanic's Lien Agent for the purposes of this Agreement. Contemporaneous with the progress payments described in this section, the Contractor will provide the Owner with fully executed waivers and releases of mechanic's and material men's liens, in form satisfactory to the O W N E R  and Mechanic's Lien Agent.

6.  **PROGRESS PAYMENTS AND FINAL PAYMENT.**

(A)  Except for the Deposit, the Contractor shall issue to the Owner interim billings/invoices for construction in progress in accordance with the schedule approved by the OWNER attached hereto as Schedule A.  Payment shall be made as approved by the O W N E R. Each such interim billing/invoice shall specify items for which payment is being requested. The requested amount shall conform to the percentage of completion as set forth on Schedule A as approved by the OWNER. S e e  A d d e n d u m .

(B)  Final payment of Purchase Price ("Final Payment") shall be due upon (a) Contractor's receipt of Certificate of Occupancy, temporary or permanent; and (b) a joint inspection of the Property by the Contractor and the Owner, at which time: 1) the improvements on the Property shall have been constructed in accordance with the Plans, as they may have been amended from time to time, 2) the Property shall be in broom clean and turn-key condition, with all glass scraped, if necessary, and cleaned, completely free of all trash, rubbish, debris, boxes and of the Contractor's equipment as well as any leftover materials and inventory. The Owner agrees to conduct the joint inspection within three (3) days of Contractor's notice that the Property is ready for inspection. If the parties identify any deficiencies or incomplete work at the time of such inspection, then the parties shall prepare a list describing the deficiencies or incomplete work, with a fair market value of each item and reasonable timeline for Contractor's completion of each such item specified, provided that there shall be no escrow for touch-up painting or drywall work. An account equal to one hundred percent (100%) of the total value of all such items shall be held in escrow by the Owner's attorney at the time of Final Payment. The Contractor shall at this time be paid the remaining balance of the Total Price, as adjusted by any Change Orders, less any escrowed amount. Thereafter as each item for which an escrow has been established is satisfactorily completed by Contractor and approved in writing by Owner, which approval will not be unreasonably withheld or unduly delayed, the specified value of such item shall be promptly paid by the escrow agent to the Contractor. The provisions of this paragraph shall survive the Final Payment, and shall not be deemed merged upon completion of the Work.

7.  **OWNER'S PERFORMANCE ABILITY.** OWNER grants CONTRACTOR permission to discuss with Lender all details of "Performance Ability" (defined as OWNER's financial ability to secure a loan and provide the funds due at settlement as set forth in this Agreement). Upon request, OWNER will promptly execute any documents required to evidence this permission and will provide CONTRACTOR with documentary evidence of OWNER's ability to provide the additional funds due at settlement.

8.  **FINANCING CONTINGENCY.** If one or more loan amount(s) are set forth in Section 3, then this Agreement is contingent upon the OWNER obtaining one or more written commitment(s) for a loan(s) secured by deed(s) of trust on the PROPERTY in the amount(s) as set forth in Section 3. OWNER agrees to make a good faith, complete written application(s) for such financing (including the payment of any required application, credit report, appraisal and other advance fees) within 5 business days of the date of this Agreement, and promptly furnish the Lender all requested documentation and to diligently pursue in good faith obtaining written commitment(s) for such financing. OWNER shall promptly send by mail or fax a copy of any written loan commitment or notice of disapproval.  If OWNER receives such commitment(s) for the financing set forth in Section 3, OWNER agrees to accept same, send a copy of the acceptance to CONTRACTOR and to pay all fees and execute all documents to close and fund the loan. In the event that the Loan commitment contains contingencies that are unacceptable to the Contactor in its absolute and sole discretion, then either party may at any time subsequent to that date terminate this Agreement by providing written notice thereof to the other party, in which event neither party shall have any further rights, duties or obligations pursuant hereto. Failure to diligently pursue obtaining the Loan shall be deemed a material breach of this Agreement. Should the commitment(s) contain conditions, including, but not limited to sale of other owned property or elimination of debt, OWNER agrees to be responsible for and assumes the risk of fulfilling any such conditions. The failure to satisfy any such conditions or the termination or expiration of such commitment(s), for any reason, shall not release the OWNER from his obligations under this Agreement unless notated as a contingency item. If OWNER does not obtain such commitment(s) and so notifies CONTRACTOR in writing before 5:00 p.m. local time on____T.B.D.___, then this Agreement shall terminate and the DEPOSIT shall be refunded to OWNER, less any actual, incurred expenses (for example, permits, design fees). If no notice with regard to the commitment is received by CONTRACTOR by the above deadline (or such later time as the parties may agree in writing), the CONTRACTOR shall have the absolute right to (a) deem the financing contingency satisfied, or (b) terminate this Agreement by mailing to OWNER written notice of such termination and returning the DEPOSIT. If OWNER fails to obtain timely loan commitment(s) because of (i) material misstatements made by OWNER about his financial or credit

DocuSign Envelope ID: 1B159F6A-C6D2-4CDF-9150-1D1562BF599E



status, (ii) the failure of OWNER to make timely application or to diligently and in good faith pursue obtaining such financing, or (iii) the failure of OWNER to cooperate with his lender in processing the mortgage loan or application, then CONTRACTOR may declare OWNER to be in default and shall be entitled to recover all damages, including attorney's fees. In such case, CONTRACTOR may avail itself of any legal or equitable rights and remedies, including, but not limited to, application of the DEPOSIT to such damages.

9. **SUBSTITUTIONS AND SELECTIONS.** After consultation with Owner and with the permission of Owner, CONTRACTOR reserves the right to make such changes or substitutions of equal value and quality in the construction in CONTRACTOR's judgment as may be required by material shortages, to avoid delays, other reasons beyond the direct control of CONTRACTOR or as required, authorized or approved by Lender or governmental agencies having jurisdiction thereof provided, however, that the Contractor shall give Owner at least five (5) days advance written notice of its intent to substitute any material component of the Work during which time Owner may select its own substitute materials, goods, etc. In the event of an out of stock ALLOWANCE item the Owner shall promptly make alternative selections from immediately available stock at any local supplier, in which event a change order shall be entered into reflecting any variance, and the Purchase Price shall be adjusted accordingly. If, in the case of an Allowance, the Owner is unavailable or fails to make an alternative selection within seven (7) days of receipt of notice, then the CONTRACTOR reserves the right to make such changes or substitutions of equal value and quality in the construction in CONTRACTOR's judgment as may be required by material shortages, to avoid delays, other reasons beyond the direct control of CONTRACTOR or as required, authorized or approved by Lender or governmental agencies having jurisdiction thereof. When possible and applicable as determined by CONTRACTOR, OWNER may make selections from CONTRACTOR's samples or from CONTRACTOR's suppliers, as directed by CONTRACTOR. All selections must be made in accordance with Contractor's reasonable construction schedule. Contractor shall give as much advance written notice as reasonably possible in connection with its need for any selection.

10. **MODIFICATIONS/CHANGE ORDERS.** This Agreement, together with the exhibits, amendments and change orders, contains the entire agreement between the parties and shall not be modified, except in writing, signed by CONTRACTOR and OWNER. Neither party is bound by any oral statement or representation made by the party or its agents. If OWNER is husband and wife, the signature of either spouse on a change order shall be deemed to bind the other spouse. Should additions and/or changes be made, the date of completion may be altered. Any additional charge for the changes or any change in the completion date shall be noted on the change order. Unless otherwise specified by CONTRACTOR in the change order, all additional charges for change orders shall be paid in cash to CONTRACTOR at the time of signing the change order in order to make it effective. If any change order results in a decrease in the Purchase Price, the amount of the Final Payment will reflect a credit for such decrease. Each change order may contain more than one actual change. Allowance overages shall be handled as change orders.

11. **CONTRACTOR RESPONSIBILITIES.** At Contractor's expense, the Contractor shall apply, pay for, and obtain all necessary building, occupancy, and other governmental permits and licenses which may be required in connection with the Work and for the use and occupancy of the Property and shall notify the Owner immediately if any component of the Plans prevents Contractor from obtaining any such permit. The Contractor shall be solely responsible for all construction means, methods, techniques, sequences and procedures, and shall pay for all labor, materials, tools, equipment, and machinery required for the proper completion and execution of the work. The Contractor warrants to the Owner that all materials, fixtures and equipment incorporated in the Work shall be new (unless otherwise specified in the Plans and Project Documents), and that the Work will be of good quality according to industry standards, and in conformity with the Plans and applicable building codes. The Contractor hereby indemnifies the Owner against all liabilities, claims, losses and expenses, including Owner's reasonable attorney's fees, for personal injury or property damage arising out of or caused by any act or omission of Contractor, his subcontractors, agents, or employees arising in or about the Property at any time the Work is conducted, except that Contractor assumes no liability for any accidents or injuries to Owner, Owner's family, or assigns who visit the Property. The Contractor further agrees to use proper care and caution in the performance of its work so as not cause damage to any adjacent property. The Contractor shall indemnify and hold the Owner harmless from any liabilities, claims, or demands for damage to such adjacent property. The Contractor shall remedy any defects due to faulty materials or workmanship and pay for any damage to other work resulting therefrom, which shall appear within a period of 5 years from the date of issuance of the Certificate of Occupancy by the local governing agency. In the event that Owner gives its permission for Work on the Property to be done by another person or entity other than the Contractor during the construction and the warranty period, both parties acknowledge that the Contractor shall not be liable for defective Work performed by the third party, damages to Contractor's Work caused by the third party, presence or lack of insurance, or for enforcing safety upon the third party.

12. **WARRANTY.** Unless agreed upon otherwise in writing, the materials and workmanship in the new dwelling on the PROPERTY are warranted by CONTRACTOR to be sufficiently (a) free from structural defects, so as to pass without objection in the trade, and (b) constructed in a workmanlike manner, so as to pass without objection in the trade, for a period of 1 years from time of possession by the OWNER, whichever occurs first. Owner understands that the Contractor cannot extend any manufacturers warranties since the assembly of these items are done outside Contractor's supervision and control, if any manufacturers warranties are voided due to improper installation and improper craftsmanship by the Contractor, the Contractor will assume such warranty and replace at CONTRACTORS cost. THIS WARRANTY CANNOT BE TRANSFERRED EXCEPT WITH WRITTEN APPROVAL OF CONTRACTOR.

EXCEPT AS SET FORTH ABOVE, CONTRACTOR EXCLUDES AND DISCLAIMS AND OWNER WAIVES ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE WARRANTIES OF GOOD WORKMANSHIP, HABITABILITY, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, INCLUDING ALL WARRANTIES SET FORTH IN VIRGINIA CODE §55-70.1. CONTRACTOR MAKES NO REPRESENTATION OF AND DISCLAIMS ANY WARRANTY AS TO THE PRESENCE OR LACK OF RADON, MOLD OR OTHER HAZARDOUS ENVIRONMENTAL CONDITIONS OR AS TO THE EFFECT OF RADON, MOLD OR

DocuSign Envelope ID: 1B159F6A-C6D2-4CDF-9150-1D1562BF599E



ANY SUCH CONDITION ON THE PROPERTY OR ITS RESIDENTS.  OWNER WAIVES ANY WARRANTIES WHICH COULD BE CONSTRUED TO COVER THE PRESENCE OF RADON, MOLD OR OTHER HAZARDOUS ENVIRONMENTAL CONDITIONS.  THE ONLY WARRANTIES WHICH CONTRACTOR PROVIDES TO THE OWNER ARE THOSE CONTAINED IN THE PRECEDING PARAGRAPH OF THIS SECTION.

When repairs are required pursuant to the above warranty, the OWNER shall send a written list to CONTRACTOR.  Correction of appropriate warranted items shall be made by CONTRACTOR as expeditiously as possible allowing a reasonable time for scheduling. The OWNER is encouraged to wait a reasonable time to allow detection of a complete call-back list before submitting, except in the event of emergencies, issues of safety or conditions which are likely to require substantially more repairs if the work is delayed. All requests for warranty work must be in writing.

Separate manufacturers' warranties cover items such as appliances. CONTRACTOR will transfer those warranties to OWNER at time of settlement and OWNER's sole remedy for defects in such items shall be against such manufacturer.

As stated above, CONTRACTOR has provided a warranty for materials and workmanship, but CONTRACTOR shall not be responsible for any damages caused by radon, mold, fungus or by some other agent, to include but not be limited to damage to personal property, personal injury, loss of income, emotional distress, death, loss of use, loss of value, and adverse health effects, or any other effects.  OWNER hereby waives all such claims. Contractor shall install a Radon Evacuation System per specs.

13.   **INSURANCE.**

A.   **Worker Compensation/General Liability.** CONTRACTOR agrees to maintain appropriate liability and workers compensation insurance and hold OWNER harmless from any liability or claims arising from personal injury that may occur on the PROPERTY prior to settlement, except where such injury occurs as a result of the intentional acts or gross negligence of OWNER, their agents or invitees.

B.   **Risk of Loss.** The risk of loss or damage to the improvements on the PROPERTY by fire, acts of God or other casualty remains with CONTRACTOR until Final Payment. Building materials price increase due to an act of God event such as, Pandemic's, Hurricanes, Tornadoes, Floods, etc are to be passed on to Owner at Contractor's cost with out any mark-up on such materials.

C.   **Builder's Risk Insurance.** The Owner shall provide property damage (hazard) insurance during construction with an amount of coverage in effect that will at minimum coincide with the amount paid to the Contractor at any time during the Work.  Additionally the Owner shall, prior to the commencement of construction, arrange for "builders risk" insurance providing coverage against vandalism and malicious mischief, covering all improvements to be erected and all materials, supplies, appliances and other personal property to be incorporated into the improvements that are to be erected upon the property which are on or about the property, in an amount that is equal to the Purchase Price.

14.   **GENERAL CONDITIONS.**

A.   **Exterior Doors.** Metal exterior doors are not designed to have storm doors installed on them.  CONTRACTOR will not be responsible for warping or damage to an exterior door due to installation of a storm door.

B.   **Rock, Unanticipated Condition.** If during the course of construction of the foundation and/or water lines, wells, sewer lines or septic systems, rock, hazardous materials or any other unanticipated condition or materials are encountered which require special equipment or procedures for removal or abatement. OWNER agrees to pay all costs connected therewith, CONTRACTOR will notify OWNER when such circumstances are encountered and provide an estimate for the additional expenses anticipated to be incurred.

C.   **Grading, Siting.** The grading of the PROPERTY and siting of the improvements shall be made by the determination of Contractor in consultation with Owner, such final grading and siting to be acceptable to Owner in its absolute and sole discretion.

D.   **Existing Trees.** CONTRACTOR will remove only trees necessitated by construction. CONTRACTOR is not responsible for trees that die after installation.

E.   **Driveway.** CONTRACTOR will install the driveway one time only as per specifications and is not responsible for reshaping or the addition of gravel or pavement after settlement.  CONTRACTOR shall not be responsible for damage to paved driveways caused by OWNER's agents or movers.

F.   **Seeding.** CONTRACTOR will seed, sod and straw and is not responsible for reshaping, reseeding or installing new straw after settlement. Seeded or Sod lawns are not guaranteed after settlement. Contractor will seed & straw, sod, install shrub package per design T.B.D. according to allowances. New lawns will require maximum maintenance by OWNER until established.

G.   **Shrubs and New Trees.** Shrubs and new trees are not guaranteed after occupancy by OWNER.  Shrubs will not be replaced unless written notice is given at Final Payment of dead shrubbery. Plants require watering in cold weather as well as during warm periods.  (Shrubbery typically have a 1 year warranty from nursery, but not guaranteed.)

H.   **Landscaping and Paving Escrows.** Due to weather conditions, at CONTRACTOR's option, driveway paving, seeding and setting of shrubs in yards of houses completed during the months of November through March may be delayed until said yards have sufficiently dried in the Spring in which event 100% of the purchase price will be escrowed with the CONTRACTOR's attorney until completion of said paving and landscaping work as certified by CONTRACTOR.   The opinion of CONTRACTOR's attorney as to release of escrow shall be conclusive. CONTRACTOR will, as near as practical, complete paving and landscaping work in the same order in which the houses are settled upon, taking into consideration CONTRACTOR's scheduling and work patterns.

I.   **Basement Waterproofing.** CONTRACTOR will treat all basement walls with waterproofing with a 10 year manufacturer warranty. CONTRACTOR does not guarantee against damp spots due natural condensation.

J.   **Sill Cocks.** CONTRACTOR is not responsible for the replacement of sill cocks, the damage of which is caused by freezing. It is OWNER's responsibility to disconnect hoses during cold weather after settlement.

K.   **Displaying Property.** CONTRACTOR reserves the right to display the PROPERTY to the public until occupancy by Owner.

L.   **Utilities during Construction.** The Contractor shall be responsible for payment of all utility accounts prior to the issuance of the temporary Certificate of Occupancy. Prior to Final Payment the Contractor shall fill the propane fuel tank, if applicable, provided that the Owner shall, at the time of Final Payment, reimburse the Contractor for the Contractor's cost of the fuel. Oil and propane tanks are personal property belonging to the fuel supplier and shall not convey pursuant to this Agreement. CONTRACTOR is responsible for water and sewer hookup fees where jurisdictions apply, unless otherwise stated.

M.   **Termite Protection.** CONTRACTOR will provide OWNER with a certificate from a licensed exterminator stating that the

DocuSign Envelope ID: 1B159F6A-C6D2-4CDF-9150-1D1562BF599E



soil has been appropriately treated or appropriate protection has been provided to prevent termite infestation for at least one year from the treatment date.

      **N. Leftover Materials.** All materials, supplies and equipment which are left over from the construction of this home are the property of Owner. Contractor shall leave PROPERTY clean, neat, and free of all construction material, equipment and debris at the completion of construction. Touchup paint, tiles, hardwood flooring, stone, etc. for repairs shall be left by Contractor.

15.    **REQUIRED STATUTORY DISCLOSURES.**

      **A. Occupancy.** Unless this paragraph is marked through, OWNER intends to occupy the PROPERTY as a principal residence.

      **B. Mechanic's Lien.** Notice: Virginia Law (43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the PROPERTY. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 days from the last day of the month in which the lienor last performed work or furnished materials or (ii) 90 days from the time the construction, removal, repair, or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED. Resolution of all Mechanic's liens is solely the responsibility of the Contractor. Contemporaneous with the progress payments described in Section 6, the Contractor will provide the Owner with fully executed waivers and releases of mechanic's and material men's liens, in form satisfactory to Lender and Mechanic's Lien Agent. See Addendum.

16.    **MISCELLANEOUS.** (A) CONTRACTOR shall comply with all local requirements for building permits, inspections and zoning. (B) The laws of the State of Virginia shall govern the interpretation, validity, and construction of the terms and conditions of the Contract. For matters of interpretation: To the extent handwritten or typewritten terms conflict with or are inconsistent with printed terms, the handwritten or typewritten terms shall prevail and unless otherwise specified herein "days" means calendar days. (C) The parties to this Agreement mutually agree that it shall be binding upon them, each of their respective heirs, personal representatives, successors and assigns. (D) The invalidity of any provision of this Agreement shall not affect the validity or enforceability of any other provisions hereof. (E) The captions of this Agreement are for the convenience of the parties and shall not be considered as a material part hereof. (F) All of the provisions of this Agreement shall survive Final Payment. (G) This Agreement may be signed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same document. (H) Documents delivered by facsimile machine shall be considered as originals. (I) Any notices required to be given herein shall be in writing and either hand delivered or by certified mail to the parties at their respective addresses set forth above or such other address as designated by notice. Delivery shall be deemed to be the actual date of receipt, or in the case of certified mail, three days after mailing. (J) This Agreement shall not be modified, except in writing, signed by the CONTRACTOR and OWNER. (K) This Agreement may not be assigned by the Contractor without prior written consent of the Owner in its absolute and sole discretion.

17.    **OTHER TERMS.** (Use this space for allowances and additional terms included but not specified in Contract).

1. **- SEE ATTACHED SCOPE OF WORK DETAILS AND PAYMENT DRAW SCHEDULE** _____

_____

_____


WITNESS the following signatures and seals.

| | |
|---|---|
| **7/7/2021** | DocuSigned by: *Louis R. Morris* |
| _____ day of _____, 2021 | F1030A6265A24DD...         (SEAL) |
| | Owner |
| _____ day of _____, 2021 | _____ (SEAL) |
| | Owner |
| **7/7/2021** | Dobson Homes, Inc.   DocuSigned by: *Tommy Dobson* |
| _____ day of _____, 2021 | By: _____ (SEAL) |
| | 606BEE3F5A5D448... |
| | Contractor |

DocuSign Envelope ID: 1B159F6A-C6D2-4CDF-9150-1D1562BF599E

PERMIT #: _____

## Dobson Homes, Inc
## SCHEDULE OF ADVANCES

DDA Acount # _____ Closing Date _____

Loan Number _____ Inspection Fee _____

Borrower Ph# _____

Builder Ph # 434-591-1188

| Borrower/Builder | DOBSON HOMES, INC. | | |
|---|---|---|---|
| Lot | Lot 12, Section C, Phase 1 | Phase 1 Section C | Subdivision Glenmore |
| Unit Number | NA | Street Lot 12, Section C, Phase 1 | City Keswick, Va 22947 |
| Sales Price $ | 1,176,467.00 | Contract Amount $ 1,176,467.00 Appraised Value | Loan-to-Value NA |

Less: Lot Lot 12, Section C, Phase 1 _____ Lot Cost $ -
Construction Amount _____ Less
advanced in accordance with following schedule Equity $ -
Total Loan _____ Lot Advance $ -

| Items Completed | % | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th | 10th | 11th |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.Permits, Clear lot, Excavation, Rgh Driveway | 10% | | | | | | | | | | | |
| 2.Footings | 2% | | | | | | | | | | | |
| 3.Foundation | 7% | | | | | | | | | | | |
| 4. Outside studs, Plates | 3% | | | | | | | | | | | |
| 5. Outside window and door frames | 2% | | | | | | | | | | | |
| 6. Inside Suds, ceiling joist | 3% | | | | | | | | | | | |
| 7. Well Sheathing | 2% | | | | | | | | | | | |
| 8. Roof Framing | 2% | | | | | | | | | | | |
| 9. Roof Sheathing - Felt | 2% | | | | | | | | | | | |
| 10. Permanent Roof | 2% | | | | | | | | | | | |
| 11.Windows | 3% | | | | | | | | | | | |
| 12. Rough In plumbing | 3% | | | | | | | | | | | |
| 13. Bath wall tile tubs | 1% | | | | | | | | | | | |
| 14. Rough- In wiring | 2% | | | | | | | | | | | |
| 15. Rough In heat | 3% | | | | | | | | | | | |
| 16. Insulation walls/floors | 1% | | | | | | | | | | | |
| 17. Siding / Veneer | 5% | | | | | | | | | | | |
| 18. Fireplace | 1% | | | | | | | | | | | |
| 19.Exterior Trim | 2% | | | | | | | | | | | |
| 20. Exterior Prime | 1% | | | | | | | | | | | |
| 21. Drywall /plaster rough | 3% | | | | | | | | | | | |
| 22. Drywall /Plaster finish | 3% | | | | | | | | | | | |
| 23. Furnace | 1% | | | | | | | | | | | |
| 24. Outside Doors | 1% | | | | | | | | | | | |
| 25. Septic tank - sewer water | 2% | | | | | | | | | | | |
| 26. Inside trim | 5% | | | | | | | | | | | |
| 27. Inside doors | 2% | | | | | | | | | | | |
| 28. Cabinets | 4% | | | | | | | | | | | |
| 29. Interior Paint - Prime | 2% | | | | | | | | | | | |
| 30. Interior Paint - complete | 2% | | | | | | | | | | | |
| 31.Plumbing fixtures | 3% | | | | | | | | | | | |
| 32. Wiring Complete /Fixtures | 1% | | | | | | | | | | | |
| 33. Bath Floor tile/Vinyl | 1% | | | | | | | | | | | |
| 34. Floor Cover carpet | 4% | | | | | | | | | | | |
| 35. Exterior Concrete | 2% | | | | | | | | | | | |
| 36. Exterior Paint complete | 1% | | | | | | | | | | | |
| 37. Insulation/Ceiling | 1% | | | | | | | | | | | |
| 38. Fin. Grade-grass landscaping | 1% | | | | | | | | | | | |
| 39. Appliences | 2% | | | | | | | | | | | |
| 40. Compressor | 1% | | | | | | | | | | | |
| 41. Miscellaneous | 1% | | | | | | | | | | | |
| TOTAL THIS INSPECTION | 100% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |

Inspector Initials
Date of Inspection

Builder deposit required = $ 99,116.00 Closing Attorney _____ Phone # _____
DISBURSEMENTS TO PAY AFTER DEPOSIT $ 1,077,351.00 Title Work Contact _____ Phone # _____

| DATE | DISB. NO. | TITLE WORK IN | % COMP | LAND & CLOSING ADVANCE | CONSTRUCTION ADVANCE | TOTAL PREVIOUS ADVANCES | UNDISBURSED | RECEIVED BY |
|---|---|---|---|---|---|---|---|---|
| Deposit | 0 | | 0% | | 99,116.00 | $ - | $ 1,077,351.00 | |
| | 1 | | 0% | | 0.00 | | $ 1,077,351.00 | |
| | 2 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 3 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 4 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 5 | | 0% | | 0.00 | | $ 1,077,351.00 | |
| | 6 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 7 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 8 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 9 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 10 | | 0% | | 0.00 | $ - | $ 1,077,351.00 | |
| | 11 | DocuSigned by: | 0% | | 0.00 | $ - | $ 1,077,351.00 | |

Borrower
Louis R. Morris 7/7/2021
Borrower



*EXHIBIT 8*

| Debtor 1 | Tommy Dewayne Dobson | |
|---|---|---|
| Debtor 2 | Anne Christine Dobson | Case number (if known)   23-60148 |

**Part 2:**    **Your NONPRIORITY Unsecured Claims -- Continuation Page**

After listing any entries on this page, number them sequentially from the
previous page.

<table>
<tr><td></td><td>Total claim</td></tr>
</table>

### 4.66

**Lawrence Equipment**
Nonpriority Creditor's Name
**PO Box 335**
Number        Street

Last 4 digits of account number   **9**   **9**   **2**   **1**

When was the debt incurred? _____

**$2,365.85**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Cloverdale**    **VA**    **24077**
City    State    ZIP Code

**Who incurred the debt?**   Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☑ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other.  Specify **Business Debt**

### 4.67

**Local Storage Fluvanna**
Nonpriority Creditor's Name
**21 Burns Plaza**
Number        Street

Last 4 digits of account number   ___ ___ ___ ___

When was the debt incurred? _____

**$598.00**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Palmyra**    **VA**    **22963**
City    State    ZIP Code

**Who incurred the debt?**   Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other.  Specify **Open Account**

### 4.68

**Louis R. Morris**
Nonpriority Creditor's Name
**3567 Glasgow Lane**
Number        Street

Last 4 digits of account number   ___ ___ ___ ___

When was the debt incurred? _____

**Unknown**

As of the date you file, the claim is: Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Keswick**    **VA**    **22947**
City    State    ZIP Code

**Who incurred the debt?**   Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other.  Specify **Business Debt**



December 19, 2023

To Whom It May Concern,

This letter is to confirm that Peak Builders LLC took over the construction of the Morris Residence on October 17, 2022 as is shown on the revised building permit issued by the County of Albemarle. Peak took over the project at the foundation stage. At that time, the foundation was installed along with the under-slab plumbing pipes, but there was no slab poured. No other improvements were noted at that time.

Thank You,

Matthew Gruber
Peak Builders LLC, Manager

EXHIBIT 9

2180 Owensville Rd.
Charlottesville, VA 22901

p: 434-960-7739
f: 434-296-3234

**United States Bankruptcy Court**
**Western District of Virginia**

Calculation and Basis of Claim

Case Numbers 23-60148 & 23-60158

Debtors: Tommy Dewayne Dobson (23-60148) & Anne Christine Dobson (23-601-48)
Dobson Homes, Inc. (23160158)

Creditor: Louis R. Morris
3190 Prestwick Place
Keswick, VA 22947

Louis R. Morris Trustee, Louis R. Morris Revocable Trust
3190 Prestwick Place
Keswick, VA 22947

**Estimated Amount and Basis of Claim**
Funds Paid on Contract to Build Home
At 1509 Kinross Lane Keswick, VA 22947

| | | | |
|---|---|---|---|
| Deposit | $99,116 | 7/12/21 | |
| Draw #1 | $96,962 | 1/31/22 | clearing, excavation, permits |
| Draw #2 | $64,641 | 4/27/22 | footings, partial foundation |
| Draw #3 | $70,028 | 5/31/22 | material orders |
| Reconciliation #1 | $77,026 | 6/7/22 | allowance overages for windows, doors, cabinets, etc. |
| Total | $407,773 | | |
| Minus | $100,000 | | estimated value of materials, services, labor provided |
| Claim | $307,773 | | |

Home Was Never Completed By Dobson Homes

EXHIBIT 10

*EXHIBIT 11*

PERMIT #: _____

**Dobson Signature Homes**
BUILDING QUALITY FAMILY HOMES

**Dobson Homes, Inc**
**SCHEDULE OF ADVANCES**

DDA Acount # _____   Closing Date _____
Loan Number _____   Inspection Fee _____
Borrower Ph# _____
Builder Ph # 434-591-1188

| | |
|---|---|
| Borrower/Builder | DOBSON HOMES, INC. |
| Lot | Lot 12, Section C, Phase 1 |
| Unit Number | NA |
| Sales Price $ | 1,176,467.00 |

Phase 1   Section C   Subdivision Glenmore
Street Lot 12, Section C, Phase 1   City Keswick, Va 22947
Contract Amount $ 1,176,467.00   Appraised Value ___   Loan-to-Value NA

Lot Cost $ -
Less:   Lot Lot 12, Section C, Phase 1   Less
Construction Amount   Equity $ -
Total Loan   Lot Advance $ -

advanced in accordance with following schedule.

| Items Completed | % | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th | 10th | 11th |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| 1.Permits, Clear lot, Excavation, Rgh Driveway | 10% | 9% | | | | | | | | | | |
| 2.Footings | 2% | | 2% | | | | | | | | | |
| 3.Foundation | 7% | | 4% | | | | | | | | | |
| 4. Outside studs, Plates | 3% | | | | | | | | | | | |
| 5. Outside window and door frames | 2% | | | | | | | | | | | |
| 6. Inside Suds, ceiling joist | 8% | | | | | | | | | | | |
| 7. Wall Sheathing | 2% | | | | 1% | | | | | | | |
| 8. Roof Framing (50% Truss Order) | 2% | | | | | | | | | | | |
| 9. Roof Sheathing - Felt | 2% | | | | | | | | | | | |
| 10. Permanent Roof | 2% | | | | 1.5% | | | | | | | |
| 11. Windows (50% Deposit) | 3% | | | | 1% | | | | | | | |
| 12. Rough in plumbing | 1% | | | | 0.5% | | | | | | | |
| 13. Bath wall tile tubs (Plumbing Material Order.) | 2% | | | | | | | | | | | |
| 14. Rough- in wiring | 3% | | | | | | | | | | | |
| 15. Rough in heat | 2% | | | | | | | | | | | |
| 16. Insulation walls/floors | 5% | | | | | | | | | | | |
| 17. Siding / Veneer | 1% | | | | 0.5% | | | | | | | |
| 18. Fireplace | 2% | | | | | | | | | | | |
| 19. Exterior Trim | 1% | | | | | | | | | | | |
| 20. Exterior Prime | 1% | | | | | | | | | | | |
| 21. Drywall /plaster rough | 3% | | | | | | | | | | | |
| 22. Drywall /Plaster finish | 1% | | | | | | | | | | | |
| 23. Furnace | 3% | | | | | | | | | | | |
| 24. Outside Doors | 2% | | | | | | | | | | | |
| 25. Septic tank - sewer water | 2% | | | | | | | | | | | |
| 26. Inside trim | 2% | | | | | | | | | | | |
| 27. Inside doors | 4% | | | | 2% | | | | | | | |
| 28. Cabinets (50% Deposit) | 2% | | | | | | | | | | | |
| 29. Interior Paint - Prime | 2% | | | | | | | | | | | |
| 30. Interior Paint - complete | 3% | | | | | | | | | | | |
| 31. Plumbing fixtures | 1% | | | | | | | | | | | |
| 32. Wiring Complete /Fixtures | 1% | | | | | | | | | | | |
| 33. Bath Floor tile/vinyl | 1% | | | | | | | | | | | |
| 34. Floor Cover carpet | 2% | | | | | | | | | | | |
| 35. Exterior Concrete | 2% | | | | | | | | | | | |
| 36. Exterior Paint complete | 1% | | | | | | | | | | | |
| 37. Insulation/Ceiling | 1% | | | | | | | | | | | |
| 38. Fin. Grade-grass landscaping | 2% | | | | | | | | | | | |
| 39. Appliances (50% Deposit) | 1% | | | | | | | | | | | |
| 40. Compressor | 1% | | | | | | | | | | | |
| 41. Miscellaneous | | | | | | | | | | | | |
| **TOTAL THIS INSPECTION** | 100% | 9% | 6% | | 7% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |

Inspector Initials _____
Date of Inspection _____   $ 99,116.00
Builder deposit required = _____   1,077,351.00

Closing Attorney _____   Phone # _____
Title Work Contact _____   Phone # _____

**DISBURSEMENTS TO PAY AFTER DEPOSIT $**

| DATE | DISB. NO. | TITLE WORK IN | % COMP | LAND & CLOSING ADVANCE | CONSTRUCTION ADVANCE | TOTAL PREVIOUS ADVANCES | UNDISBURSED | RECEIVED BY |
|---|---|---|---|---|---|---|---|---|
| Deposit | 0 | 7/16/21 | 0% | | 99,116.00 | $ - | $ 1,077,351.00 | |
| Clearing Excavation, Permits | 1 | 1/31/22 | 9% | | 96,962.00 | | $ 980,389.00 | |
| Footings & Partial Foundation | 2 | 4/25/22 | 6% | | 64,641.00 | $ 96,962.00 | $ 915,748.00 | |
| Material Orders | 3 | 5/31/22 | 7% | | 70,028.00 | $ 161,603.00 | $ 845,720.00 | |
| | 4 | 6/2/22 | 0% | 77,826 | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 5 | | 0% | | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 6 | | 0% | | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 7 | | 0% | | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 8 | | 0% | | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 9 | | 0% | | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 10 | | 0% | | 0.00 | $ 231,631.00 | $ 845,720.00 | |
| | 11 | | 0% | | | Borrower | | |

Borrower



EXHIBIT 12

# Window Allowance Reconciliation 6.2.22

**Status:** Approved - Billed
<u>Invoice #1014</u>

**Document Date:** Thursday, June 2, 2022

Dobson Homes Inc
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change
Order's & Allowance Overages to insure no schedule delay's.

## Line Items

| Category | Selection | Choice | Price (incl. adj. tax) | Allowance | Difference (incl. tax) |
|---|---|---|---|---|---|
| 45000 - Exterior Doors & Windows. (Including Hardware) | 45220: Exterior Window Package | - Window Allowance $29,376.00<br><br>- Window Quote $50,170.11<br>- Window Installation materials 50 @$55.00= $2,750.00<br>- DH- Prep and Install Windows 50 @ $75.00 = $3,750.00<br>- DH- Layout and Design 50@ $50.00 =$2,500.00<br><br>Window Cost $59,170.11<br>Window Allowance Overage Cost $29,794.11 | $29,794.11 | | $29,794.11 |
| **Total** | | | | | $29,794.11 |

## Effect on Contract Total

| | |
|---|---|
| **Contract Price** | $1,176,467.00 |
| **Total from other approved change orders** | $47,232.31 |
| (Appliance Reconciliation , Cabinet Allowance Reconciliation, Light Fixture Allowance Reconciliation , Plumbing Material Package Allowance Reconciliation 6.1.22, Front Door Allowance Reconciliation 6.2.22, Exterior Door Allowance Reconciliation 6.2.22) | |
| **Total from this change order\*** | $29,794.11 |
| **Total including Change Orders\*** | $1,253,493.42 |

\* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

## Approvals

*C. Dobson*                                      6/2/2022

**Team Member:** Christine Dobson                Date



## Exterior Door Allowance Reconciliation 6.2.22
### Status: Approved - Billed
Invoice #1014

**Document Date:** Thursday, June 2, 2022

**Dobson Homes Inc**
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change Order's & Allowance Overages to insure no schedule delay's.

## Line Items

| Category | Selection | Choice | Price (incl. adj. tax) | Allowance | Difference (incl. tax) |
|---|---|---|---|---|---|
| 45000 - Exterior Doors & Windows. (Including Hardware) | 45210: Exterior Door Package - (Part of Allowance Schedule) | - Exterior Door Allowance $11,313.00 | $6,364.30 | | $6,364.30 |
| | | - Exterior Door Quote Anderson $11,342.60<br>- Exterior Door Quote Therma Tru $4,689.70<br>- Exterior Door's Installation Hardware, Flashing Tape, Silicone, & Misc. 7 @ $75.00 = 525.00<br>- Install Exterior Door per opening 7@$125.00 =875.00<br>- Install Exterior Door Locks 7@ $35.00 = 245.00 | | | |
| | | Exterior Door Cost $17,677.30<br>Allowance Overage Cost $6,364.30 | | | $6,364.30 |
| **Total** | | | | | |

## Effect on Contract Total

| | |
|---|---|
| | $1,176,467.00 |
| **Contract Price** | $40,868.01 |
| **Total from other approved change orders**<br>(Appliance Reconciliation , Cabinet Allowance Reconciliation, Light Fixture Allowance Reconciliation , Plumbing Material Package Allowance Reconciliation 6.1.22, Front Door Allowance Reconciliation 6.2.22) | $6,364.30 |
| **Total from this change order** | $1,223,699.31 |
| **Total Including Change Orders*** | |

* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

## Approvals

C. Dobson                                                                                    6/2/2022



# Front Door Allowance Reconciliation 6.2.22

**Status:** Approved - Billed

Invoice #1014

**Document Date:** Thursday, June 2, 2022

Dobson Homes Inc
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change Order's & Allowance Overages to insure no schedule delay's.

## Line Items

| Category | Selection | Choice | Price (incl. adj. tax) | Allowance | Difference (incl. tax) |
|---|---|---|---|---|---|
| 45000 - Exterior Doors & Windows. (Including Hardware) | 45212: Specialty Custom Exterior Front Door Package | - Front Door Allowance $7,600.00<br>- Front Door Cost $5,500.00 plus tax $5,791.50<br>- Finishing Door / Door Support Materials $990.00<br>- DH-Prep After Installation $113.50<br>-Hardware Installation Accessories $150.00<br><br>Front Door Cost $7,495.00 Allowance Customer Credit -$105.00 | -$105.00 | | -$105.00 |
| **Total** | | | | | -$105.00 |

## Effect on Contract Total

| | |
|---|---|
| **Contract Price** | $1,176,467.00 |
| **Total from other approved change orders** | $40,973.01 |
| (Appliance Reconciliation , Cabinet Allowance Reconciliation, Light Fixture Allowance Reconciliation , Plumbing Material Package Allowance Reconciliation 6.1.22) | |
| **Total from this change order** | -$105.00 |
| **Total including Change Orders*** | $1,217,335.01 |

* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

## Approvals

*C. Dobson*

**Team Member: Christine Dobson**

6/2/2022

Date



# Invoice

**Number:** 1013

**Issued:** Jun 1 2022

**Summary**
Allowance Reconciliations 6.1.22

**Issued By**
Dobson Homes, Inc.
Po box 7181
Charlottesville, VA 22906
(434) 531-4976

**Project**
DH-Morris
1509 Kinross Lane
Keswick, VA 22947

**Issued To**
Lou Morris

| Item | Amount |
|---|---|
| 58215 - Electricity - Materials — Light Fixture Allowance Reconciliation | $1,239.25 |
| 50210 - Plumbing-Materials — Plumbing Material Package Allowance Reconciliation 6.1.22 | $2,450.79 |
| 87211 - Appliances-Material-Sears — Appliance Reconciliation | $7,064.96 |
| 86213 - Cabinets-Material-Better Living — Cabinet Allowance Reconciliation | $30,218.01 |
| Subtotal | $40,973.01 |
| Tax (0%) | $0.00 |
| Total | $40,973.01 |



## Dobson Homes
### BUILDING QUALITY FAMILY HOMES.

# Plumbing Material Package Allowance Reconciliation 6.1.22
**Status:** Approved – Billed
Draft Invoice #1013

**Document Date:** Wednesday, June 1, 2022

Dobson Homes Inc
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change Order's & Allowance Overages to insure no schedule delay's.

## Line Items

| Category | Selection | Choice | Price (incl. adj. tax) | Allowance | Difference (incl. tax) |
|---|---|---|---|---|---|
| 50200 - Plumbing Systems. (Sinks, Faucets, Water Heater's,Etc.) | 50210: Plumbing Material Package | 50210: Plumbing Material Package Allowance Reconciliation 6.1.22<br><br>- Plumbing Allowance: $14,115.00<br>- Plumbing Fixtures Costs per Quote including , Delivery & Prep & Installation: $16,565.79<br><br>Plumbing Fixture Allowance Overage: $2,450.79 | $2,450.79 | | $2,450.79 |
| **Total** | | | | | $2,450.79 |

## Effect on Contract Total

| | |
|---|---|
| Contract Price | $1,176,467.00 |
| Total from this change order | $2,450.79 |
| Total including Change Orders* | $1,178,917.79 |

* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

## Approvals

*C. Dobson*

_____
**Team Member:** Christine Dobson

6/1/2022
_____
**Date**

Return to previous page

Copyright 2005-2022 CoConstruct, LLC. All rights reserved.



## Light Fixture Allowance Reconciliation

**Status: Approved – Billed**

Draft Invoice #1013

**Document Date:** Wednesday, June 1, 2022

Dobson Homes Inc
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change Order's & Allowance Overages to insure no schedule delay's.

## Line Items

| Category | Selection | Choice | Price (Incl. adj. tax) | Allowance | Difference (Incl. tax) |
|---|---|---|---|---|---|
| 58000 - Electrical Systems (Light Fixtures, Door Bell, Task lighting, Etc.) | 58215: Electrical - Light Fixtures, Door Bell Chimes, Floods, Task lighting, Etc. | 58215: Electrical - Light Fixtures, Door Bell Chimes, Floods, Task lighting, Etc.<br><br>- Contract Light Fixture Allowance: $11,933.00<br>- Light Fixture Selections loaded below.<br>- Light Fixtures per selections Costs: $10,066.25<br>- Flood Lights, Under Cabinet Light Fixture's, Closet Lights, Etc. Allowance Costs: $700.00<br>- DH-Light Fixture Installation - Per Finish S.F. (1st. Floor) $1,686.00<br>- DH-Light Fixture Installation - Per Finish S.F. Avg. (Basement Floor) $720.00<br><br>Total Light Fixture Cost $13,172.25<br><br>TOTAL LIGHT FIXTURE ALLOWANCE RECONCILIATION OVERAGE: $1,239.25 | $1,239.25 | | $1,239.25 |
| **Total** | | | | | $1,239.25 |

## Effect on Contract Total

| | |
|---|---|
| **Contract Price** | $1,176,467.00 |
| **Total from this change order** | $1,239.25 |
| **Total including Change Orders*** | $1,177,706.25 |

* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

## Approvals



## Dobson Homes
### BUILDING QUALITY FAMILY HOMES.

# Cabinet Allowance Reconciliation

### Status: Approved - Billed
#### Draft Invoice #1013

**Document Date:** Wednesday, June 1, 2022

**Dobson Homes Inc**
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change Order's & Allowance Overages to insure no schedule delay's.

## Line Items

| Category | Selection | Choice | Price (Incl. adj. tax) | Allowance | Difference (Incl. tax) |
|---|---|---|---|---|---|
| 86000 - Cabinets & Counter Tops | 86214: Cabinets | 86214 - Cabinet Allowance: $41,000.00<br>- B.L. Cabinet Revised Quote excluding Office/Study Cabinets - 513/22<br>- Kitchen Greenfield all plywood, soft close, extended guides: $51,500.00<br>o Perimeter: "Kinnear 275 Surfside" - Full Overlay.<br>o Island: "Kinnear 275 Full Overlay - Walnut "w/ Black Glaze per plan.<br>- Master Bath: Greenfield "Jackson" - 5 pc. Front "Glacier White": $6,300.00<br>- Laundry Room: Legacy Debut-Southport "Suede Stone": $2,480.00<br>- Desk Area: Legacy Debut-Southport "Suede Stone": $835.00<br>- Bath #3: Legacy Debut-Southport "Ivory": $1,065.00<br>- Bath #2: Legacy Debut-Southport "Suede Stone": $990.00<br><br>- B.L. Total Cabinet costs including Tax: $70,118.01<br>- DH-Final Install & Adjustments: $1,100.00<br><br>TOTAL CABINET COSTS: $71,218.01<br><br>CABINET ALLOWANCE RECONCILIATION OVERAGE: $30,218.01 | $30,218.01 | | $30,218.01 |
| **Total** | | | | | $30,218.01 |

## Effect on Contract Total

| | |
|---|---|
| Contract Price | $1,176,467.00 |
| Total from this change order | $30,218.01 |
| Total including Change Orders* | $1,206,685.01 |

* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

## Approvals



**Dobson Homes**
BUILDING QUALITY FAMILY HOMES.

## Appliance Reconciliation

**Status:** Approved - Billed

Draft Invoice #1013

**Document Date:** Wednesday, June 1, 2022

Dobson Homes Inc
Po box 7181
Charlottesville, VA 22906
(434) 531-4976
Class A Contractors Licence # 2705 112606A

**Project:** DH-Morris
1509 Kinross Lane
Keswick, VA 22947

Summary of Change Order Requests or Allowance overage or Underage below: Please sign and remit payment for all Change Order's & Allowance Overages to insure no schedule delay's.

### Line Items

| Category | Selection | Choice | Price (Incl. adj. tax) | Allowance | Difference (Incl. tax) |
|---|---|---|---|---|---|
| 87000 - Appliances | 87211: Appliance Material | 87211: Appliance Material Allowance Reconciliation<br><br>- Appliance Contract Allowance - $22,400.00<br>- Appliance Specifications loaded on 5/30/22<br>- Appliances ordered on 3/27/22.<br>- Appliance Costs Per Quote 1.27.22 $27,625.50<br>- Appliance Installation & Misc. Hardware: $1,839.46<br>- Total Appliance Costs (M&L): $29,464.96<br>TOTAL CONTRACT ALLOWANCE: $22,400.00<br>TOTAL APPLIANCE COSTS: $29,464.96<br><br>TOTAL APPLIANCE ALLOWANCE RECONCILLIATION OVERAGES: $7,064.96 | $7,064.96 | | $7,064.96 |
| **Total** | | | | | $7,064.96 |

### Effect on Contract Total

| | |
|---|---|
| Contract Price | $1,176,467.00 |
| Total from this change order | $7,064.96 |
| Total including Change Orders* | $1,183,531.96 |

* May not include other change orders that have been approved since this change order was created

**Terms:** Due Upon Reciept

Thanks for your Business!

### Approvals

*C. Dobson*

_____
**Team Member:** Christine Dobson

6/1/2022

_____
**Date**

Return to previous page

## NOTICE OF TERMINATION OF CONTRACT

August 29, 2022

Tommy-

After considering this matter carefully, Susan and I have decided the best course of action is to give you this official written notice of termination of the construction contract with your company for our residence at 1509 Kinross Lane in Glenmore.

We are terminating the contract for the reasons and breaches outlined in prior communications to you and therefore will not recite with specificity again the bases for the termination.

In light of our discussions and the fact that due to delays, our construction is in the beginning phases, you indicated to us that terminating our particular contract will free you up to deal with other matters.

In light of this decision, we would request that you immediately take the following steps:

1. Acknowledge in writing your acceptance of this termination of the contract (upon your written confirmation, we may have our attorney draft a formal termination of the contract).
2. Cease all work and the incurring of any further expenses on this project.
3. Provide us as previously requested a full accounting of the amounts paid by us on this project so we can come to an agreed amount due to be repaid to us. You indicated that such amount may need to be evidenced by your promissory note.
4. Cooperate with another builder we choose to complete the work by providing all relevant blueprints, designs, engineering work, material orders, etc. to insure a smooth transition.

We expect your confirmation of the termination of the contract immediately which at this point seems to be the best path forward for both of us.

Thank you in advance for your prompt response.

EXHIBIT  13

1

Please acknowledge the receipt of this email and your agreement
to the termination of the contract.

Louis R. Morris

Sent from my iPhone

On Sep 6, 2022, at 9:06 PM, Tommy Dobson
<tommydobson73@gmail.com> wrote:

Hello Louis,
  I have received your letter of termination and agree to the
terms listed and the terms that we have discussed again today
over the phone.

Best,
Tommy Dobson.

lnuris1840@gmail.com

EXHIBIT 14

*[handwritten: sent to D Dawson  8/25/2u  (email)]*

*[handwritten: EXHIBIT 15]*

Tommy- Susan and I appreciated you meeting with us at our home yesterday and the frank discussion that we had regarding the issues with the new home that you are building for us at 1509 Kinross Lane in Glenmore.

So that we are both on the same page, I think that it is important that I summarize what we discussed and what the next steps are that each of us will be taking in order to bring this matter to a satisfactory conclusion for both of us.

1. We told you that we were extremely disappointed in the lack of significant progress in the building of our new home. Specifically, since we signed our contract with you 14 months ago in July 2021 and after spending approximately $408,000 with you to-date, we only have a foundation to show for our substantial expenditure. We believe that the $408,000 is well in excess of your actual expenditures on this project. As a result of this and other factors discussed below, we have completely lost confidence in Dobson Homes ability to deliver our home on time and close to budget.

2. We pointed out that we paid you $70,028 in May for deposits to order materials, appliances, plumbing fixtures, cabinets, etc. some of which orders have not been placed or the deposits may not have been made. Thus, there was no need for much of this expenditure.

3. We pointed out to you that we paid you $77,026 in June to cover the cost overages versus our allowances for many of the same items mentioned in #2 above. Some of these items have not been ordered or in any event will likely not be received and/or paid for until well into 2023. Once again, there was no need for much of this expenditure.

4. We told you that it now appears that many of your line item estimates in the budget you prepared for the construction of our new home may be much too low and as a result, we believe that the actual cost of our new home may be far in excess of the original budget of $1,176,467.

5. It is clear to us that our original completion date for this project of no later than year end 2022 will not be met. This date was emphasized to you continually from our very first meeting. You committed to this date and your contract states that the house should be completed within 300 days from the contract signing.

6. Since moving into a rental home in July of 2022 with a one year lease, we have emphasized to you that we must move into our new home by the spring of 2023 or else we will be forced to move a second time, find another rental property to live in, and put some or all of our furniture, etc. in storage. This will greatly disrupt our lives and probably force us to incur in excess of $50,000 in additional costs. You committed to meeting this new completion date. It is now clear to us that finishing our new home by the spring of 2023 will not be met and that the home will not be finished until much later in 2023.

In light of the above, we proposed that we jointly and amicably agree to cancel our existing contract and that we would immediately search for another builder to complete our home. We further stated that we would not pay any more invoices from Dobson Homes either for past work done or current or future work that may be in progress until such time as there is a complete accounting of Dobson Homes expenditures versus the money that we have paid Dobson Homes to date.

In response to the above, you acknowledged Dobson Homes shortcomings and problems with this project and offered your explanation about why these problems occurred. You further acknowledged that terminating the contract would be in both of our best interests; agreed that we would make no further payments until a full accounting is made; pledged to work with another builder to provide all relevant blueprints, designs, engineering work, material orders, etc., and insure a smooth transition; and agreed to conduct a full accounting of Dobson's expenditures versus our payments to see what the difference might be and who is owed money.

You further indicated to us that you are currently working with another company (or companies) who might be able to step in and help Dobson complete the work of a certain number of homes that Dobson is currently working on and who would be able to complete these homes in a timely manner and on or close

to budget. You indicated that you expected to receive an initial indication later this week from at least one of these companies whether such an arrangement would be possible and/or acceptable, but that it would likely be several more weeks before anything could be finalized.

We stated that we would consider any other alternatives that Dobson may have to the building of our new home that would correct the problems of the cost and the timing of the completion, but that we will still move ahead with exploring our options with other builders. If we find another builder to work with who can meet our needs, we will get back to you right away so we can determine what type of legal documentation might be needed to accomplish the termination of the contract.

Please acknowledge the receipt of this email.


Lou Morris


Sent from Mail for Windows