

FILED LYNCHBURG, VA
U.S. BANKRUPTCY COURT

JAN 1 0 2024

By i.JM
DEPUTY CLERK

Glen and Nancy Littlefield
1936 Piper Way
Keswick, Virginia 22947


Clerk
U.S. Bankruptcy Court
Western District of Virginia
1101 Court Street
Room 166
Lynchburg, VA 24504


Case Number:2023-60148: Tommy Dewayne Dobson/Ann Christine Dobson; Debtors


Dear U.S. Bankruptcy Court:

We are in receipt of the Trustee Objection to Claim No.23-1 that was submitted by Glen and

Nancy Littlefield to the court April 4, 2023.  The Trustee objects to our submitted Claim on the

grounds that **(a)** we have provided no evidentiary support for asserting a claim against Tommy

and Ann Christine Dobson under the DHI Contract because the sole obligor under the DHI

Contract was Dobson Homes, Inc., **(b)** at all times applicable to the Claim, Dobson Homes, Inc

was a corporation formed and in good standing in Virginia, and **(c)** the Claimant have provided

no evidentiary support to assert a Claim against the Debtors on any other grounds.

We disagree with the Trustee's objection for his point **(a)** with the following:

1) In the completion and submission to court for Bankruptcy Case 23-60158, Dobson

   Homes, INC, identified on Official Form 207 **(Exhibit 1),** question 28 "List the debtor's

   officers, directors, managing members, general partners, members in control, controlling

1

shareholders, or other people in control of the debtor at the time of the filing of this case.

Mr Dobson completed Form 27 with the following:

**Name: Tommy D. Dobson, Owner and President, <u>% of interest: 100%.</u>**

2) Mr and Mrs Dobson's Bankruptcy filing for Chapter 11 case number 23-60148, (form 106A/B, 106E/F page 20, **(Exhibit 2)** has correctly listed and identified Glen and Nancy Littlefield as Creditors.  The form asks *"Who incurred the debt?"* The court filing of this form states that the debt to the Littlefields solely is **Debtor 1 Tommy Dewayne Dobson and Debtor 2 Ann Christine Dobson.** Debtors such as Dobson Homes, Inc—while an option of choice on the form, **has not been identified** as Debtors for the Littlefields.

3) We are also in complete disagreement with the Trustees objection because of correspondence from the official email used with Dobson Homes, Inc where on December 29, 2022 at 8:10PM **(Exhibit 3)**  Mr Dobson wrote:

"The current situation and <u>my ability to not</u> fulfill <u>my obligation to you</u>…"
"where <u>*I can repay everything I owe to you.*</u>"
"…..<u>monies that I owe you and Glenn.</u>"
"…<u>to undo the harm I have caused you and pay you everything I owe.</u>"
"..<u>that I can repay what I owe you.</u>"
"…all I want to do is to come up with a <u>way… and pay what I owe you.</u>"

At <u>no time</u> either within **Exhibit 3** or within the many other email records that we hold, does Tommy Dobson make mention that repayment obligation was DHI, Inc., indeed quite the opposite. Mr Dobson solely communicated <u>his obligation</u> to return the money that he himself owed to us.

We strongly disagree with the Trustee Objection **(b)** that "at all times applicable to the Claim, Dobson Homes, Inc was a corporation formed and in good standing in Virginia" for the following:

**1)** "Good Standing" is defined as "a person or organization in good standing is regarded as having no financial obligations[1]. 2021 Tax return Form 8995 **(Exhibit 4)** that Mr and Mrs Dobson filed with the court, recorded that Dobson Homes, Inc (Tax ID 20-5983301) had a recordable loss of (146,012). As an additional entry, on line 16 of the Form 8995, the total qualified business loss carry forward from previous year was (501,196). Tax Form 7203 **(Exhibit 5)** records on line 35 Shareholder Allowable Loss and Deductions for current year 2021 as (1,463,271). Carryover amount from previous year (3,651,458). Total loss is recorded on Form 7203 as (4,981,190.). We also know from the Bankruptcy filing 23-10148, form 106E/F **(Exhibit 6)** that Mr and Mrs Dobson has identified the Internal Revenue Service and Virginia Department of Taxation as Creditors in the Bankruptcy case owing an "Unknown" amount. **These facts disqualify Dobson Homes, Inc as a Corporation in "Good Standing".**

**2)** Bylaws of Dobson Homes, INC. **(Exhibit 7)**, Article V., Section 6, page 10 state "The Treasurer shall have the custody of all moneys and securities of the Corporation and **shall keep regular books of account**. Further, Article VIII. Section 4, page 12 states "The accounts of the Corporation shall be kept on the basis of a calendar year ending on the last day of December each year, and **annual financial statements shall be prepared as**

---

[1] Corporate Compliance: The consequences of Losing Good Standing Status: Wolters Kluwer. CT Corporation 21 March 2016. Retrieved 22 December 2023.

of that date." Mr Dobson provides sworn testimony **(Exhibit 8)** pages 2-52 that there

has been no financial reports for three years. (page 38, line 16, 17). Page 57 Line 25 and

Page 58 Line 1,2 Mr Dobson's testimony is that the financial accounting would be

completed "in one or two months" and per Attorney Cox, it would be made available to

the Creditors. Pages 67, 68 testimony that this same information has been requested by

Glen and Nancy Littlefield for over a year. The financial accounting as required by

Dobson Homes, INC Bylaws has never been completed. **These facts further disqualify**

**Dobson Homes, Inc as a Corporation in "Good Standing".**

We strongly disagree with the Trustee Objection **(c)** that the "Claimant has provided no

evidentiary support to assert a Claim against the Debtors on any other grounds." for the

following:

1) As creditors in an ongoing investigation for construction fraud and/or embezzlement, we

   are aware that deliberately and intentionally, requesting and obtaining payments for

   construction work and then converting or spending the money on things other than the

   uses or purposes for which the payments were requested and paid, and not on the

   construction work contracted and paid for, **those facts state a non-dischargeable claim**

   **under 11 U.S.C. § 523(a)(6).**

2) As part of our evidence of disagreement to dismiss claim 23-1, we want to communicate

   to the Bankruptcy Court that we are actively involved in pursuing criminal charges in

   Albemarle County against Tommy and Christine Dobson. We know that the monies we

   gave to the Dobsons in order for them to pay contracted vendors and/or supplies for our

   home construction did not go for this purpose. **Exhibit 9,** Summary of Claim. **Exhibit 10,**

   Record of Construction Draw and record of cancelled checks. **Exhibit 11,** Evidence of

Better Living Mechanics Lien and Notice from 84 Lumber. **Exhibit 12, Sample of evidence of non-payment to vendors with all evidence provided to Albemarle County Detective.** The Albemarle County case for the court's reference is #**2022-73942** and has been assigned to Detective Marcus Baggett (baggettm@albemarle.org/434-296-5865). From communication we received 12/22/23 from Mr Baggett we know that Albemarle County is in the final stages of the investigation to pursue criminal charges against both Tommy and Christine Dobson. As Creditors in Bankruptcy case 2023-60148, we know that **if** Mr and/or Mrs Dobson are found guilty, 11 U.S.C § 523(a)(6), states that when a contractor has willfully or fraudulently requested and received payments while failing to complete the work as contracted for, or has received payments for work not done, or has diverted or "converted" payments made for construction work away to personal or other uses without completing the work paid for, numerous Bankruptcy law case precedents have found that such conduct may constitute "willful and malicious injury" and thus **claims may still be pursued after the Bankruptcy hearings.** (*Hanson v. Kelly (In re Kelly)*) (Bankr. S.D. Tex. 2008) 385 B.R. 877, 882-884.).

As creditors in a potential construction fraud or embezzlement case, we also are aware that deliberately and intentionally, requesting and obtaining payments for construction work and then converting or spending the money on things other than the uses or purposes for which the payments were requested and paid, and not on the construction work contracted and paid for, **those facts state a non-dischargeable claim under 11 U.S.C. § 523(a)(6).**

Court records and testimony Mr Dobson has made under oath in the bankruptcy hearings attest that Mr Dobson was arrested by Charlottesville City authorities on 04/22/2022 under code §

18.2-200.1. **Failure to perform promise for construction, etc., in return for advances.** This case was brought to Charlottesville City Authorities by Creditors Mike and Karen Littlefield. We have this direct knowledge because this is our son and his wife who very unfortunately were also under contract with Mr Dobson to build their home. On 11/30/2023, in the courtroom for the criminal hearing, Mike and Karen Littlefield accepted a check for $100,000 in agreement that charges would be dropped. As further confirmation, on 12/11/2023 there was a bankruptcy hearing for case 2023-60148 where Mrs Dobson under sworn testimony acknowledged that a check for $100,000 was given.

In summary, we are in strong opposition to Mr Callahan's denial of our claim 23-1 for the following reasons:

1) Application for Chapter 11 bankruptcy completed by Tommy and Christine Dobson identifies the Debtors for Glen and Nancy Littlefield's claim solely as Tommy and Christine Dobson.

2) Dobson Homes, INC is not in "Good Standing". Dobson Homes, INC has shown it is not in compliance with its own Bylaws. Dobson Homes, INC has not fulfilled its fiduciary responsibility by keeping a business accounting record. Dobson Homes, INC has reported significant debt owed to Federal and State authorities.

3) Communication from Mr Dobson from his Dobson Homes official email identifies that he himself owes the debt to the Littlefields.

4) Albemarle County has an active fraud/embezzlement criminal investigation (Case #2022-73942) for Tommy and Christine Dobson where if found quilty, claims should not be discharged under Bankruptcy code **11 U.S.C. § 523(a)(6).**

## CERTIFICATE OF SERVICE

The Claimants hereby certify that we filed a response by hand delivery to the Clerk. United States Bankruptcy Court, Western District of Virginia, 1101 Court Street, Room 166, Lynchburg, VA 24504 regarding the Subchapter V Trustee's Notice of Objection to Claim 23-1. This response is within the timeframe specified prior to January 18, 2024 hearing. Copies were sent via FedEx Overnight delivery to the Clerk United States Bankruptcy Court Western District of Virginia, 1101 Court Street, Room 166, Lynchburg, VA 24504 and to Subchapter V Trustee, William E. Callahan. 10 Franklin Rd. S.E. Suite 900. P.O Box 40013 Roanoke, VA 24022-0013.

Respectfully submitted,

*Glen Littlefield*

Glen Littlefield

*Nancy Littlefield*

Nancy Littlefield

Debtor    **Dobson Homes, Inc.**                                                Case number *(if known)*  23-60158

| | Name and address | If any books of account and records are unavailable, explain why |
|---|---|---|
| 26c.1. | Paul D. Hoffman, CPA<br>Hoffman & Associates, P.C.<br>890 Rio East Court<br>Suite C<br>Charlottesville, VA 22901 | |
| 26c.2. | Christina Colley<br>5908 Courthouse Rd.<br>Louisa, VA 23093 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| | Name and address |
|---|---|
| 26d.1. | Atlantic Union Bank<br>1051 E. Cary Street, Suite 1200<br>Columbia, SC 29219-4044 |

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Tommy D. Dobson | 91 Beaver Dam Ct.<br>Keswick, VA 22947 | Owner and President | 100 |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Christine Dobson | 91 Beaver Dam Ct.<br>Keswick, VA 22947-2186 | Secretary | 0 |

**29.** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☑ No
☐ Yes. Identify below.

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

*Exhibit 1*

Case 23-60148   Doc 27   Filed 02/28/23   Entered 02/28/23 20:52:58   Desc Main
Document   Page 37 of 98

| Debtor 1 | **Tommy Dewayne Dobson** | | |
|---|---|---|---|
| Debtor 2 | **Anne Christine Dobson** | Case number (if known) | **23-60148** |

## Part 2:  Your NONPRIORITY Unsecured Claims -- Continuation Page

After listing any entries on this page, number them sequentially from the previous page.

**Total claim**

---

**4.51**

Unknown

**Glen and Nancy Littlefield**
Nonpriority Creditor's Name

**132 The Green**
Number        Street

**Williamsburg      VA      23185**
City                      State    ZIP Code

Last 4 digits of account number  __ __ __ __

When was the debt incurred?  _____

As of the date you file, the claim is: Check all that apply.
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Who incurred the debt?  Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Type of NONPRIORITY unsecured claim:
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other.  Specify **Business Debt**

---

**4.52**

$41.00

**Green For Life Environmental**
Nonpriority Creditor's Name

**26999 Central Park Blvd Ste. 200**
Number        Street

**Southfield      MI      48076**
City                      State    ZIP Code

Last 4 digits of account number  7  4  6  6

When was the debt incurred?  _____

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Who incurred the debt?  Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Type of NONPRIORITY unsecured claim:
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other.  Specify **Business Debt**

---

**4.53**

$2,275.00

**H&P Painting Services LLC**
Nonpriority Creditor's Name

**924 Henry Ave.**
Number        Street

**Charlottesville      VA      22903**
City                      State    ZIP Code

Last 4 digits of account number  __ __ __ __

When was the debt incurred?  _____

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Who incurred the debt?  Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☑ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Type of NONPRIORITY unsecured claim:
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other.  Specify **Business Debt**

*Exhibit 2*

Case 23-60148   Doc 27   Filed 02/28/23   Entered 02/28/23 20:32:56   Desc Main
Document   Page 1 of 98

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Tommy** | **Dewayne** | **Dobson** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Anne** | **Christine** | **Dobson** |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **WESTERN DISTRICT OF VIRGINIA**

Case number **23-60148**
(if known)

☐ Check if this is an
amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

**1.1.**

**91 Beaver Dam Ct**
Street address, if available, or other description

_____

**Keswick**          **VA**   **22947**
City          State   ZIP Code

**Albemarle**
County

91 Beaver Dam Ct, Keswick, VA 22947

**What is the property?**
Check all that apply.

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?**
Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$1,510,000.00

**Current value of the portion you own?**
$1,510,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Tenants by Entireties**

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local property identification number: _____

*Exhibit 2*

 Gmail

Nancy Littlefield <nancy.littlefield@gmail.com>

---

**Response to your offer**

---

**Tommy Dobson** <tommyddobson73@gmail.com>                                      Thu, Dec 29, 2022 at 8:10 PM
To: Nancy Littlefield <nancy.littlefield@gmail.com>
Cc: LARRY PETTIT <lpettit3@gmail.com>, Bill Carswell <billcarswell2015@gmail.com>, Gardner Lloyd
<glloyd1977@gmail.com>, Glen Littlefield <Glittlef1222@gmail.com>

Hello Nancy & Glenn,
   I want to thank you for your email.  The current situation and my ability to not fulfill my obligation to you breaks my heart
and is so unfair to you and Glenn.  You and Glenn are one of the nicest & finest human beings I have ever met in my life.
You deserve better from me and to have received a home that I typically build for my clients.  I am so very sorry for all of
this and will continue to do everything I can to put myself in a situation where I can repay everything I owe you.  I never
thought in my lifetime I would be in this situation.  All I can do now is try to make things right as soon as possible for you.
This means that I have to face my situation and options directly and handle them as honorably as I can.  During this time I
have reached out to every successful business man & expert I know to help me come up with the absolute best options
possible.  As you know, I have been working with Larry Petit very closely.  He is an expert in these situations and has
been working with me to find a path forward.  For the last several months Larry has advised me to work with the CPA Firm
& other consultants and to let him have all the direct conversations with you and Glenn while he can come up with the
best possible options for me.  Unfortunately, the best options that I have are only 3 options.   These are the options I
reviewed with Glenn yesterday.  The 1st.option is to move forward with a cost plus format where I would match another
builder's cost plus pricing with a credit that would be applied to any monies I owe you and Glenn.  The best Cost Plus
pricing I have seen come back to clients who have chosen this option and to move forward with me is Cost Plus 15%.
This would be where all costs would be billed out at a cost plus 15% with a 5% credit to be applied to any monies I owe
you.  The 2nd. option is where I bill out a minimum $2,500.00 per week to cover costs until your home is complete & you
pay everything directly.  Note: All DH employee's hours & costs will have to be billed out by DH & paid to DH.  (Framer's,
Electricians, etc.)  The 3rd option is for you to find another builder to finish your home.  If you choose this option.  I will
transfer the permit to your name or your new builder's name.  I totally understand why you would not want me to finish
your home and why you would not want me at your building site.  My only goal moving forward is to plan a successful
path forward to undo the harm I have caused you and pay you everything I owe.  As it has been very clearly explained to
me, the only option I have that will allow this to be possible.  Is for me to stay in business in some capacity.  This is the
only way I will be able to collect money that is owed to me and produce future revenue so I can repay what I owe you.  Me
filing for bankruptcy does not allow me to repay what I owe you.  Please clarify which of the 3 options I listed above you
would like to move forward with for finishing your home.  Feel free to call me or email me If you have any questions.   I
know it does not help, but again I am so very sorry for this situation and all I want to do is to come up with a way I can get
you in your beautiful new home & pay you what I owe you.


Sincerely,
Tommy Dobson
[Quoted text hidden]

*Exhibit 3*

OMB No. 1545-2294

Form **8995**

Department of the Treasury
Internal Revenue Service

**Qualified Business Income Deduction**
**Simplified Computation**

► Attach to your tax return.
► Go to *www.irs.gov/Form8995* for instructions and the latest information.

**2021**

Attachment
Sequence No. **55**

Name(s) shown on return
TOMMY D AND ANNE C DOBSON

Your taxpayer identification number
\*\*\*–\*\*–\*\*\*\*

**Note.** *You can claim the qualified business income deduction only if you have qualified business income from a qualified trade or business, real estate investment trust dividends, publicly traded partnership income, or a domestic production activities deduction passed through from an agricultural or horticultural cooperative. See instructions.*
*Use this form if your taxable income, before your qualified business income deduction, is at or below $164,900 ($164,925 if married filing separately; $329,800 if married filing jointly), and you aren't a patron of an agricultural or horticultural cooperative.*

| 1 | (a) Trade, business, or aggregation name | (b) Taxpayer identification number | (c) Qualified business income or (loss) |
|---|---|---|---|
| i | DOBSON HOMES, INC. | 20-5983301 | -146,012. |
| ii | | | |
| iii | | | |
| iv | | | |
| v | | | |

| | | | |
|---|---|---|---|
| 2 | Total qualified business income or (loss). Combine lines 1i through 1v, column (c) | **2** | -146,012. | | |
| 3 | Qualified business net (loss) carryforward from the prior year | **3** | ( 355,184.) | | |
| 4 | Total qualified business income. Combine lines 2 and 3. If zero or less, enter -0- | **4** | 0. | | |
| 5 | Qualified business income component. Multiply line 4 by 20% (0.20) | | | **5** | 0. |
| 6 | Qualified REIT dividends and publicly traded partnership (PTP) income or (loss) (see instructions) | **6** | 0. | | |
| 7 | Qualified REIT dividends and qualified PTP (loss) carryforward from the prior year | **7** | ( 0.) | | |
| 8 | Total qualified REIT dividends and PTP income. Combine lines 6 and 7. If zero or less, enter -0- | **8** | 0. | | |
| 9 | REIT and PTP component. Multiply line 8 by 20% (0.20) | | | **9** | 0. |
| 10 | Qualified business income deduction before the income limitation. Add lines 5 and 9 | | | **10** | 0. |
| 11 | Taxable income before qualified business income deduction (see instructions) | **11** | 5,496. | | |
| 12 | Net capital gain (see instructions) | **12** | | | |
| 13 | Subtract line 12 from line 11. If zero or less, enter -0- | **13** | 5,496. | | |
| 14 | Income limitation. Multiply line 13 by 20% (0.20) | | | **14** | 1,099. |
| 15 | Qualified business income deduction. Enter the smaller of line 10 or line 14. Also enter this amount on the applicable line of your return (see instructions) ► | | | **15** | 0. |
| 16 | Total qualified business (loss) carryforward. Combine lines 2 and 3. If greater than zero, enter -0- | | | **16** | ( 501,196.) |
| 17 | Total qualified REIT dividends and PTP (loss) carryforward. Combine lines 6 and 7. If greater than zero, enter -0- | | | **17** | ( 0.) |

*DO NOT MAIL*

**BAA  For Privacy Act and Paperwork Reduction Act Notice, see instructions.**

Form **8995** (2021)

*Exhibit 4*

FDIA9922L  10/26/21

Case 23-60148   Doc 23   Filed 02/22/23   Entered 02/22/23 22:13:26   Desc Main
Document   Page 13 of 83

Form 7203 (12- 2021)    TOMMY D DOBSON                    ***-**-****        Page 2

| Part II | Shareholder Debt Basis *(continued)* | DOBSON HOMES, INC. |

### Section B — Adjustments to Debt Basis

| | Description | Debt 1 | Debt 2 | Debt 3 | Total |
|---|---|---|---|---|---|
| 21 | Debt basis at the beginning of the corporation's tax year | 0. | | | 0. |
| 22 | Enter the amount, if any, from line 17 | | | | |
| 23 | Debt basis restoration (see instructions) | | | | |
| 24 | Debt basis before repayment. Combine lines 21, 22, and 23 | 0. | | | 0. |
| 25 | Divide line 24 by line 18 | | | | |
| 26 | Nontaxable debt repayment. Multiply line 25 by line 19 | | | | |
| 27 | Debt basis before nondeductible expenses and losses. Subtract line 26 from line 24 | 0. | | | 0. |
| 28 | Nondeductible expenses and oil and gas depletion deductions in excess of stock basis | | | | |
| 29 | Debt basis before losses and deductions. Subtract line 28 from line 27. If the result is zero or less, enter -0- | 0. | | | 0. |
| 30 | Allowable losses in excess of stock basis. Enter the amount from line 47, column (d) | | | | |
| 31 | **Debt basis at the end of the corporation's tax year.** Subtract line 30 from line 29. If result is zero or less, enter -0- | 0. | | | 0. |

### Section C — Gain on Loan Repayment

| | | | | | |
|---|---|---|---|---|---|
| 32 | Repayment. Enter the amount from line 19 | | | | |
| 33 | Nontaxable repayments. Enter the amount from line 26 | | | | |
| 34 | **Reportable gain.** Subtract line 33 from line 32 | | | | |

| Part III | Shareholder Allowable Loss and Deduction Items |

| | Description | (a) Current year losses and deductions | (b) Carryover amounts (column (e)) from the previous year | (c) Allowable loss from stock basis | (d) Allowable loss from debt basis | (e) Carryover amounts |
|---|---|---|---|---|---|---|
| 35 | Ordinary business loss | 1,463,271. | 3,651,458. | 146,012. | | 4,968,717. |
| 36 | Net rental real estate loss | | | | | |
| 37 | Other net rental loss | | | | | |
| 38 | Net capital loss | | | | | |
| 39 | Net section 1231 loss | | | | | |
| 40 | Other loss | | | | | |
| 41 | Section 179 deductions | | | | | |
| 42 | Charitable contributions | | 12,840. | 367. | | 12,473. |
| 43 | Investment interest expense | | | | | |
| 44 | Section 59(e)(2) expenditures | | | | | |
| 45 | Other deductions | | | | | |
| 46 | Foreign taxes paid or accrued | | | | | |
| 47 | **Total loss.** Combine lines 35 through 46 for each column. Enter the total loss in column (c) on line 11 and enter the total loss in column (d) on line 30. | 1,463,271. | 3,664,298. | 146,379. | 0. | 4,981,190. |

Form **7203** (12- 2021)

Exhibit A  no
Exhibit 5

---

**Fill in this information to identify your case:**

| Debtor 1 | **Tommy** | **Dewayne** | **Dobson** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Anne** | **Christine** | **Dobson** |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **WESTERN DISTRICT OF VIRGINIA**

Case number **23-60148**
(if known)

☐ Check if this is an
amended filing

---

Official Form 106E/F

## Schedule E/F: Creditors Who Have Unsecured Claims                 12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G). Do not include any creditors with partially secured claims that are listed in *Schedule D: Creditors Who Hold Claims Secured by Property.* If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**

    ☐ No. Go to Part 2.
    ☑ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If more space is needed for priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

    (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|

| **2.1** | | Unknown | Unknown | Unknown |
|---|---|---|---|---|

**Internal Revenue Service\*\*\***
Priority Creditor's Name
**P O Box 7346**
Number       Street

Last 4 digits of account number  ___ ___ ___ ___

When was the debt incurred?  _____

**Philadelphia         PA       19101**
City                       State     ZIP Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Who incurred the debt?**   Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☑ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

*Exhibit 6*

---

Debtor 1   **Tommy Dewayne Dobson**

Debtor 2   **Anne Christine Dobson**

Case number (if known)   **23-60148**

| Part 1: | Your PRIORITY Unsecured Claims -- Continuation Page |
| --- | --- |

After listing any entries on this page, number them sequentially from the previous page.

| | Total claim | Priority amount | Nonpriority amount |
| --- | --- | --- | --- |

| 2.2 | | Unknown | Unknown | Unknown |
| --- | --- | --- | --- | --- |

**Va Department Of Taxation***
Priority Creditor's Name

**Attn: Bankruptcy**
Number     Street

**P O Box 2156**

_____

**Richmond          VA      23218-0000**
City                State    ZIP Code

Last 4 digits of account number   __ __ __ __

When was the debt incurred?   _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

**Who incurred the debt?**  Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
☑ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other.  Specify

_Exhibit 6_

# BYLAWS

## OF

### DOBSON HOMES, INC.

#### December 5, 2006

## ARTICLE I

### Offices

**Section 1.** **Registered Office.** The registered office of the Corporation in the State of Virginia shall be located at 250 East High Street, in the City of Charlottesville, Virginia.

**Section 2.** **Other Offices.** The Corporation may also have an office or offices at such place or places, within or without the State of Virginia, as the Board of Directors (the "Board") may from time to time designate or the business of the Corporation require.

## ARTICLE II

### Capital Stock

**Section 1.** All certificates of stock shall be signed by the President and Secretary and shall bear the corporate seal.

**Section 2.** Stock which has been reacquired by the Corporation shall be held by the Corporation subject to disposal by the Board and shall neither vote nor participate in dividends.

Exhibit 7
pg 1-13

1

**Section   3.**   The Corporation shall have a first lien on all shares of its capital stock, and upon all dividends declared upon the same, for any indebtedness of the respective holders thereof to the Corporation.

**Section   4.**   Transfer of stock shall be made only on the books of the Corporation; and the old certificates, properly endorsed, shall be surrendered and canceled before a new certificate is issued.  Shareholders entitled to receive notice of or to vote at any meeting of shareholders, or to receive any allotment of rights, or to participate in any change or conversion or exchange of capital stock, shall be the shareholders of record as to the date fifteen (15) days before the effective date of any of the above-enumerated items, and only shareholders of record on the date so fixed shall be entitled to such notice of and to vote at such meeting, or to receive payment of such dividend, or allotment of rights, or exercise such rights, as the case may be, and notwithstanding any transfer of any stock on the books of the Corporation after such record date fixed as aforesaid.

**Section   5.**   In case of loss or destruction of a certificate of stock, no new certificate shall be issued in lieu thereof except upon proof satisfactory to the Board of such loss or destruction  and upon the giving of bond satisfactory to the Board to indemnify the Corporation against any claim which may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.  Any such new certificate shall be plainly marked "Duplicate" on its face.

Exhibit 7

2

Joint Stipulation Ex. 1
23-60148
May 2, 2023
pg. 2 of 13

### ARTICLE III

### Shareholders' Meetings

**Section    1.**    The annual meeting of the shareholders shall be held at 10:00 a.m. on the 15th day of March of each year, beginning in 2008, at the registered office of the Corporation or at such other place as may be fixed by the Board and announced in the notice of the meeting.  At such meeting, the shareholders shall elect directors to serve until their successors are elected and qualify and transact such other business as may properly be brought before the meeting.

**Section    2.**    A special meeting of the shareholders, to be held at a place to be fixed by the Board and announced in the notice of such meeting, may be called at any time by the President or by any member of the Board.  It shall be the duty of the President or directors to call such a meeting whenever so requested by shareholders holding ten percent (10%) or more of the capital stock outstanding.  A request for the calling of a special meeting of shareholders shall state the purposes of the proposed meeting, and the business to be transacted at such meeting shall be confined to the objects stated in said request.

**Section    3.**    Notice of the time, place, and purposes of all annual and special meetings of shareholders shall be mailed (U.S. first class, postage pre-paid) by the Secretary to each shareholder at least ten (10) days before the date thereof, at the last known addresses of such shareholders as they respectively appear

3

Exhibit

upon the books of the Corporation.  Notice shall be deemed given when mailed.

Section   4.   The President or such person appointed by the President shall preside at all such meetings.

Section   5.   At every meeting of shareholders, each shareholder shall be entitled to cast one (1) vote for each share of stock held in his name.  Votes may be cast by the shareholder in person or by proxy.  All proxies shall be in writing, shall be filed with the Secretary, and shall be entered of record in the minutes of the meeting.

Section   6.   A quorum for the transaction of business at any shareholders' meeting shall consist of shareholders present in person or by proxy representing a majority of the shares of stock issued and outstanding, but the shareholders present at any shareholders' meeting, though less than a quorum, may adjourn the meeting from time to time, without notice other than at the time of adjournment, until the requisite amount of stock shall be so present.

Section   7.   Any or all of the requirements of this Article of the Bylaws as to time, place or notice of any meeting of the shareholders may be waived by the shareholders, if every shareholder of record shall agree to such waiver in writing or by the attendance in person or by proxy of all of the shareholders.

Section   8.   Notwithstanding any provision of these Bylaws or of the Articles of Incorporation, any action required by Virginia law to be taken at a meeting of the shareholders of the Corporation, or any action which may be taken at a

4

Exhibit 7

meeting of the shareholders, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the shareholders entitled to vote with respect to the subject matter thereof. Such consent shall have the same force and effect as a unanimous vote of the shareholders.

**Section      9.**   At any meeting of the shareholders, duly called as provided in these Bylaws, any director may be removed from office by a majority vote of all of the shares of stock outstanding and entitled to vote for the election of directors, either with or without cause, and his successor may be elected at such meeting.

## ARTICLE IV

### Board of Directors

**Section      1.**   The management of the affairs, property, and business of the Corporation shall be vested in the Board, to consist of at least one (1), but not more than three (3) directors, who shall be elected at the annual meeting of the shareholders for a term of one (1) year and who shall hold office until their successors are elected and qualify. In addition to the powers expressly conferred upon it by these Bylaws and the Articles of Incorporation, the Board may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute, or by the Articles of Incorporation, or by these Bylaws directed or required to be exercised or done by the shareholders.

5

Exhibit 7

Joint Stipulation Ex. 1
23-60148
May 2, 2023
pg. 5 of 13

**Section    2.**    Each director shall receive such compensation for his services as director as the shareholders may prescribe. Nothing herein contained shall be construed to preclude the directors from serving the corporation in any other capacity and receiving compensation therefor.

**Section    3.**    The regular annual meeting of the Board shall be held immediately after the adjournment of each annual shareholders' meeting and at the same place.

**Section    4.**    Special meetings of the Board to be held at a place to be designated by the President may be called by the President or by any member of the Board.

**Section    5.**    Notice of the time and place of all regular and special meetings of the Board shall be mailed (U.S. first class, postage pre-paid) to each director by the Secretary at least five (5) days before the time fixed for the meeting, unless the giving of such notice is waived by prior resolution of the Board or pursuant to Section 10 of this Article. Notice shall be deemed given when mailed.

**Section    6.**    A quorum for the transaction of business at any regular or special meeting of the Board shall consist of a majority of the members of the Board, but the directors present at any directors' meeting, though less than a quorum, may adjourn the meeting from time to time, without notice other than at the time of adjournment, until the requisite quorum shall be present.

**Section    7.**    Notwithstanding any provision of these Bylaws or of the Articles of Incorporation, any action which must or may be taken at a meeting of the Board, or any action which may be taken at a meeting of a committee of the

6

Exhibit 7

Joint Stipulation Ex. 1
23-60148
May 2, 2023
pg. 6 of 13

Board, may be taken without a meeting if a consent in writing setting forth the action to be taken, is signed before such action by all of the directors or all of the members of the committee, as the case may be. Such consent shall have the same force and effect as a unanimous vote.

*Section 8.* Any vacancy on the Board, except where caused by the removal of a director, may be filled by vote of the remaining directors at any regular or special meeting of the Board. A director elected to fill a vacancy shall serve for the unexpired portion of the term of the director whose place he has filled and until his successor shall be duly elected and qualify, unless sooner displaced.

*Section 9.* At each annual shareholders' meeting, the Board shall submit (in writing or orally) a statement of business done during the preceding year, together with a report on the general financial condition of the Corporation and on the condition of its tangible property. This statement may be submitted by the individual presiding at such meeting.

*Section 10.* Any or all of the requirements of this Article of the Bylaws as to time, place, or notice of any meeting of the Board may be waived by the directors, if each member of the Board shall agree in writing to such a waiver.

*Section 11.* The Board may, by resolution or resolutions, passed by a majority of the Board, designate one or more committees, each committee to consist of one or more directors of the Corporation, which, to the extent provided in such resolution or resolutions, shall have and may exercise the powers of the Board in the management of the business and affairs of the Corporation.

7

Exhibit 7

**Section    12.**    In any case where the Corporation enters into any contract, or transacts any business with any director or directors or with any corporation or association of which one or more of its directors is a shareholder, director, officer, trustee, or partner, such contract or transaction shall not be invalidated or in any way affected by the fact that such director or directors have or may have an interest therein which is or might be adverse to the interests of this Corporation, so long as full disclosure of the adverse interest is made to the Board by the directors having such interest, and the Board unanimously authorizes, affirms, ratifies, or approves such contract or transaction.

## ARTICLE V

### Officers

**Section    1.**    The Board shall elect the officers of the Corporation and fix their salaries, such election to be held at the annual meeting of the Board following each annual shareholders' meeting.  An officer may be removed at any time by a majority vote of the full Board at any regular or special meeting of the directors.  At the discretion of the Board, any officer whose removal is contemplated may be granted a reasonable time in which to answer at a hearing before the full Board such charges as may be brought against him.

**Section    2.**    The officers of this Corporation shall be a President, a Secretary and a Treasurer, and the same individual may simultaneously hold more than one office in the Corporation.  In addition, the Corporation may have one or more Vice President, whose duties may be decided upon at the time of election.

8

Exhibit 7

The officers shall be elected for a term of one (1) year and shall hold office until their successors are duly elected and qualify. Officers elected to fill vacancies shall be chosen for the unexpired portion of the terms of their predecessors and shall also hold office until their successors are duly elected and qualify. No one shall be eligible for the office of President who is not a director of the Corporation, and any President who ceases to be a director shall cease to hold office as President.

**Section 3.** The President shall be the chief executive of the Corporation, shall preside at all directors' and shareholders' meetings, shall have general supervision over the affairs of the Corporation, shall sign all stock certificates, and shall perform all other such duties which are incident to his office or as the Board may prescribe.

**Section 4.** In the case of the absence or disability of the President, his duties shall be performed by a Vice President or by such other officer as the Board may designate.

**Section 5.** The Secretary shall issue notices of all meetings of the shareholders and of the Board and shall attend and keep the minutes of the same, he shall be in charge of all corporate records and papers, shall keep in safe custody the corporate seal, shall attest with his signature and impress with the corporate seal all stock certificates and all written contracts of the Corporation as to which a seal and attestation is necessary, and shall perform all other such duties as are incident to his office or as the Board may prescribe.

9

Exhibit 7

**Section   6.**   The Treasurer shall have the custody of all moneys and securities of the Corporation and shall keep regular books of account. He shall disburse the funds of the Corporation in payment of the just demands against the Corporation, or as may be ordered by the Board, taking proper vouchers for such disbursements and shall render to the Board from time to time as may be required of him an account of all his transactions as Treasurer and of the financial condition of the Corporation. He shall perform all duties incident to his office or which are properly required of him by the Board.

**Section   7.**   In the case of the absence or the inability to act of any officer of the Corporation, the Board may, from time to time, delegate the powers or duties of such officer to any other officer or any director or other person whom it may select.

**Section   8.**   Any vacancy in any office arising from any cause may be filled by the directors at any regular or special meeting or by unanimous written consent.

**Section   9.**   The Board may appoint such other officer or officers as it shall deem necessary or expedient, who shall hold his or their office for such terms, and who shall exercise such powers and perform such duties as shall be determined from time to time by the Board.

Exhibit 7
Joint Stipulation Ex. 1
23-60148
May 2, 2023
pg. 10 of 13

## ARTICLE VI

### Meetings

Section    1.    The order of business at all regular meetings of the Board and of the shareholders shall follow the following outline, as may be amended from time to time by the Board or the President.

      (a)    Calling meeting to order and determination of a quorum;

      (b)    Reading and adoption of the minutes of the previous meeting(s);

      (c)    Reports of the officers;

      (d)    Reports of the special committees;

      (e)    Election of directors (or officers);

      (f)    Unfinished business;

      (g)    New business;

      (h)    Adjournment

## ARTICLE VII

### Seal

Section    1.    The corporate seal of this Corporation shall be as follows: two concentric circles in between which shall be written "Dobson Homes, Inc." and the words "Corporate Seal" inscribed in the central portion thereof.

11

Exhibit 7

### ARTICLE VIII

#### Dividends and Finances

*Section*      *1.*      Dividends may be declared from time to time by resolution of the Board to be

paid out of the surplus or net earnings of the Corporation as authorized by

law.

*Section*      *2.*      The funds of the Corporation shall be deposited in such banks, trust

companies, or other depositories as the Board from time to time may

designate.  Checks drawn to pay any indebtedness of the Corporation may be

signed by such officer or officers of the Corporation that the Board may from

time to time designate.

*Section*      *3.*      The President or the Treasurer is hereby authorized to borrow money and to

make and to issue notes, bonds, debentures, obligations, and evidences of

indebtedness of all kinds only pursuant to resolutions duly adopted by the

Board, and in compliance with the statutes for such cases made and pro-

vided.

*Section*      *4.*      The accounts of the Corporation shall be kept on the basis of a calendar year

ending on the last day of December of each year, and annual financial

statements shall be prepared as of that date.

12

Exhibit 7

Joint Stipulation Ex. 1
23-60148
May 2, 2023
pg. 12 of 13

## ARTICLE IX

### Amendments

**Section 1.**   Amendments to these Bylaws may be made by a vote of a majority of the Board at any regular or special Board meeting when the proposed amendment has been set out in the notice of such meeting, provided that any amendment so adopted by the Board shall be presented to the shareholders at their next annual or special meeting and shall be subject to amendment or repeal by the shareholders at that time. Amendments may also be made and adopted by unanimous written consent.

E:\DATA FILES\CLIENTS\Dobson Homes Inc\Org Docs (10838)\10838-bylaws.doc

13



Exhibit 7

Joint Stipulation Ex. 1
23-60148
May 2, 2023
pg. 13 of 13

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10        TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS

11                    341 MEETING OF CREDITORS

12                        March 6, 2023

13                  Audio Runtime:  1:50:19

14

15

16

17

18

19

20

21

22

23

24

25                                    Exhibit 8
```

Exhibit 8

33 page

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors                                      Page 2

```
1            (Beginning of Audio Recording.)

2            MR. CHARBONEAU:  All right.  Good

3     morning.  This is Joel Charboneau on behalf of

4     the U.S. Trustee.  Do I have Mr. Cox on the

5     line?

6            MR. COX:  Good morning, Mr. Charboneau,

7     yes.  This is David Cox --

8            MR. CHARBONEAU:  Okay.

9            MR. COX:  -- with Tommy and Christine

10    Dobson.  They're present with me.

11           MR. CHARBONEAU:  Okay.  They're in your

12    office?

13           MR. COX:  I'm actually at their house.

14           MR. CHARBONEAU:  Okay.  And do I have

15    Ben Ziccardy on the phone?

16           MR. ZICCARDY:  Yes, I'm here.

17           MR. CHARBONEAU:  Okay.  Now, let's see.

18    Is the -- I'm a little bit disorganized here,

19    but if I could, I guess, you know, identify

20    yourself if you're on the phone, and we'll try

21    to, then, get everybody's information.

22           MR. CALLAHAN:  This is Bill Callahan,

23    Subchapter V Trustee.

24           MR. CHARBONEAU:  All right.  We got

25    Bill.  Who else?
```

Exhibit B

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                    Page 5

1    declaration, I guess, regarding the Dobsons?

2        MR. COX:  You know, I'm not sure that I

3    have.  My apologies.  I can send one to you

4    right away.

5        MR. CHARBONEAU:  Yeah, that would --

6        MR. COX:  (Inaudible).

7        MR. CHARBONEAU:  Yeah, for the identity

8    and the verification of their Social Security

9    number.

10       MR. COX:  Yes.  I can do that.  I can

11   also state on the record that I have reviewed

12   their Social Security cards and their driver's

13   licenses and do confirm that the information

14   is correct.  It's in the system, and it has

15   been filed with the court.  But I'll send you

16   the certification, as well, the declaration.

17       MR. CHARBONEAU:  Right.  Thank you.

18   And I'm just going to double check, make sure

19   that Mr. McMahon didn't already obtain that.

20   Yeah, I don't see it yet.  So if you would,

21   just send that over to me, I'd appreciate it.

22   All right.

23       Mr. and Ms. Dobson, will you raise your

24   right hand and confirm for me when you've done

25   that?

Exhibit B

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors                                    **Page 6**

1        MR. DOBSON:  Yes.

2        MS. DOBSON:  Yes.

3        MR. CHARBONEAU:  All right.  Do you

4    swear or affirm the testimony you give today

5    will be the truth, the whole truth, and

6    nothing but the truth?

7        MR. DOBSON:  Yes, sir.

8        MS. DOBSON:  Yes, I do.

9        MR. CHARBONEAU:  All right.  We're

10   going to first of all go through your

11   bankruptcy filings pretty quickly.  First

12   thing we're going to look at is your voluntary

13   petition.  This is what started your case.

14   Are the last four digits of your Social, Mr.

15   Dobson, 7152?

16       MR. DOBSON:  Yes, sir.

17       MR. CHARBONEAU:  And Ms. Dobson, last

18   four of yours, 6517?

19       MS. DOBSON:  Yes, that's correct.

20       MR. CHARBONEAU:  Are you each still

21   residing at 91 Beaver Dam court, Keswick,

22   Virginia?

23       MR. DOBSON:  Yes.

24       MS. DOBSON:  Yes.

25       MR. CHARBONEAU:  All right.  At the end

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**

```
1    of your voluntary petition, on Page 7, there

2    are signatures, electronic signatures.  Now,

3    Mr. Dobson, did you personally sign the

4    petition or authorize counsel in writing to

5    add your endorsement?

6            MR. DOBSON:  Yes, sir, I did.

7            MR. CHARBONEAU:  Okay.  And Ms. Dobson,

8    did you, as well?

9            MS. DOBSON:  Yes, sir.

10           MR. CHARBONEAU:  Is the information in

11   the petition true and correct?

12           MS. DOBSON:  Yes, it is.

13           MR. DOBSON:  Yes, sir.

14           MR. CHARBONEAU:  All right.  You also

15   filed in support of the petition a statement

16   of your 20 largest unsecured creditors, while,

17   also, there's your electronic endorsements at

18   the end of it.  Did you each review that

19   schedule of your largest unsecured creditors?

20           MR. DOBSON:  Yes, sir.

21           MS. DOBSON:  Yes.

22           MR. CHARBONEAU:  And did you each sign

23   that before filed with the court?

24           MS. DOBSON:  Yes.

25           MR. DOBSON:  Yes.
```

Exhibit B

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors                                          Page 8

```
 1          MR. CHARBONEAU:  All right.  In support

 2   of your petition and schedule, well, your

 3   petition, you filed schedules and statements.

 4          You filed a schedule of your real

 5   estate and your personal property holdings, a

 6   list of property you claimed exempt, a list of

 7   creditors that are secured by collateral, a

 8   list of unsecured creditors, a list of

 9   executory contracts and unexpired leases, a

10   list of co-debtors that are people liable with

11   you on debts, a schedule of your income, a

12   schedule of your monthly expenses, a summary

13   of your schedules.

14          And at the end of that, which was filed

15   at Page Number 90 of your schedules, your

16   balance of schedules is a declaration.  It's

17   official Form 106DEC, whereby you affirm that

18   the information in those schedules I've

19   mentioned, Schedule AB through including J and

20   the summary schedules, that that information

21   is true and correct.  Did you review those

22   schedules before they were filed with the

23   Court?

24          MR. DOBSON:  Yes, sir.

25          MS. DOBSON:  Yes.
```

*Exhibit B*

Case 23-60148   Doc 244   Filed 01/10/24   Entered 01/10/24 10:31:57   Desc Main
Case 23-60148   Doc 91   Document /23 Page 26 of 83 08/23 15:37:33   Desc Main
Document   Page 26 of 62   Exhibit 1 pg 7 of 26

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors   Page 9

```
 1            MR. CHARBONEAU:  And did you each sign

 2      the declaration regarding the accuracy of that

 3      information before it was filed with the

 4      Court?

 5            MR. DOBSON:  Yes, sir.

 6            MS. DOBSON:  Yes.

 7            MR. CHARBONEAU:  Are there any changes

 8      that you're aware of that need to be brought

 9      to my attention today?

10            MR. DOBSON:  Not at this time.

11            MS. DOBSON:  No.

12            MR. CHARBONEAU:  Now, you also filed a

13      Statement of Financial Affairs.  That's

14      official Form 107.  That contains information

15      such as the income that you've received in the

16      three years before the case was filed,

17      payments that you made to certain types of

18      creditors, lawsuits that were filed against

19      you, payments made to counsel with respect to

20      this case.

21            And at the conclusion of that Statement

22      of Financial Affairs is a declaration that

23      bears your electronic endorsements.  Did you

24      each review that Statement of Financial

25      Affairs before it was filed with the Court?
```

Exhibit 8

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                         **Page 10**

| | |
|---|---|
| 1 | MR. DOBSON:  Yes, sir. |
| 2 | MS. DOBSON:  Yes. |
| 3 | MR. CHARBONEAU:  Did you each sign the |
| 4 | Statement of Financial Affairs before it was |
| 5 | filed with the Court? |
| 6 | MR. DOBSON:  Yes. |
| 7 | MS. DOBSON:  Yes. |
| 8 | MR. CHARBONEAU:  Mr. Dobson, I didn't |
| 9 | catch you there. |
| 10 | MR. DOBSON:  Yes, sir, I did. |
| 11 | MR. CHARBONEAU:  All right.  Are there |
| 12 | any changes that you're aware of that need to |
| 13 | be brought to my attention today? |
| 14 | MR. DOBSON:  Not at this time, sir. |
| 15 | MS. DOBSON:  No. |
| 16 | MR. HASTINGS:  Mr. Charboneau? |
| 17 | MR. CHARBONEAU:  Yeah. |
| 18 | MR. HASTINGS:  This is Mike Hastings. |
| 19 | I was -- I just got an email from Steve Milo |
| 20 | who said that there are nine people waiting on |
| 21 | hold to get into the call.  So I'm not sure if |
| 22 | they called the wrong number or what, but I |
| 23 | thought I'd just let you know that, just in |
| 24 | case you want to do something or if you want |
| 25 | me to tell them the real number.  I don't |

*Exhibit B*

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                                       **Page 19**

```
1   sir, from Better Living.

2        MR. CHARBONEAU:  Ah, Northcutt.  Okay.

3   Got you.  And then, do I have Ms. Bailey on

4   the line?

5        MS. BAILEY:  Yes, sir.

6        MR. CHARBONEAU:  Okay.  Are you

7   represented by anybody?

8        MS. BAILEY:  Yes, sir.

9        MR. CHARBONEAU:  Who's that?

10       MS. BAILEY:  Mr. Milo.

11       MR. CHARBONEAU:  Okay.  Mr. Milo, as

12  well.  And then, do I have Alexanders on the

13  line?

14       MR. ALEXANDER:  Yes.

15       MR. CHARBONEAU:  And you're represented

16  by Mr. Milo, as well; is that correct?

17       MR. ALEXANDER:  Correct.

18       MR. CHARBONEAU:  Okay.  And circling

19  back to the Bolins, are you represented by

20  anybody?

21       MR. BOLIN:  Not currently.

22       MR. CHARBONEAU:  Okay.  Is there

23  anybody that has not been identified on this

24  call yet?  Okay.  Well, good.  Now, Mr. and

25  Ms. Dobson, do you recognize that you're still
```

*Exhibit B*

Case 23-60148   Doc 244   Filed 01/10/24   Entered 01/10/24 10:31:57   Desc Main
Case 23-60148   Doc 91   Filed 11/23/23 Page 39 of 82 15:37:33   Desc Main
Document   Page 29 of 62
Exhibit 1 pg 10 of 26

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors                                         Page 20

```
1    under oath?

2         MR. DOBSON:  Yes, sir.

3         MS. DOBSON:  Yes, I do.

4         MR. CHARBONEAU:  Okay.  And for the

5    people that were not on the line, what we've

6    done so far is I've identified the case, the

7    case name, myself.

8         We've gone through the debtors'

9    petition, schedules, and statements, and just

10   had the debtors identify that they reviewed

11   those documents before they were filled with

12   the court and that they, in fact, signed those

13   documents before they were filed with the

14   court.  So that's where we're at right now.

15        All right.  Picking up where we left

16   off, Mr. and Ms. Dobson, I understand from the

17   filing of Dobson Homes that you had a related

18   or a business that you owned.  Currently, are

19   either of you engaged in any business or

20   commercial transaction?

21        MR. DOBSON:  I don't know if I

22   understand the question.  Could you ask it

23   again, sir?  I apologize.

24        MR. CHARBONEAU:  Sure.  Are either of

25   you sort of operating as a sole
```

Exhibit 8

Case 23-60148   Doc 244   Filed 01/10/24   Entered 01/10/24 10:31:57   Desc Main
Case 23-60148   Doc 91   Filed 08/08/23 15:37:33   Desc Main
Document   Page 30 of 62
Exhibit 1 pg 11 of 26

TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS
341 Meeting of Creditors
Page 21

1   proprietorship?

2        MR. DOBSON:  Yes.

3        MR. CHARBONEAU:  Okay.  A sole

4   proprietorship, that's you operating on your

5   own, not doing an incorporated entity?

6        MR. DOBSON:  Yes, me.

7        MR. CHARBONEAU:  Say again.

8        MR. DOBSON:  Yes, sir.  Just me.

9        MR. CHARBONEAU:  Okay.  All right.  And

10   what's the nature of your current business?

11        MR. DOBSON:  Current business is doing

12   a design/build consulting (inaudible).

13        MR. CHARBONEAU:  A design/build

14   consulting?  And do you operate under any

15   trade name?

16        MR. DOBSON:  No.

17        MR. CHARBONEAU:  And when did you --

18        MR. DOBSON:  Not at this time, sir.

19        MR. CHARBONEAU:  When did you start

20   operating that sole proprietorship?

21        MR. DOBSON:  After we filed our

22   petition.

23        MR. CHARBONEAU:  Do you currently have

24   any contracts?

25        MR. DOBSON:  No, sir.

*Exhibit B*

TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS
341 Meeting of Creditors
**Page 38**

```
1           MR. CHARBONEAU:  In terms of --

2           MR. DOBSON:  Looking at right now.

3    Yes, sir.

4           MR. CHARBONEAU:  Right.  In terms of

5    Dobson Homes, had its books and records ever

6    been audited by a CPA?

7           MR. DOBSON:  Yes.

8           MR. CHARBONEAU:  Well, I mean, getting

9    your tax return done.  I mean, you know,

10   audited, financial audit.

11          MR. DOBSON:  Well, that's what they're

12   doing right now.  So that's one of the things

13   that's been taking so long is had a CPA firm

14   come in and finish moving all my information

15   to the new software and auditing all the

16   statements from vendors and subs for the past

17   three years, sir.

18          MR. CHARBONEAU:  Okay.  Is Hoffman the

19   one doing that?

20          MR. DOBSON:  Yes, sir.

21          MR. CHARBONEAU:  And do you have --

22          MR. DOBSON:  We brought another third

23   party in.

24          MR. CHARBONEAU:  And who's that?

25          MR. DOBSON:  He brought Christiana
```

Exhibit B

1  Collier to help with that, as well, getting

2  the information in there and help with

3  reconciliation, and we put a list of people

4  that, you know, I had helping with that.

5  Someone just doing data entries, others were

6  doing -- reconciling the statements, and then,

7  Paul was working on the year to end and going

8  over the reconciled statements.

9       MR. CHARBONEAU:  And when do you expect

10  that audit to be completed?

11      MR. DOBSON:  My best guess is in about

12  another month or two, sir.

13      MR. CHARBONEAU:  Okay.  Do you, Mr.

14  Dobson, have any accounts receivable owed to

15  you?

16      MR. DOBSON:  To me, Tommy Dobson?

17      MR. CHARBONEAU:  Correct.

18      MR. DOBSON:  From Dobson Homes?  Is

19  that what you're asking me?

20      MR. CHARBONEAU:  From anybody.

21      MR. DOBSON:  I have -- just the only

22  money that's really owed to me would be money

23  that I borrowed and lent to Dobson Homes.  I'm

24  hoping I'm understanding your question

25  correctly and answering it properly.

*Exhibit B*

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                        Page 54

---

 1          MR. MILO:  Okay.  Mr. Cox, the

 2    schedules indicate he has not given out a

 3    personal financial statement in the last two

 4    years, you might want to check on that.

 5          MR. COX:  Yes, thank you.  I just made

 6    a note of that.

 7          MR. MILO:  Thank you.  And then, you

 8    took -- said a little bit about the

 9    accountants doing auditing.  You mentioned

10    vendors --

11          MR. DOBSON:  Yes.

12          MR. MILO:  -- and (inaudible), what did

13    you mean by that?

14          MR. DOBSON:  Just -- it's just

15    everyone, you know, we pay money to, sir.

16          MR. MILO:  Okay.  Are they doing

17    anything on the receipts by Dobson Homes?

18    Money in as well as the money out?

19          MR. DOBSON:  Yes, they got a -- they --

20    they're doing a complete transfer of the data

21    from one -- the old accounting system to the

22    new.  And so, first they're getting out old

23    information into the new system, and

24    reconciling that the information is correct

25    according to all the past statements as step

*Exhibit B*

---

Case 23-60148  Doc 244  Filed 01/10/24  Entered 01/10/24 10:31:57  Desc Main
Case 23-60148  Doc 91  Filed 08/08/23  Entered 08/08/23 15:37:33  Desc Main
Document  Page 34 of 82
Document  Page 43 of 83
Exhibit 1 pg 15 of 26

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors                                    Page 55

```
 1    one.

 2          So, we know that we are working with an

 3    up to date book, and all the statements match

 4    all the other subcontractors, vendors, and

 5    whoever else's statements.

 6          MR. MILO:  Okay.  And while you were

 7    running Dobson Homes, did you ever take an

 8    advance from one project and not use the money

 9    for that project?

10          MR. DOBSON:  I never took advances

11    on -- from any -- from Dobson Homes at all, if

12    I understand your question.

13          MR. MILO:  No, let me --

14          MR. DOBSON:  I only got paid by --

15          MR. MILO:  -- let me clarify

16    (inaudible).

17          MR. DOBSON:  -- by a salary.

18          MR. MILO:  I'm sorry, Mr. Dobson, I

19    mis-- what I was saying is, as you were

20    running Dobson Homes, and you took -- took an

21    advance from a homeowner for work to be done

22    on their house, did you ever take that advance

23    and use it for something other than that

24    homeowner's home?

25          MR. DOBSON:  All the -- all the money
```

Exhibit B

Case 23-60148    Doc 244    Filed 01/10/24    Entered 01/10/24 10:31:57    Desc Main
Case 23-60148    Doc 91    Filed 11/08/23    Entered 11/08/23 15:37:33    Desc Main
Document    Page 35 of 82
Exhibit 1 pg 16 of 26

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**
Page 56

1    that came into Dobson Homes went into one

2    account, and all -- everything that got paid

3    came out of the same account.

4         MR. MILO:  But you didn't keep an

5    accounting by project or by home?

6         MR. DOBSON:  We did, but one of my

7    struggles was, I needed to get the accounting

8    system transferred and it was in the process

9    of that transfer.  And I was doing everything

10   I could by -- I had -- went out and got

11   outside advisors, consultants to help me to

12   get that speed -- sped up.  We were logging

13   it, but I didn't have an up to date accounting

14   system that was, you know, it was all in

15   trying to get that caught up.

16        MR. MILO:  Okay.  Accounting aside, did

17   you -- did you knowingly take money from a

18   homeowner to be used on their project and not

19   use that money on their project?

20        MR. DOBSON:  I don't know.  I mean, so

21   I understand your question, every -- all money

22   I received was meant to -- for the -- just the

23   standard workflow of the company, and I needed

24   to get my invoicing up so I can, you know,

25   keep up with my cash flow.  Because the cash

*Exhibit 8*

Case 23-60148   Doc 244   Filed 01/10/24   Entered 01/10/24 10:31:57   Desc Main
Case 23-60148   Doc 91   Filed 08/08/23 15:37:33   Desc Main
Document   Page 45 of 83
Document   Page 36 of 62
Exhibit 1 pg 17 of 26

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors                                    Page 57

```
1    flow is going up and down based on how much I

2    could get caught up on my invoices.

3         I never took one money to spend it on

4    another money, I took -- I took all money, put

5    it in one account, and then I just -- I paid

6    bills as I needed to out of that same account.

7         MR. MILO:  Okay.  And the work that the

8    accountants are doing, are they going to be

9    able to kind of break that down and determine

10   if you took too much?  When I say advance,

11   it's money that the homeowner paid you before

12   the work was done, or when the work -- when

13   you said the work had been done.  Is that

14   accounting going to show up on a particular

15   home, whether you took more a month in than

16   you put into that project?

17        MR. DOBSON:  Yes.  I will have a job

18   cost analysis, you know, how much was spent

19   and how much was paid.  Yes, sir.

20        MR. MILO:  And I'm sorry, when did you

21   think that accounting would be available?

22        MR. DOBSON:  You know, talking to them,

23   we're hoping to have it done in the next

24   couple of months.

25        MR. MILO:  Okay.  Mr. Cox, would you be
```

Exhibit 8

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors
**Page 58**

```
 1    willing to make that available to creditors as

 2    a part of the course?

 3           MR. COX:  Yes.

 4           MR. MILO:  Thank -- thank you.

 5           MR. DOBSON:  Can I just -- one -- can I

 6    clarify just one thing real quick on that?

 7           MR. MILO:  Sure.

 8           MR. DOBSON:  Is we will have job costs

 9    in, which will be what we entered -- what

10    invoices we have entered into the system, and

11    what we have deposited into this system.  A

12    complete reconciliation per job will still

13    need to be done, meaning that, you know, what

14    wasn't invoiced out, what should have been

15    credited out, all that would still need to

16    happen, sir.  I just wanted to make sure I

17    clarified that to you.

18           MR. MILO:  Okay.  That -- I appreciate

19    that.  And again, I'm -- I guess I was just

20    wondering if you knew, accounting aside -- and

21    I won't ask it again, because you have

22    answered it -- but my inquiry was really did

23    you go to the homeowner and say, look, I need

24    $50,000 to put your doors in, and then you --

25    that $50,000 wasn't used for the doors.
```

Exhibit 8

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                                    Page 59

```
 1    That's kind of the question I was getting

 2    that.

 3          MR. DOBSON:  Yeah, no.  All I did was

 4    just follow our standard workflow and push to

 5    get the jobs done as fast as I can.

 6          MR. MILO:  Okay.  Thank you.  And Mr.

 7    Dobson, are you subject to any criminal

 8    proceedings at this point?  Investigations or

 9    active proceedings?

10          MR. DOBSON:  Yes, sir.

11          MR. MILO:  Have you disclosed those on

12    your bankruptcy schedule?

13          MR. DOBSON:  I'm not sure off the top

14    of my head, sir.  I can look that up.

15          MR. MILO:  And do you know how many

16    there are (inaudible) --

17          MR. DOBSON:  (Inaudible) sir, I just

18    don't know --

19          MR. MILO:  Do you --

20          MR. DOBSON:  (Inaudible) sir.

21          MR. MILO:  -- (inaudible) idea of how

22    many are --

23          MR. DOBSON:  I'm sorry.

24          MR. MILO:  How many of them are

25    pending --
```

*Exhibit 8*

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                   Page 60

1        MR. DOBSON:  One.

2        MR. MILO:  -- right now?  Just one?

3        MR. DOBSON:  Just one.  Yes, sir.

4        MR. MILO:  And what --

5        MR. DOBSON:  Just --

6        MR. MILO:  -- what's the nature of the

7   allegations in that criminal proceeding?

8        MR. DOBSON:  I don't know if I

9   completely understand the nature -- of the

10  question the nature.  It is -- said they made

11  allegations, I -- just made allegations, and I

12  have an attorney that, you know, given my

13  views, why I disagree.

14       MR. MILO:  Okay.  And you said an

15  attorney, is that someone other than Mr. Cox,

16  I take it?

17       MR. DOBSON:  Yes, sir.

18       MR. MILO:  And who is that?  (Coughs)

19  excuse me.

20       MR. DOBSON:  Lewis Holmes.

21       MR. MILO:  And did you give Mr. Holmes

22  a deposit or a retainer of any sort?

23       MR. DOBSON:  Yes, in the beginning, I

24  paid -- Dobson almost paid him a retainer

25  initially in the beginning, before we filed.

Exhibit 8

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                    **Page 61**

1   And Sam has made a -- one cent after I filed.

2        MR. MILO:  Okay.  You said Dobson Homes

3   paid before the bankruptcy?

4        MR. DOBSON:  Yes, made one payment.

5        MR. MILO:  How much was that?

6        MR. DOBSON:  Or two.  I think --

7        MR. MILO:  How much was --

8        MR. DOBSON:  -- 5,500.  No, 3,500,

9   sorry.

10        MR. MILO:  Okay.  And where did those

11   funds come from?

12        MR. DOBSON:  I paid the 3,500 Dobs--

13   $3,500 came out of a Dobson Homes account.

14        MR. MILO:  Okay.  And you said there

15   was a second payment out of Hobson (sic)?

16        MR. DOBSON:  No.  Well, there were

17   two -- I made one $500 payment when I very

18   first initially met with Mr. Holmes.  And

19   then, after meeting him further, I made

20   another $3,000 payment.

21        MR. MILO:  And how long ago was the

22   first meeting, the first payment?

23        MR. DOBSON:  I would have to look it

24   up.  I -- the 17th, I think, of January.

25        MR. MILO:  And you said, Mr. Craig is

*Exhibit 8*

Case 23-60148   Doc 244   Filed 01/10/24   Entered 01/10/24 10:31:57   Desc Main
Case 23-60148   Doc 91   Filed 08/08/23   Entered 08/08/23 15:37:35   Desc Main
Document   Page 41 of 82
Document   Page 50 of 83
Exhibit 1 pg 22 of 26

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**
Page 62

```
1   paying the rest of the criminal charges, the

2   attorney fees for the criminal prosecution?

3        MR. DOBSON:  He has made one retainer

4   payment, sir.

5        MR. MILO:  Okay.  Do you have any

6   obligation to pay him back, is that a loan?

7        MR. DOBSON:  No, sir.

8        MR. MILO:  All right.  Just a few quick

9   questions on your schedule.  I'm looking at

10  your co-debtor schedule, Exhibit H.  And --

11       MR. DOBSON:  Okay.

12       MR. MILO:  -- you list -- you list

13  Hobson-- Dobson Homes a number of times as

14  your co-debtor, and then you have got the

15  creditors listed as to the debt you're co-

16  debtor on.  It looks to me like you have name

17  a number of the homeowners as the creditors on

18  which you and Dobson Homes are co-debtors, why

19  did you do that?

20       MR. DOBSON:  Yeah, I -- I did that

21  working with the attorneys.  A lot of the

22  details I'm not -- I don't understand fully,

23  but I have worked the attorneys on that.

24       MR. MILO:  Okay.  What -- was it your

25  intention to list all of the homeowners that
```

*Exhibit 8*

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**

Page 67

```
 1          MRS. NANCY LITTLEFIELD:  Hi, this is
 2    Nancy Littlefield, Tommy.  I just have one.
 3    You know, we have heard for probably over a
 4    year about this new accounting system, and
 5    that part of the confusion with where our
 6    money has gone that we have given you is
 7    related to the -- this -- the new system, and
 8    getting invoices in.
 9          And I'm hearing the same conversation
10    that was on Friday, as well as today, as well
11    as a future date of when that accounting
12    system will be reconciled.
13          What is different today than a year and
14    a half ago that will provide confidence that
15    the -- to us of the invoices, as well as the
16    payments, as well as the clarity of where
17    dollars have been given to you by those that
18    have a contract with so we have an
19    understanding of where that is?  What is
20    different today than a year ago?
21          MR. DOBSON:  I just have better,
22    competent people helping me, and I have my --
23    Sam has helped me out a lot with making sure I
24    just have better people helping me.  And we
25    have made a lot of progress, and so we're
```

Exhibit 8

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                      Page 68

```
 1    closer.  Our goals haven't changed.

 2          MRS. NANCY LITTLEFIELD:  And so, do

 3    you -- as you have said under oath today, of a

 4    one to two month time where you will be able

 5    to provide to your attorney, or whoever, the

 6    right people are to review that information,

 7    you have confidence that that information will

 8    be available for the number of contracts that

 9    have been a -- that you have taken, and money

10    has been given to you, so that there is

11    clarity with the bankruptcy process of where

12    dollars have done, et cetera.  You -- you

13    know, you testified today one to two months,

14    and I'm not -- I -- we have heard this for

15    over a year, so I'm -- I just want to make

16    sure that under oath, you have that at the

17    ready to execute on that promise?

18          MR. DOBSON:  If I understand the

19    question, Nancy, the date I gave you is the

20    date I was -- I'm -- was given by the CPA and

21    the people helping me.  I -- it's something

22    that they are doing and I'm -- I have

23    confidence because they have confidence.  But

24    that's (inaudible).

25          MRS. NANCY LITTLEFIELD:  Okay.  Thank
```

Exhibit 6

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
**341 Meeting of Creditors**                                    **Page 81**

```
 1    anything additionally you can reach me.  My

 2    email address is J-O-E-L.C-H-A-R-B, as in boy,

 3    O-N-E-A-U@usdoj.gov.  I appreciate your time,

 4    thank you so much.

 5          MR. DOBSON:  Thank you.

 6          MS. DOBSON:  Thank you.

 7          (End of Audio Recording.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                    Exhibit 8
```

**TOMMY DWAYNE DOBSON & ANNE CHRISTINE DOBSON, DEBTORS**
341 Meeting of Creditors

Page 82

```
1                        CERTIFICATE

2          I, Wendy Sawyer, do hereby certify that I was

3     authorized to and transcribed the foregoing recorded

4     proceedings, and that the transcript is a true record, to

5     the best of my ability.

6

7

8          DATED this 21st day of April, 2023.

9

10

11

12     _____

13     WENDY SAWYER, CDLT

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit B

**DOBSON HOMES, DEBTOR**
**341 Meeting of Creditors**

1

2

3

4

5

6

7

8

9

10      DOBSON HOMES, DEBTOR

11    341 MEETING OF CREDITORS

12         March 3, 2023

13    Audio Runtime:  0:50:58

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 8

**DOBSON HOMES, DEBTOR**
**341 Meeting of Creditors**                                    Page 2

```
1              (Beginning of Audio Recording.)

2         MS. HUTMAN:  All right.  Calling the

3    case of Dobson Homes.  Do I have Mr. Hastings

4    or someone from Mr. Hastings' office on the

5    line?

6         MR. HASTINGS:  Yeah, miss.  I mean,

7    this is Mike Hastings.  I'm here with Mr.

8    Dobson and Timothy Lovett (phonetic).

9         MS. HUTMAN:  Okay.

10        MR. HASTINGS:  And I'm going to have to

11   leave in a few minutes to go to another

12   hearing, but I -- I'll be back when that's

13   over.

14        MS. HUTMAN:  Okay.

15        MR. HASTINGS:  I just want to let you

16   know that.  But we're all good.

17        MS. HUTMAN:  Okay.  Thank you for

18   letting me know that.  I knew you had to

19   leave.  I apologize that we're -- we're

20   running behind here.  And then you said you

21   have Mr. Dobson with you in your office?

22        MR. HASTINGS:  That's correct.

23        MS. HUTMAN:  All right.  And then do I

24   have anyone else on the line for the case --

25   in the case of Dobson Homes?
```

Exhibit B

**DOBSON HOMES, DEBTOR**
**341 Meeting of Creditors**                                    Page 7

```
 1          MS. HUTMAN:  All right.  Next.

 2          MS. N. LITTLEFIELD:  Glen and Nancy

 3   Littlefield.

 4          MS. HUTMAN:  All right.  Glen and Nancy

 5   Littlefield.  Next.

 6          MS. BOOKER:  Corey Booker, Atlantic

 7   Union Bank.

 8          MS. WHITLEY:  Mary (Inaudible).

 9          MS. HUTMAN:  All right.  Corey Booker,

10   I've got you on behalf of Atlantic Union Bank.

11   Next.

12          MS. WHITLEY:  Mary and Roy Whitley

13   (phonetic).

14          MS. HUTMAN:  Mary and Roy Whitley.  Got

15   you.  Next.

16          MS. PAVLOVA:  Gina Pavlova (phonetic)

17   on behalf of Pella Windows and Doors.

18          MS. HUTMAN:  Got it.  Next.  All right.

19   All right.  I believe that is everyone.  All

20   right.  Mr. Dobson, do you swear --

21          MR. COX:  Judge, judge --

22          MS. HUTMAN:  -- do you swear or affirm

23   the testimony that you are about to provide on

24   behalf of Dobson Homes Inc. will be the truth?

25          MR. DOBSON:  Yes, ma'am.
```

*Exhibit B*

1    MR. CHARBONEAU:  Yes.  I do.  John

2  Charboneau on behalf of the United States

3  Trustee.  I -- I had a -- a couple questions.

4      Mr. Dobson, you had some large claims

5  listed on the company's web -- on the

6  company's schedule, for example, the Murrays;

7  tell me, did you receive more than $1,000,000

8  from the Murrays?

9      MR. DOBSON:  I would have to go pull

10  that information up.  I don't have that

11  memorized, sir.  I apologize.  But I can make

12  sure I get that to you.

13      MR. CHARBONEAU:  Okay.  But -- but you

14  do have that information on -- on what they

15  paid somewhere --

16      MR. DOBSON:  Yes.

17      MR. CHARBONEAU:  -- readily available?

18      MR. DOBSON:  Yes.

19      MR. CHARBONEAU:  Okay.  Now --

20      MR. DOBSON:  Readily available.  Not

21  with me right this second, but yes.  It's

22  available.

23      MR. CHARBONEAU:  All right.  Now

24  what -- what is -- what is the status of their

25  project?  Like, how -- how completed is it?

Exhibit 8

1    MR. DOBSON:  You talking about the

2   Murrays?  Mike and Nina?  It was at the --

3   last time I was part of it, it was at the

4   foundation of completion, backfill of grading

5   completing, and basement framing just started.

6      MR. CHARBONEAU:  Okay.  And do you have

7   a -- a -- you know, a readily available way

8   to, say, you know, assess what materials and

9   time you've put into the project so far?

10      MR. DOBSON:  Yes, sir.  I could get

11   that.

12      MR. CHARBONEAU:  Okay.  So if -- if --

13   let's just say, hypothetically, they gave you

14   $1,000,000, if you put materials and time of,

15   say, 200,000 into the project so far, you'd be

16   able to -- to make that determination through

17   your records?

18      MR. DOBSON:  I would be able to go

19   through and see all monies deposit -- given to

20   me because I deposited all into one account,

21   and I'll be able to show all -- all the costs

22   I incurred for that job.  Yes, sir.

23      MR. CHARBONEAU:  Okay.  Would -- would

24   that be the same for -- I mean, we're not

25   talking about cost to completion.  I'm just

*Exhibit 8*

```
1    saying, you know, if they've given you a

2    certain amount of money draws, you can -- you

3    should be able to determine what it is that --

4    that you've done, you know, for them, value-

5    wise.  Materials and -- and whatever the value

6    of the work, right?

7           MR. DOBSON:  Yes, sir.

8           MR. CHARBONEAU:  Okay.  So --

9           MR. DOBSON:  (Inaudible).

10          MR. CHARBONEAU:  -- for -- for right

11   now -- for -- for right now, Ms. Hutman, those

12   are all the questions that I have.  I will

13   have more next week, but I also have Mr.

14   Dobson's personal 341 next week, so I'll --

15   I'll address the rest of my questions until

16   such time.

17          MS. HUTMAN:  Okay.  Thank you.  All

18   right.

19          Mr. Rawlow?  Any questions?

20          MR. RAWLOW:  Yes.  Not at this time.

21   Thank you.

22          MS. HUTMAN:  You're welcome.

23          Mr. and Mrs. Bolin, any questions from

24   you?

25          MS. BOLIN:  (Inaudible).
```

*Exhibit 8*

1   wouldn't mind sending -- copy me on that email

2   to Mike.  I'll probably be the one that --

3        MS. HUTMAN:  Yeah.

4        MR. LOVETT:  -- drafts the notice of

5   adjournment.

6        MS. HUTMAN:  I suspected that may be

7   the case.  I will do that.  All right.  Very

8   good.

9        All right.  Do I have anyone else on

10  the line for anything other than Dobson Homes?

11       (End of Audio Recording.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Exhibit B*

Case 23-60148   Doc 244   Filed 01/10/24   Entered 01/10/24 10:31:57   Desc Main
Document   Page 62 of 83
Exhibit 2 pg 8 of 8

DOBSON HOMES, DEBTOR
341 Meeting of Creditors

Page 53

1          CERTIFICATE

2          I, Wendy Sawyer, do hereby certify that I was

3     authorized to and transcribed the foregoing recorded

4     proceedings, and that the transcript is a true record, to

5     the best of my ability.

6

7

8          DATED this 21st day of April, 2023.

9

10

11     _____

12     WENDY SAWYER, CDLT

13

14

15

16

17

18

19

20

21

22

23

24

25                                        Exhibit 8

**Exhibit 9**
Summary of Creditor Claim 23-1
Glen and Nancy Littlefield
1936 Piper Way
Keswick, Virginia 22947

Prior to job abandonment, a total of 9 construction draws requested by Christine Dobson and paid by the Littlefields  $833,139.32 (see **Exhibit 10**)

08/2022, The Littlefields were notified that Better Living had placed a Mechanics Lien (**Exhibit 10**) on 1936 Piper Way $91,347.33. The Littlefield's made numerous attempts to contact Tommy and Christine Dobson via phone and email regarding the receiving of the Mechanics Lien without a response for 4 days.   The materials identified in the Mechanics Lien (Item #20 on Construction Draw record: "Siding and Veneer") had already been paid by the Littlefields through a construction draw request by Christine Dobson, however Better Living did not receive payment. **(Exhibit 11 Construction Draw record)**

The action of the Mechanics Lien and the lack of response by the Dobson's to receiving the Mechanics Lien caused the Littlefields to reach out to all vendors to ensure they had received payment for their work competed. Those inquiries found the following:

**HVAC vendor never paid**. Checks given in Construction Draw #3,7,8,9 requested by Christine Dobson who had identified she needed to make payment to this vendor/pay for supplies. **(Exhibit 12)**

Ferguson Lighting and Plumbing- Construction draw requested by Christine Dobson  and Littlefield payment given to Christine Dobson for the purpose of paying vendor. (Construction Draw 3,7, 8 and 9). **Vendor not paid with dollars approved in construction draw.**  Evidence provided to Albemarle County Detective.

H&P Services- **(Exhibit 12)** exterior painting Construction draw requested by Christine Dobson  and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 9)

Exhibit 9

T&A Drywall - Drywall Hanging. Construction draw requested by Christine Dobson and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 9) Evidence provided to Albemarle County Detective.

Jerry Sikman Flooring- **(Exhibit 12)** Construction draw requested by Christine Dobson and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 9)

Better Living interior doors: Construction draw requested by Christine Dobson and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 3, 6) Evidence provided to Albemarle County Detective.

Rainguard Roofing- Construction draw requested by Christine Dobson and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 5) Evidence provided to Albemarle County Detective.

Better Living Cabinets- Construction draw requested by Christine Dobson and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 3) Evidence provided to Albemarle County Detective.

Salmon Masonry- Construction draw requested by Christine Dobson and Littlefield payment given to Christine Dobson for the stated purpose of paying vendor. **Vendor not paid with dollars approved in construction draw**. (Construction Draw 8,9) Evidence provided to Albemarle County Detective.

**A complete list of payments made to Tommy and Christine Dobson and documentation of Vendor not paid has been provided to Albemarle County Detective Marcus Baggett. (Case 2022-73942)**

Exhibit 8

PERMIT #: _____ T.B.D. _____

**Dobson Homes, Inc**
**SCHEDULE OF ADVANCES**

Dobson Signature Homes
BUILDING QUALITY FAMILY HOMES

DOBSON HOMES, INC.

| | |
|---|---|
| DDA Acount # | NA |
| Loan Number | T.B.D. |
| Borrower Ph# | |
| Builder Ph # | 434-591-1188 |
| Closing Date | T.B.D. |
| Inspection Fee | By Client |

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Builder | Glen & Nancy Littlefield | | | | |
| Lot | 3 | Phase | 1 | Section | K | Subdivision | Glenmore |
| Unit Number | NA | Street | Piperway | | City | Keswick |
| Revised Sales | $ 1,072,350.62 | Contract Amount $ 1,072,350.62 | Appraised Value | By Other | Loan-to-Value | By Other |

Less:
| | | |
|---|---|---|
| Lot | $ - | |
| Construction Amount | $ 1,072,350.62 | advanced in accordance with following schedule. |
| Total Loan | $ 1,072,350.62 | |

| | |
|---|---|
| Lot Cost $ | |
| Less Equity $ | - |
| Lot Advance $ | - |

| | Items Completed | % | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th | 10th |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Building Permit | 1% | 1% | | | | | | | | | |
| 2 | Health Permit | 1% | 1% | | | | | | | | | |
| 3 | Clearing | 3% | 3% | | | | | | | | | |
| 4 | Excavation | 5% | 4% | 1% | | | | | | | | |
| 5 | Footings | 1% | | 1% | | | | | | | | |
| 6 | Foundation | 7% | | 2% | 5% | | | | | | | |
| 7 | Outside studs, Plates | 2% | | | | 2% | | | | | | |
| 8 | Outside window and door frames | 1% | | | | 1% | | | | | | |
| 9 | Inside Studs, ceiling joist | 3% | | | | 2% | 1% | | | | | |
| 10 | Wall Sheathing | 1% | | | | 1% | | | | | | |
| 11 | Roof Framing | 2% | | | | | 2% | | | | | |
| 12 | Roof Sheathing - Felt | 2% | | | | | 2% | | | | | |
| 13 | Permanent Roof | 3% | | | | | 1% | | 2% | | | |
| 14 | Windows - (1.5% deposit for window order.) | 3% | | 1.5% | | | | 1.5% | | | | |
| 15 | Rough in plumbing ( ground work under slab Rough in ) | 3% | | | | | 1% | | 2% | | | |
| 16 | Bath wall tile tubs  (1% deposit for tub order.) | 2% | | | | 1% | | | 1% | 4% | | |
| 17 | Rough- in wiring | 5% | | | | | | | 1% | 2% | | |
| 18 | Rough in heat        (1% deposit for equipment order.) | 4% | | | | 1% | | | | | 1% | |
| 19 | Insulation walls/floors | 1% | | | | | | | | 2% | | |
| 20 | Siding / Veneer   (1% deposit for material order.) | 3% | | | | 1% | | 0.5% | | 0.5% | | |
| 21 | Fireplace          (1% deposit for fireplace order.) | 1% | | | | | | | 1.5% | 1.5% | | |
| 22 | Exterior Trim | 3% | | | | | | | | | 1% | |
| 23 | Exterior Prime | 1% | | | | | | | | | 1.5% | |
| 24 | Drywall /plaster rough | 3% | | | | | | | | | 1% | |
| 25 | Drywall /Plaster finish | 3% | | | | | | | 1% | | 2% | |
| 26 | Furnace          (1% deposit for equipment order.) | 3% | | | | | | | 1% | 1% | | |
| 27 | Outside Doors (1% Deposit for Ordering.) | 2% | | 1% | | | | | 1.5% | 0.5% | 0.5% | |
| 28 | Well & Septic tank - | 3% | | | | | | | | | | |
| 29 | Inside trim | 3% | | | | | | | 1% | | | |
| 30 | Inside doors       (1% deposit for Door order.) | 2% | | | | 1% | | | | | | |
| 31 | Cabinets          (2% for Cabinet orders.) | 4% | | | | 2% | | | | | | |
| 32 | Interior Paint - Prime | 1% | | | | | | | | | | |
| 33 | Interior Paint - complete | 2% | | | | | | | | 1% | | |
| 34 | Plumbing fixtures  (1% deposit for material order.) | 3% | | | | | | | | | | |
| 35 | Wiring Complete /Fixtures | 1% | | | | | | | | | | |
| 36 | Bath Floor tile/vinyl      (1% deposit for material order.) | 1% | | | | | | | | | 1% | |
| 37 | Flooring: Carpet and Wood Floors (Wood Flooring Deposit) | 3% | | | | | | | | 1% | 1% | |
| 38 | Exterior Concrete | 2% | | | | | | | | | | |
| 39 | Exterior Paint complete | 1% | | | | | | | | | | |
| 40 | Insulation/Ceiling | 1% | | | | | | | | | | |
| 41 | Fin. Grade-grass landscaping | 1% | | | | | | | | | 0.5% | |
| 42 | Appliances (Deposit) | 1% | | | | | | | | | | |
| 43 | Compressor | 1% | | | | | | | | | | |
| 44 | Miscellaneous | 1% | | | | | | | | | | |
| | **TOTAL THIS INSPECTION** | 100% | 9% | 6.5% | 11% | 6% | 7.5% | 4% | 12% | 13% | 10% | 0% |
| | | | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th | 10th |
| | Inspector Initials | | | | | | | | | | | |
| | Date of Inspection | | | | | | | | | | | |

| | | | Closing Attorney | | Phone # |
|---|---|---|---|---|---|
| Builder deposit required = | $ 75,063.80 | $ 40,000.00 At time of contract signing. | Title Work Contact | | Phone # |
| DISBURSEMENTS TO PAY AFTER DEPOSIT $ | | $ 35,063.80 At time of ARB application | | | |

| DATE | DISB. NO. | TITLE WORK IN | % COMP | LAND & CLOSING ADVANCE | CONSTRUCTION ADVANCE | TOTAL PREVIOUS ADVANCES | UNDISBURSED | RECEIVED BY |
|---|---|---|---|---|---|---|---|---|
| TOTAL DEPOSIT | 0 | | 0% | | 75,063.80 | $ - | $ 997,286.82 | |
| Draw # | 1 | Permits, Clearing, & Excavation | 9% | | 89,755.81 | $ - | $ 907,531.00 | |
| Draw # | 2 | Footing's, Foundation, Windw & Door Deposits | 7% | | 64,823.64 | $ 89,755.81 | $ 842,707.36 | |
| Draw # | 3 | Foundation Complete, Cabinet, Int. Door, Siding, Heating Deposits | 11% | | 109,701.55 | $ 154,579.46 | $ 733,005.81 | |
| Draw # | 4 | | 6% | | 59,837.21 | $ 264,281.01 | $ 673,168.60 | |
| Draw # | 5 | | 7.5% | | 74,796.51 | $ 324,118.22 | $ 598,372.09 | |
| Draw # | 6 | | 3.5% | | 34,905.04 | $ 398,914.73 | $ 563,467.05 | |
| Draw # | 7 | | 12% | | 119,674.42 | $ 433,819.77 | $ 443,792.63 | |
| Draw # | 8 | | 13% | | 124,660.85 | $ 553,494.18 | $ 319,131.78 | |
| Draw # | 9 | | 10% | | 86,215.45 | $ 678,155.04 | $ 232,916.34 | |
| Draw # | 10 | | 0% | | 0.13 | $ 764,370.48 | $ 232,916.21 | |

Borrower



THIS CHECK HAS A MICROPRINT IN THE BORDER AND A VOID PANTOGRAPH

CASHIERS CHECK

135366

REMITTER: NANCY W LITTLEFIELD

06/18/2021   68-801/514
01800019

PAY TO THE
ORDER OF: DOBSON HOMES INC

$90,277.38

Ninety Thousand Two Hundred Seventy Seven and 38/100***************************

Bank The James

MEMO:

AUTHORIZED SIGNATURE

NOTICE TO CUSTOMER:
AS A CONDITION TO THIS INSTITUTION'S ISSUANCE
OF THE CHECK, PURCHASER AGREES TO PROVIDE AN
INDEMNITY BOND PRIOR TO, THE REFUND OR
REPLACEMENT OF THIS CHECK IN THE EVENT IT IS
LOST, MISPLACED OR STOLEN

*Aaron K Gary*
AUTHORIZED SIGNATURE

2 Signatures required for amounts over $2,000,000.00

THE MULTI-TINT BACKGROUND OF THIS CHECK GRADUALLY CHANGES FROM DARK TO LIGHT TO DARK

⑈135366⑈ ⑆05140901⑈: 01900019⑈

DDA Debits - 6/22/2021 - 135366 - $90,277.38

06212021 001776001237310 051403164

0910905531
2021-06-22

Dobson Homes Inc

DDA Debits - 6/22/2021 - 135366 - $90,277.38

Exhibit 10



THIS CHECK HAS A MICROPRINT IN THE BORDER AND A VOID PANTOGRAPH

CASHIERS CHECK                                    135410

REMITTER: NANCY W LITTLEFIELD          07/14/2021   68-901/514
                                                     01900019

PAY TO THE
ORDER OF:  DOBSON HOMES INC              $64,740.91

Sixty Four Thousand Seven Hundred Forty and 91/100**********************************

Bank
The James      MEMO:                    AUTHORIZED SIGNATURE

NOTICE TO CUSTOMER
AS A CONDITION TO THIS INSTITUTION'S ISSUANCE
OF THE CHECK, PURCHASER AGREES TO PROVIDE AN
INDEMNITY BOND PRIOR TO THIS REFUND OR         2 Signatures required for amounts over $2,000,000.00
REPLACEMENT OF THIS CHECK IN THE EVENT IT IS
LOST, MISPLACED OR STOLEN

THE MULTI-TINT BACKGROUND OF THIS CHECK GRADUALLY CHANGES FROM DARK TO LIGHT TO DARK

⑈135410⑈ ⑆051409016⑆ 01900019⑈

DDA Debits - 7/15/2021 - 135410 - $64,740.91

07142021 001775000927470 051403164          0910221488     Dobson
                                            2021-07-15      Homes

DDA Debits - 7/15/2021 - 135410 - $64,740.91

Exhibit 10



DDA Debits - 9/21/2021 - 135430 - $109,701.55



DDA Debits - 9/21/2021 - 135430 - $109,701.55

Exhibit 10



THIS CHECK HAS A MICROPRINT IN THE BORDER AND A VOID PANTOGRAPH

CASHIER'S CHECK                                                        135453

REMITTER: NANCY W LITTLEFIELD                    10/08/2021        68-901/514
                                                                  01900019

PAY TO THE
ORDER OF: DOBSON HOMES INC                          $59,837.21

Fifty Nine Thousand Eight Hundred Thirty Seven and 21/100************************

Bank of
The James          MEMO:
                                                AUTHORIZED SIGNATURE
                                                Aaron K. Hays
NOTICE TO CUSTOMER                              AUTHORIZED SIGNATURE
AS A CONDITION TO THIS INSTITUTION'S ISSUANCE
OF THE CHECK, PURCHASER AGREES TO PROVIDE AN
INDEMNITY BOND PRIOR TO THE REFUND OR          2 Signatures required for amounts over $2,000,000.00
REPLACEMENT OF THIS CHECK IN THE EVENT IT IS
LOST, MISPLACED OR STOLEN.

THE MULTI-TINT BACKGROUND OF THIS CHECK GRADUALLY CHANGES FROM DARK TO LIGHT TO DARK

⑆135453⑆ ⑈051409016⑈ 01900019⑈

DDA Debits – 10/12/2021 – 135453 – $59,837.21

10082021 001775000941050 051403164          0910467409
                                            2021-10-12

Dobson Homes Inc.

DDA Debits – 10/12/2021 – 135453 – $59,837.21

Exhibit 10



THIS CHECK HAS A MICROPRINT IN THE BORDER AND A VOID PANTOGRAPH

CASHIER'S CHECK                                        135398

REMITTER: NANCY & GLEN LITTLEFIELD          12/29/2021      68-001/514
                                                            01900019

PAY TO THE
ORDER OF: DOBSON HOMES                              $74,796.51

Seventy Four Thousand Seven Hundred Ninety Six and 51/100 *********************

Bank MEMO: Draw #5 for N & G Littlefield
The James

NOTICE TO CUSTOMER                              AUTHORIZED SIGNATURE
AS A CONDITION TO THIS INSTITUTION'S ISSUANCE
OF THE CHECK, PURCHASER AGREES TO PROVIDE AN      AUTHORIZED SIGNATURE
INDEMNITY BOND, PRIOR TO THE REFUND FOR
REPLACEMENT OF THIS CHECK IN THE EVENT IT IS    2 Signatures required for amounts over $2,000,000.00
LOST, MISPLACED OR STOLEN!

THE MULTI-TINT BACKGROUND OF THIS CHECK GRADUALLY CHANGES FROM DARK TO LIGHT TO DARK

⑈135398⑈ ⑆051409016⑆      01900019⑈

DDA Debits - 12/30/2021 - 135398 - $74,796.51

12292021 001776001730990 051403164        0910565632
                                          2021-12-30

Dobson Homes

DDA Debits - 12/30/2021 - 135398 - $74,796.51

Exhibit 10

Exhibit 10



DDA Debits - 2/14/2022 - 135514 - $34,905.04



DDA Debits - 2/14/2022 - 135514 - $34,905.04

Exhibit 10



DDA Debits - 3/7/2022 - 135526 - $119,654.42



DDA Debits - 3/7/2022 - 135526 - $119,654.42

Exhibit 10



DDA Debits - 5/9/2022 - 135550 - $124,660.85

DDA Debits - 5/9/2022 - 135550 - $124,660.85

Exhibit 10



DDA Debits - 7/25/2022 - 140856 - $86,215.45



DDA Debits - 7/25/2022 - 140856 - $86,215.45

Exhibit 10

202200009082.001

# VIRGINIA LAND RECORD COVER SHEET

Commonwealth of Virginia      VA. CODE §§ 17.1-223, -227.1, -249

## FORM A -- COVER SHEET CONTENT

Instrument Date: 7/26/2022

Instrument Type: MEML

Number of Parcels: 1      Number of Pages: 4

[ ] City [X] County   ALBEMARLE
                      CIRCUIT COURT

Tax Exempt?   VIRGINIA/FEDERAL CODE SECTION

[ ] Grantor: .......................................................

[ ] Grantee: .......................................................

Business/Name

| 1 | Grantor: | LITTLEFIELD, GLEN L |
| 2 | Grantor: | LITTLEFIELD, NANCY W |
| 1 | X Grantee: | BETTER LIVING, INC. |
|   | Grantee: |  |

Grantee Address

Name: BETTER LIVING, INC.

Address: P.O. BOX 7627

City: CHARLOTTESVILLE      State: VA   Zip Code: 22906

Consideration: $0.00      Existing Debt: $91,347.33      Actual Value/Assumed: $0.00

*PRIOR INSTRUMENT UNDER § 58.1-803(D):*

Original Principal: $0.00      Fair Market Value Increase: $0.00

Original Book No.: ...............   Original Page No.: ...............   Original Instrument No.: ...............

Prior Recording At: [ ] City [ ] County ...............      Percentage In This Jurisdiction: 100%

Book Number: ...............   Page Number: ...............   Instrument Number: ...............

Parcel Identification Number/Tax Map Number: 093A5-00-0K-00300

Short Property Description: SINGLE FAMILY DETACHED DWELLING
                           LOT 3 SECTION K PHASE 1 GLENMORE

Current Property Address: 1936 PIPER WAY

City: CHARLOTTESVILLE      State: VA   Zip Code: 22901

Instrument Prepared By: BETTER LIVING, INC.      Recording Paid By: BETTER LIVING, INC.

Recording Returned To: BETTER LIVING, INC.

Address: P.O. BOX 7627

City: CHARLOTTESVILLE      State: VA   Zip Code: 22906

RECORDED IN
ALBEMARLE COUNTY, VA
JON R. ZUG
CLERK OF CIRCUIT COURT
FILED            Jul 26, 2022
AT               02:04 pm
BOOK
START PAGE
END PAGE
INST #    202200009082
TOTAL NUM PAGES          5

MEB

*(Area Above Reserved For Deed Stamp Only)*

FORM CC-1570 (MASTER, PAGE ONE OF ___ONE___ ) 10/19
© Copyright 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

Cover Sheet A

Exhibit 11

## CERTIFICATE OF RELEASE OF MECHANIC'S LIEN

VA. CODE §§ 43-4, 43-5, 43-8, 43-10, 43-67

ALBEMARLE COUNTY .......................... Virginia Circuit Court is the location of the
following record referenced by this certificate:

| 07/26/2022 | | | 202200009082 |
|---|---|---|---|
| DATE LIEN RECORDED | DEED BOOK NO. | PAGE NO. | INSTRUMENT NUMBER |

093A5-00-0K-00300
PARCEL IDENTIFICATION NUMBER/TAX MAP NUMBER

LITTLEFIELD, GLEN L. AND NANCY W. LITTLEFIELD
NAME(S)/ADDRESS(ES) OF OWNER(S) ON WHOSE PROPERTY THE LIEN WAS PLACED

1936 PIPER WAY, KESWICK, VA 22947

$ 91,347.33 .......................... amount claimed.

The above-mentioned mechanic's lien is hereby released. (If lien is released with respect to only part of the
property or with respect to an amount smaller than the total claimed, indicate conditions:)

I hereby certify that only the mechanic's lien created therein is hereby released in full. The underlying monetary claim
again Dobson Homes, Inc. is not released.

Better Living, Inc.
CLAIMANT(S)

P.O. Box 7627, Charlottesville, VA 22906

by _April Northcutt_ _Credit Manager_
[ ] ATTORNEY AT LAW [x] AGENT [ ] ATTORNEY IN FACT

[ ] City [x] County of _Albemarle_ .......................... State/Commonwealth of _Virginia_

This instrument was acknowledged, subscribed and sworn to before me this __3rd__ day

of _February_ .................... , 20 _23_

by _April Northcutt_ _Credit Manager_
NAME                                    TITLE

_Tonya Dawn Clore_
PRINTED NAME OF NOTARY PUBLIC

_Tonya Dawn Clore_
SIGNATURE OF NOTARY PUBLIC

(My commission expires __10/31/2023__ )

Registration No. __7934263__

TONYA DAWN CLORE
NOTARY PUBLIC
REG. #7934263
My Comm. Exp.
Dec 31, 2025
COMMONWEALTH OF VIRGINIA

This instrument was admitted to record on ..........................  at .......... .......... m,
DATE                                                    TIME

.......... , Clerk    by .......... , Deputy Clerk

FORM CC-1515 MASTER 10/19

Exhibit 11



17000 Forest Road, Suite A
Forest, VA 24551
(434) 534-8080
(434) 534-8081 fax

www.bankofthejames.bank

Dear Glen and Nancy:

Bank of the James was appointed as Mechanics Lien Agent for your residential construction project as evidenced by the Building Permit issued by Albemarle County.

As of December 6, 2022, the following parties have given notice to our bank in its capacity as Mechanics Lien Agent in connection with the project:

84 Lumber (received 9/20/21)
Better Living (received 12/17/21)

Sincerely,

Michael S. Kirkpatrick
SVP/Loan Officer
Bank of the James
17000 Forest Road
Forest, VA 24551

Exhibit 11

 Gmail

Nancy Littlefield <nancy.littlefield@gmail.com>

## Re: Littlefield Residence & Hyder Residence
1 message

**Gardner Lloyd** <glloyd1977@gmail.com>
To: Jimmy North <jnorth@airflowhtgair.com>, Glen Littlefield <Glittlef1222@gmail.com>, Nancy Littlefield
<nancy.littlefield@gmail.com>

Fri, Nov 18, 2022 at 4:34 PM

Jimmy -

Would you please send Glen and Nancy a copy of their HVAC contract for their home in Glenmore at 1936 Piper Way.

Thank you.

Gardner
407-230-3640

On Mon, Sep 26, 2022 at 6:36 AM Jimmy North <jnorth@airflowhtgair.com> wrote:

Gardner, That will be fine. I need to get paid for work done at Littlefield. I have not been paid anything. I can't get answers from Tommy or Kristin as to when I will get paid.


Jimmy North

Airflow Systems, Inc.

---

**From:** Gardner Lloyd <glloyd1977@gmail.com>
**Sent:** Friday, September 23, 2022 5:00:13 PM
**To:** Jimmy North
**Subject:** Re: Littlefield Residence & Hyder Residence

Jimmy -

Would it be helpful if I put you in direct contact with the customer - Glen & Nancy Littlefield?

Gardner

On Tue, Sep 20, 2022 at 1:03 PM Jimmy North <jnorth@airflowhtgair.com> wrote:

Gardner, I need Tommy or Kristen's permission to give you that information. Thanks,


Jimmy North

Airflow Systems, Inc.

*Exhibit 12*
*Evidence of nonpayment*

 Gmail

Nancy Littlefield <nancy.littlefield@gmail.com>

---

## Fw: Dobson "Littlefield" - 22228

**Glen Littlefield** <glittlef1222@gmail.com>
To: Jimmy North <jnorth@airflowhtgair.com>
Cc: Gardner Lloyd <glloyd1977@gmail.com>, Nancy Littlefield <nancy.littlefield@gmail.com>

Tue, Nov 22, 2022 at 9:45 AM

Good morning Jimmy,

Thank you for your reply.  We are thankful we could pay you for your work done initially and plan to pay for the remaining work your team has done and will do to finish the HVAC system.  We are currently using the heat pump to maintain temperature in the house since wood flooring is now being installed.  Tiger Fuel is expected to have the propane line connected to the furnace early next week I believe so we'll have gas heat available soon.

We would like you to plan on installing the steam humidifier system for us as soon as you can fit us into your schedule.  I have copied Gardner Lloyd, who thankfully is still working with us to coordinate completion of our home.  The electrical panels are located in the same room where your team installed our furnace so hopefully your team can make the electrical connections needed for power.  If not, please let Gardner know so he can bring the electricians in.

Gardner also will be contacting you to determine the location where you will install the humidifier so he can have our plumber install the water line to that area.

Nancy & I wish you and your family a blessed Thanksgiving.  In spite of the challenges we all are being faced with by Dobson's situation, we do have much to be thankful for this year.

Thank you again for your continued support.

Sincerely,

Glen & Nancy Littlefield
571-340-1121

On Tue, Nov 22, 2022 at 7:07 AM Jimmy North <jnorth@airflowhtgair.com> wrote:

> Glen, I thank you for stepping up and paying me. I did not ask to be put in this position. I
> commend you for doing what you did, and I am grateful for that. I can install an Aprilaire Steam
> Humidifier for you for $2400 normally $2800. I will need an electrical circuit of 208/230 volts from
> the electrical panel. If the panel is in the room of where the furnace is, then I will take care of the
> high voltage. If not, then a electrician will have to get involved. I can credit you a few hundred
> dollars if an electrician has to get involved. I honestly can't tell you when I could install this for
> you, I am just so busy right now. Take advantage of these rainy days by cracking the windows to
> allow moisture into the home. Obviously close them if water is getting into the house. This
> Dobson thing has been a bad situation for all of us. Have a great Thanksgiving!!!
>
>
> Jimmy North
>
> Airflow Systems, Inc.

---

**From:** Glen Littlefield <glittlef1222@gmail.com>
**Sent:** Monday, November 21, 2022 11:01:23 AM
**To:** Jimmy North

*Exhibit 12*

**Airflow Systems, Inc.**
1134 Rose Hill Drive
Charlottesville, VA 22903



# INVOICE
*Unpaid*

**Presented to:**
**Dodson Homes**
Dodson Homes
245 Ridge McIntire Rd
Charlottesville, VA 22903

| | |
|---:|:---|
| **Job #** | 2492 |
| **Job Name** | P22228 |
| **Invoice #** | I-2492-1 |
| **Technician** | Jimmy North |
| **Issue Date** | Jun 23 2022 |
| **Payment Terms** | Net 30 |
| **Due Date** | Jul 23 2022 |

**Customer Contact:**
M: (434) 591-1188
E: dobsonhomesap@gmail.com

**Location Address:**
Littlefield Residence
TBA
Charlottesville, VA 22902

## DESCRIPTION

Progress Billing

| | |
|---:|---:|
| Subtotal | $17,925.00 |
| Taxes | $0.00 |
| **Total** | **$17,925.00** |

**Make Payment**

**Customer Approval:**
☐ I agree to the terms and conditions of this invoice, and that the goods and or services referenced have been provided to my satisfaction.

**Contract Terms:**
DUE UPON RECEIPT

*Exhibit 12*

**Contact Us:**   (434) 979-4328    info@airflowhtgair.com    www.airflow-hvac.com

**Airflow Systems, Inc.**
1134 Rose Hill Drive
Charlottesville, VA 22903



# INVOICE
*Unpaid*

**Presented to:**
**Dobson Homes**
Dodson Homes
245 Ridge McIntire Rd
Charlottesville, VA 22903

| | |
|---|---|
| **Job #** | 2492 |
| **Job Name** | P22228 |
| **Invoice #** | I-2492-2 |
| **Technician** | Jimmy North |
| **Issue Date** | Jul 07 2022 |
| **Payment Terms** | Net 30 |
| **Due Date** | Aug 06 2022 |

**Customer Contact:**
M: (434) 591-1188
E: dobsonhomesap@gmail.com

**Location Address:**
Littlefield Residence
TBA
Charlottesville, VA 22902

## DESCRIPTION

Progress Billing

Permit (281.96)

| | |
|---|---|
| Subtotal | $18,206.96 |
| Taxes | $0.00 |
| **Total** | **$18,206.96** |

**Make Payment**

**Customer Approval:**
☐ I agree to the terms and conditions of this invoice, and that the goods and or services referenced have been provided to my satisfaction.

**Contract Terms:**
DUE UPON RECEIPT

Exhibit 12

 Gmail

Nancy Littlefield <nancy.littlefield@gmail.com>

## Glen & Nancy Littlefield - Request for Payment directly to Vendor for Exterior House Painting

**Glen Littlefield** <glittlef1222@gmail.com>                                    Tue, Sep 27, 2022 at 8:27 PM
To: Tommy Dobson <tommyddobson73@gmail.com>, "lpettit3@gmail.com" <lpettit3@gmail.com>, christine dobson
<christinedobson68@gmail.com>
Cc: Gardner Lloyd <glloyd1977@gmail.com>, Nancy Littlefield <nancy.littlefield@gmail.com>

Larry,

Per your request in your phone call to us this afternoon, below for your record is the Painting invoice that we paid directly to H & P Services Attn: Hernan Enciso since he had not been paid, and so he will be able to return to finish his painting & staining work at our home. You will notice that we previously approved payment of an Exterior Prime line item as submitted by Christine in Draw #9.

Tommy's instructions that we reviewed with you today, to proceed with Gardner's help to continue progress on completing our home, will continue as we can and are able. These additional payments do not come without financial hardship and we continue to trust that we will receive the appropriate credit upon account review.

Thank you,

Glen and Nancy Littlefield
571-340-1121

---------- Forwarded message ---------
From: **Glen Littlefield** <glittlef1222@gmail.com>
Date: Tue, Sep 20, 2022 at 1:45 PM
Subject: Glen & Nancy Littlefield - Request for Payment directly to Vendor for Exterior House Painting
To: Mike Kirkpatrick <mkirkpatrick@bankofthejames.com>
[Quoted text hidden]
[Quoted text hidden]

**Exterior House Painting Invoice 09-15-22.jpg**
162K

Exhibit 12

**H & P Services**

*Custom Home Finishing*

2508 Fontaine Av, Apt A
Charlottesville, VA, 22903
(434) 806-8626

# INVOICE

| | |
|---|---|
| **DATE:** | September 15, 2022 |
| **INVOICE #** | 1 |
| **FOR:** | Exterior Paint, House and Garage |
| | Front Porch & Breezeway |

| Job Name & Subdivision | Cost Code | SF | PRICE | AMOUNT |
|---|---|---|---|---|
| LITTLEFIELD | Painting-70310 | 5407.00 | $ 2.80 | $ 15,139.60 |
| LITTLEFIELD | Painting-70310 | 909.00 | $ 3.00 | $ 2,272.50 |
| LITTLEFIELD | Painting-70310 | 294.00 | $ 3.00 | $ 882.00 |
| LITTLEFIELD | Painting-70310 | 138.00 | $ 3.00 | $ 414.00 |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |

| | | |
|---|---|---|
| SUBTOTAL | $ | 18,708.10 |
| TAX RATE | | 0.00% |
| SALES TAX | $ | - |
| OTHER | | |
| TOTAL | $ | 18,708.10 |

Rear porch & Stucco is not include in this invoice

Make all checks payable to H & P Services.

Total due in 15 days. Overdue accounts subject to a service charge of 1% per month.

**THANK YOU FOR YOUR BUSINESS!**

*Exhibit 12*