

Chris and Helen Karls (Claimants)
3154 Keswick Ln.
Keswick, VA 22947

Clerk
U.S. Bankruptcy Court
Western District of Virginia
1101 Court St., Room 166
Lynchburg, VA 24504

**Case No. 23-60148**

**Claimants' Response: Trustees Objection to Claim No. 32-1**

We have received the Subchapter V Trustee's objection to our claim and ask the Court to deny the Trustee's objection. We have not retained legal counsel and are therefore representing ourselves. We were retaining an attorney; however, after spending more than $4,100 in fees, we decided to cut our losses and proceed on our own. That said, we respectfully request the Court to deny the Subchapter V Trustee's objection to our claim as follows:

*(a) the Claimants have provided no evidentiary support for asserting a claim against the Debtors under the contract which the Claimants state is the basis for their claim against the Debtors, or that any money paid by the Claimants was paid to the Debtors.*

Our Response:  We provided a detailed account (in spreadsheet form) of monies owed in our filing and we will provide further detail upon request.  The details of our claim were provided to the best of our ability and understanding of the original requirement.  Further, Dobson Homes and Tommy Dobson, specifically, failed to honor a contract that specified construction of a move-in-ready, code-compliant home within 275 days of commencement.  100% of our entire construction loan was drawn by Tommy Dobson with our understanding that the money would be applied to construction materials and labor to complete the home, yet Dobson Homes and Tommy Dobson, specifically, depleted all construction loan funds well before the home was completed.  He, therefore, did not fulfill this contract which left us to complete the home with excessive out-of-pocket expenses.

*(b) the Claimants have provided no evidentiary support to assert a claim against the Debtors on any other grounds.*

Our Response: We believe our Contract and supporting documentation support our claim.

Further, we would like to highlight a few examples of our losses that are included in our claim:

- **Construction Loan.** Eleven (11) draws were made by Dobson Homes, Inc. (DHI) for the construction of our home. Tommy Dewayne Dobson is the sole owner of Dobson Homes, Inc. These draws include numerous cases where monies dispersed to the builder were not spent on construction of our home. For example, a $33,733.65 draw (#7) was itemized for a septic tank, yet our home does not

- incorporate a septic system—we are on a community sewer system and this was well known to Mr. Dobson. Draws were also made for flooring ($25,300), final exterior painting ($11,244), and a furnace ($33,733)– though none of these were purchased/performed by DHI and subsequently we were forced to pay out-of-pocket directly to vendors to obtain them. We effectively paid twice for each of these, and this is only a partial list of similar expenses.
- **Construction Schedule and Moving Expenses.** Our construction contract with DHI stipulated an estimated time of completion of 275 days. However, our construction period started in Jan 2021 and spanned more than two years, resulting in our having to move four times at great financial and personal expense and included four months where we had to live in separate states (VA and MD) based upon work necessities and the availability of suitable rental properties. Over the 2-plus year period, we were repeatedly told the home would be finished "very soon" or "shortly." As the completion slid further right, interest rates continued to rise and when we finally "locked" into a permanent mortgage loan based upon a promise of Mr. Dobson to complete the home within 90 days, it took five extensions of the loan lock before we finally closed, incurring further financial damage and hardship.
- **Home Warranty Coverage.** Section 12 of our Contract (which was included in our initial filing) specified DHI warranty coverage for one year from time of possession. Within the first month of occupancy, we've experienced three major plumbing issues– each unrelated to the other. These all required excavation, significant cost, and great inconvenience—the first issue forcing us to move into a hotel since the home sewer discharge lines could not be used (they were crushed and required excavation and replacement). Sadly, we expect there may be other issues that will arise with the home due to the protracted construction schedule and haphazard management of the build.

We understand that Tommy Dobson is sole owner and president of DHI. How the court views corporate protections notwithstanding, it appears unreasonable to suggest that any other person or entity other than Tommy Dobson can or should be held accountable for DHI's failings. As such, with review of the Small Business Monthly Operating Report (Doc. No. 268) for December 2023, it's notable that Tommy Dobson incurred an extravagance of expenditures on food, entertainment, and Christmas gifts during the period 12/20/23 through 12/29/23. For example, Mr. Dobson recorded 17 itemizations for meals at restaurants (12 lunches, 1 dessert, and 4 dinners) totaling $830.96 during these 10 days. A reasonable person would conclude that when presented with bankruptcy challenges such as Mr. Dobson's, one would engage in a fiscal belt-tightening at the very least so as to demonstrate a commitment to overcoming those challenges and making right by the creditors. The fact that Mr. Dobson has not speaks to his character and inability or unwillingness to curb discretionary expenses and demonstrates a lack of regard for damages incurred to his creditors.

We recognize that these examples may not be directly material to the legal case, but they underscore the significant financial and emotional pain we have endured. To have our claim summarily dismissed as recommended by the Trustee would serve to further exacerbate these injuries.

Respectfully mailed via USPS on February 22, 2024,

Chris Karls

Helen Karls